**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CORPORAL B. KURT PRICE, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | C.A. No. 04-956-GMS |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

_____

| | | |
|---|---|---|
| SERGEANT CHRISTOPHER FORAKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 04-1207-GMS |
| v. | : | |
| | : | |
| COLONEL L. AARON CHAFFINCH, et al., | : | |
| | : | |
| Defendants. | : | |

**REPLY BRIEF
IN SUPPORT OF THE MOTION OF THE DEFENDANTS
TO BAR CERTAIN COMMUNICATIONS OF COUNSEL OR,
IN THE ALTERNATIVE, TO DISQUALIFY COUNSEL**

Date: November 28, 2005          Noel C. Burnham (DE Bar No. 3483)
                                 Richard M. Donaldson (DE Bar No. 4367)
                                 Montgomery, McCracken, Walker & Rhoads, LLP
                                 300 Delaware Avenue, Suite 750
                                 Wilmington, DE 19801
                                 (302) 504-7840

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 2

A.    The Neubergers' Purported Representation Of Davis, A High-Ranking
      DSP Official, Violates Rule 4.2 ................................................................ 3

      1.    Captain Ralph Davis Is A "Constituent" Of The DSP And Is,
            Therefore, A Represented Party Under Rule 4.2 ........................... 3

      2.    Stephen Neuberger Has Conducted Communications With Captain
            Davis That Are Clearly Prohibited By Rule 4.2 ........................... 4

B.    The Neubergers' Concurrent Representation Of Both Plaintiffs And
      Captain Davis Violates Model Rule 1.7 .................................................. 6

      1.    The Interests Of Plaintiffs And Davis Are In Conflict .................. 6

      2.    The Neubergers' Ability To Represent Both Plaintiffs And Davis
            Has Been And Will Be Materially Limited .................................... 7

      3.    Plaintiffs' Counsel's Conflict Of Interest Between Plaintiffs And
            Davis Cannot Be Waived................................................................. 9

C.    Defendants' And Their Counsel Have Not Violated Any Rules Of
      Professional Conduct Or Engaged In Any "Illegal Actions." ............... 10

      1.    Defendants And Defense Counsel Have A Right And A Duty To
            Speak To Davis .............................................................................. 11

      2.    Davis Has No Constitutional, Statutory, Or Public Policy Right to
            Have Plaintiffs' Counsel Present At Any Interview Conducted By
            His Own Employer .......................................................................... 12

      3.    The Neubergers Did Not Inform Defense Counsel Prior To The
            Deposition That Davis Was Represented By The Neubergers As A
            Witness In This Case ..................................................................... 14

D.    Precluding The Neubergers From Representing Ralph Davis Is A
      Necessary And Narrowly Drawn Remedy For Their Violation Of Ethical
      Rules ........................................................................................................ 15

III.  CONCLUSION................................................................................................. 18

## TABLE OF AUTHORITIES

**Page**

## CASES

Belote v. Maritrans Operating Partners, L.P., No. CIV. A. 97-3993,
  1998 WL 136523 (E.D. Pa. Mar. 20, 1998) .......................................................... 3, 15

Bradshaw v. Township of Middletown, 296 F. Supp. 2d 526 (D.N.J. 2003) ............................... 13

Carter-Herman v. City of Philadelphia, 897 F. Supp. 899 (E.D. Pa. 1995) ................................... 3

Chotiner v. Philadelphia Houseing Authroity, No. Civ.A.02-9504, 2004 WL 2915296
  (E.D. Pa. Dec. 15, 2004) .................................................................................... 12, 13

Cipriani v. Lycoming County Housing Authority, 177 F. Supp. 2d 303 (M.D. Pa. 2001) .......... 13

Dauro v. Allstate Insurance Co., No. Civ. A. 1:00CV138RO, 2003 WL 22225579
  (S.D. Miss. Sept. 17, 2003) ....................................................................................... 9

EEOC v. HORA, Inc., No. Civ.A. 03-CV-1429, 2005 WL 1387982
  (E.D. Pa. June 8, 2005) ...................................................................................... 3, 15

Eisenberg v. Gagnon, 766 F.2d 770, 787-88 (3d Cir. 1985) ........................................................ 16

Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc., 142 F. Supp. 2d 579
  (D. Del. 2001) ...................................................................................................... 8, 15

Government of the Virgin Islands v. Joseph, 685 F.2d 857 (3d Cir. 1982) .................................. 16

IBM v. Levin, 579 F.2d 271 (3d Cir. 1978) .................................................................................. 15

In re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001) ........................................................... 12

Jones v. Daily News Publ'g Co., No. Civ. 1999/138, 2001 WL 378846,
  (D.V.I. Mar. 16, 2001) ........................................................................................ 8, 10

Jones v. Lilly, 37 F.3d 964, 966 (3d Cir. 1994) ........................................................................... 12

United States v. Furst, 886 F.2d 558 (3d Cir. 1989) ................................................................... 16

United States v. Sawyer, 878 F. Supp. 295, 296 (D. Mass. 1995) .............................................. 12

Upjohn v. United States, 449 U.S. 383, 394-95 (1981) ............................................................... 16

Webb v. E.I. DuPont De Nemours & Co., 811 F. Supp. 158 (D. Del. 1992) .............................. 15

Williams v. Pima County, 791 P.2d 1053 (Ariz. Ct. App. 1989) ................................................ 12

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>**Page**</u>

### <u>STATUTES</u>

42 U.S.C. § 1983 ............................................................................................................... 1

Del. Code. Ann. tit. 11 ..................................................................................................... 13

## I.    INTRODUCTION

In this employment action arising under 42 U.S.C. § 1983 and the First Amendment to the United States Constitution, Plaintiffs' attorneys Thomas S. Neuberger and his son, Stephen J. Neuberger, claim to represent a key manager of the Delaware State Police ("DSP") and a witness in these cases, one Captain Ralph Davis.  The Neubergers admit that, since Defendants filed this Motion in October, they have had extensive discussions with Capt. Davis that have led them to the conclusion that their concurrent representations of Davis and Plaintiffs Price, Warren, and Foraker do not pose any conflicts of interests.  They further assert that Defendants and their counsel may not interview Capt. Davis outside of their presence.

In Plaintiffs' Answering Brief, the Neubergers do not dispute that Davis is a key management witness for the DSP in this action and that he is a "constituent" of the defendant-litigant under Rule 4.2 of the Model Rules of Professional Conduct.  Having conceded that point as a matter of law, the Neubergers are prohibited from representing Davis because they cannot do so without discussing with him the substance of the current lawsuit.  It follows that they must either withdraw from their claim that they represent Davis or be disqualified from their representation of Plaintiffs in this action.  Defense counsel asked the Neubergers to take the action required by the Model Rules; when no response was forthcoming Defendants filed this Motion to bar the Neubergers' representation of Ralph Davis in this action or, in the alternative, to disqualify the Neuberger's from these actions.  (Price No. 04-956, D.I. # 46; Foraker, No. 04-1207, D.I. # 32.)  Because of the aggressive debriefing of Capt. Davis by the Neubergers since the filing of this Motion, Defendants now ask the Court to conduct a hearing to determine an appropriate remedy for what now may be an extensive violation of Rule 4.2.

The Neubergers' response to Defendants' Motion is a leviathan of a record and a brief directed at, among other irrelevant issues, the merits of other cases the Neubergers have brought

in the past four years (most of which have settled or are still pending in federal court).

Essentially, the Neubergers argue that their violations of the Model Rules are justifiable because

their clients and their clients' supporters think that Defendants might retaliate against Ralph

Davis for the suit Davis settled a year and a half ago involving two people who are gone from the

Delaware State government.[1]  Plaintiffs' counsel's violations of the rules of conduct, however,

cannot be excused or condoned on the grounds of a purported constitutional right to counsel, the

Law Enforcement Officers Bill of Rights, or unproven allegations of wrongdoing by the

Defendants or defense counsel.  The Model Rules prohibit Plaintiffs' counsel from

communicating with or representing a "constituent" of the defendant organization.  Defendants

have the right to learn the facts of the case from their own management personnel.  To that end,

Defendants' Motion requests relief from the extraordinary claim of Plaintiffs' lawyers that they

should be present during privileged discussions between defense counsel and Capt. Davis.

## II.     ARGUMENT

The Neubergers' communications with Ralph Davis violate Rule 4.2 of the Model Rules

of Professional Conduct.  Their claim to represent Davis in these lawsuits, while simultaneously

representing Plaintiffs, also contravenes Rule 1.7 of the Model Rules, which prohibits

representations involving conflict of interests.  Defendants, on the other hand, have the right to

speak to Davis without Plaintiffs' counsel's inference.  Doing so is not a violation of any rules,

but a right of every employer.

---

[1] The named individual defendants in Davis's lawsuit are no longer employed by the State.  Col. Chaffinch retired as Superintendent of the DSP in May 2005.  Secretary James L. Ford retired as Secretary of the Department of Safety and Homeland Security in May 2004.

**A.      The Neubergers' Purported Representation Of Davis, A High-Ranking DSP Official, Violates Rule 4.2.**

      1.      Captain Ralph Davis Is A "Constituent" Of The DSP And Is, Therefore, A Represented Party Under Rule 4.2.

Davis is currently a captain and the Director of Planning for the DSP.  During much of the time period at issue in these cases, he was the lieutenant responsible for the Firearms Training Unit and the DSP's indoor firing range.  Most of the issues raised by Plaintiffs in their Complaints were within his responsibility, and he must, by virtue of his position within the organization, have dealt with them when they arose.  (See Price No. 04-956, D.I. # 47; Foraker, No. 04-1207, D.I. # 33 (Defs.' Opening Br. 9-10).)  Plaintiff's counsel do not dispute that, for purposes of this case, Davis is a "constituent" of the DSP, within the meaning of Rule 4.2.[2]  Model Rules of Prof'l Conduct R. 4.2 cmt. 7.  (Defs.' Opening Br. at 12-13.)  Counsel also do not dispute that Davis's actions as a management employee and Plaintiffs' supervisor, as well as his testimony regarding the material allegations in these cases, may be imputed to the DSP for purposes of civil liability.  See, e.g., EEOC v. HORA, Inc., No. Civ.A. 03-CV-1429, 2005 WL 1387982, at *12-*13 (E.D. Pa. June 8, 2005) (concluding that administrative assistant fell under Rule 4.2 because she may impute liability to employer) (Price No. 04-956, D.I. # 46; Foraker, No. 04-1207, D.I. # 32.(App. to Defs.' Opening Br. at A-6 – A-24)); Belote v. Maritrans Operating Partners, L.P., No. CIV. A. 97-3993, 1998 WL 136523, at *1-*3 (E.D. Pa. Mar. 20, 1998) (concluding that barge captain fell under Rule 4.2 because "it is his actions with respect to the maintenance of the barge which will be at issue.") (App. to Defs.' Opening Br. at A-25 – A-

---

[2] On this point, plaintiffs' counsel remark that the Court is faced with a "case of first impression," but they make no argument that Davis is not a "constituent" whose acts and testimony can be imputed to the DSP.  (Pls.' Answering Br. at 34.)  The existing case law leaves no doubt that Davis is a constituent under Rule 4.2, which perhaps explains counsel's reticence on the issue.  See EEOC v. HORA, Inc., No. Civ.A. 03-CV-1429, 2005 WL 1387982, at *12 (E.D. Pa. June 8, 2005); Carter-Herman v. City of Philadelphia, 897 F. Supp. 899, 903 (E.D. Pa. 1995).

31)).  In fact, Plaintiffs' counsel acknowledge the central role Davis plays in the facts underlying these actions.  (See Price No. 04-956, D.I. # 53; Foraker, No. 04-1207, D.I. # 38 (Pls.' Answering Br. at 15).)  For purposes of Rule 4.2, therefore, Davis is a "person represented by counsel" for the DSP.

>       2.       Stephen Neuberger Has Conducted Communications With Captain Davis
>                That Are Clearly Prohibited By Rule 4.2.

It appears from Plaintiffs' Answering Brief that in his zeal to protect his unethical relationship with DSP-constituent Ralph Davis, attorney Stephen Neuberger has turned what may have been a technical but real violation of Rule 4.2 into a serious ethical breach that may justify disqualification of the Neuberger firm from these lawsuits.  Stephen Neuberger represents in his unsworn declaration to this court that since Defendants filed this Motion, he has "had multiple and extensive discussions with Capt. Davis about whether a conflict of interest exists between the Firm's representation of him and that of the plaintiffs."  (Price No. 04-956, D.I. # 54; Foraker, No. 04-1207, D.I. # 59 (App. to Pls.' Answering Brief at B1330 (Stephen Neuberger Unsworn Decl. ¶ 64)).)  Despite the protestations of both Mr. Neuberger and Capt. Davis that they have not had "substantive" discussions about the case, Mr. Neuberger could not possibly have had communications with Davis sufficient to make a determination on a conflict of interest without discussing the merits of these cases, thereby violating Rule 4.2's prohibition on communications with a represented party.

In their Opening Brief, Defendants identified the subjects about which they expected Capt. Davis to have information relevant to the lawsuits and about which they want to interview Davis.  (See Defs.' Opening Br. at 9-10.)  These subjects involve matters within Davis's supervisory responsibility at the DSP, and the parties have factual disputes in most or all of these subjects.  In order to make the statement that he sees no conflict of interest prohibited under

Model Rule 1.7, Mr. Neuberger must of necessity have debriefed Capt. Davis on the ten subjects Defendants have identified, and he must have compared Davis's possible testimony with that of his litigant-clients.  Without such discussions, Mr. Neuberger cannot have assured himself that Davis will not testify adversely to plaintiffs Price, Warren, and Foraker on those ten subjects.  By telling the Court that he has made a determination that there is no conflict of interest between Davis and the current plaintiffs, Stephen Neuberger is assuring the Court that he as delved so far into Capt. Davis's knowledge of the substance of the dispute that he knows what Davis will say; Accordingly, Mr. Neuberger has violated Rule 4.2 by communicating with a "constituent" of the DSP "about the subject of the representation" the defense attorneys have with the DSP.[3]

Stephen Neuberger also represents that he has observed a "self-imposed" restriction on his communications with Davis, notwithstanding his statement in the same paragraph of his declaration that "[t]he Firm is well aware that we cannot talk to Capt. Davis about the substance of the present litigation."  (App. to Pls.' Answering Br. at B1330 (Stephen Neuberger Unsworn Decl. ¶ 66).)  These statements are contradictory.  Either Davis is a "constituent" of the DSP under Rule 4.2, in which case Mr. Neuberger is barred from communicating with him, or he is not, in which case Mr. Neuberger is free (and likely obligated) to talk to him about the case. Whether Mr. Neuberger has observed a self-imposed restriction to avoid the consequences of Defendants' Motion to bar certain communications or to disqualify his firm is irrelevant.  By asserting the right to represent Davis in these lawsuits, Mr. Neuberger is announcing that either he has already violated the Rule or he is about to violate it.  In either case, court intervention is

---

[3] Since it is doubtful that Mr. Neuberger has anticipated all questions defense counsel might want to ask Captain Davis, his assurance that there is no conflict should be given no weight.

necessary to protect the integrity of the judicial system and the attorney-client relationship between defense counsel and the DSP and its employees.

The remedy depends on the extent of the violation of the Rules. At the point Defendants filed this Motion, they knew of only one improper communication between Ralph Davis and Stephen Neuberger, the subject being the September 2, 2005, e-mail from Col. MacLeish's secretary to a number of DSP officials concerning one of the Plaintiffs' document requests.[4] Given the recent declarations of complete and thorough debriefings of Davis by Stephen Neuberger, however, Rule 4.2 may require disqualification of the entire Neuberger Law Firm from these cases. Defendants suggest that a hearing may be necessary for the Court to determine the extent of the Neubergers' invasion of the DSP's attorney-client relationship.

**B.     The Neubergers' Concurrent Representation Of Both Plaintiffs And Captain Davis Violates Model Rule 1.7.**

Plaintiffs' counsel are also violating Rule 1.7 by purporting to represent two sets of clients whose legal interests are in conflict. The conflict is not waivable. This dual representation materially limits the Neubergers ability to protect the rights and interests of one client or the other.

1.     The Interests Of Plaintiffs And Davis Are In Conflict.

Citing the unsworn declarations of all of their own so-called clients, Plaintiffs' counsel contend that that they can represent both Plaintiffs and Davis because their interests are "aligned." They claim that "[a]ll of us wanted to fix the many problems at the range." (See, e.g., App. to Pls.' Answering Br. at B1315 (Davis Unsworn Decl. ¶ 23).) This personal and

---

[4] As explained in Defendants' Opening Brief, the September 2, 2005 e-mail merely asked a number of DSP officials, including Davis, to search for documents *requested by Plaintiffs themselves.* (Defs. Opening Br. at 6.) It also advised these officials to cooperate with defense counsel in producing the documents. (Id.) The Neubergers cannot dispute that the e-mail concerns the subject matter of this case.

occupational objective is shared by hundreds of DSP personnel, hundreds of other employees and elected officials of the State of Delaware, and the public at large. It is not a legal interest cognizable in a Rule 1.7 analysis. Plaintiffs' counsel and Davis also contend that Davis and Plaintiffs have the same interests because Davis allegedly fears the "retaliation" experienced by Plaintiffs (and other Neuberger clients).[5] Shared suspicion of or animosity towards Defendants, however, may be an alignment of political interests, but it is not an alignment of legal interests. Nor it will not substitute for an examination of the legal issues in these lawsuits. The ten subjects identified by Defendants about which Davis has knowledge largely involve Davis's supervisory responsibility over the firing range and the Plaintiffs. (Defs.' Opening Br. at 9-10.) In order for Davis to give testimony that supports Plaintiffs on some of these points, he will have to confess incompetence as a supervisor. Since Davis has been rated as competent or better in every rank he has ever held on the police force, Defendants do not think he will prove that he was incompetent as the lieutenant in charge of the firing range. They have every expectation that he will provide testimony adverse to Price, Warren, and Foraker. Defendants and their counsel, however, cannot at this point be certain because they have not been able to speak to Davis.

      2.     <u>The Neubergers' Ability To Represent Both Plaintiffs And Davis Has Been And Will Be Materially Limited.</u>

Plaintiffs' counsel do not concern themselves with the real and obvious conflict arising out of the simultaneous representation of Plaintiffs, on the one hand, and Davis, on the other,

---

[5] Davis's fears are unreasonable and completely unsubstantiated. Davis considers a rumor that, upon his promotion, he was to be assigned to a position inconveniently far from his home to be retaliation. (App. to Pls.' Answering Br. at B1314 (Davis Unsworn Decl. at ¶15).) As a matter of fact, Davis was assigned to a job 50 yards or less from his prior assignment. Davis also claims retaliation in that his promotion to the rank of Captain was announced by the Secretary of Safety and Homeland Security rather than by Col. Chaffinch, then Superintendent of the DSP. Although noting that announcement by the Secretary was "unheard of" and was "commented on by … other Troopers" (Pls.' Answering Br. at 12-13), Davis does not say that it hurt him in any cognizable way, and goes so far as to say it was preferable. (App. to Pls.' Answering Br. at B268-B269 (Dep. of R. Davis 77:16-78:3).)

who was Plaintiffs' former supervisor and is a key "fact witness." The Neubergers also fail to address the limitations on their advocacy for both "clients" that will result from concurrent representation.

The Neuberger's inability to represent both Davis and Plaintiffs was made plain at Davis' deposition. Plaintiffs' counsel noticed, subpoenaed, and then examined Davis. But Davis was also their client during this deposition.[6] During his examination of Davis, Stephen Neuberger was confronted with an irreconcilable conflict:  question his own "client" zealously in a way that may not be in Davis's own best interest or hold back from such questioning, thereby failing to pursue the interests of the Plaintiffs. See Jones v. Daily News Publ'g Co., No. Civ. 1999/138, 2001 WL 378846, at *2 (D.V.I. Mar. 16, 2001) (App. to Defs.' Opening Br. At A032 – A-36).

Beyond his deposition, it is likely that Davis will testify at the trials of these cases. The Neubergers' duties of loyalty and competence to Davis will require them to prepare him to testify about, among other things, whether and when Plaintiffs stopped doing maintenance at the firing range and whether and when that information was passed along to Defendants.  The Neubergers will also have to prepare Davis for any cross-examination.  However, if Davis gives testimony favorable to the Defendants, the Neubergers may find that they have to cross-examine Davis aggressively.  Such a course of action would, of course, be inconsistent with their duty to protect Davis's interests.  In the end, these circumstances illustrate the conflict of interest that the rules are designed to prevent. See, e.g., Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc., 142

---

[6]  Davis declares that he originally intended to go unrepresented at the deposition. (App. to Pls.' Answering Br. at B1313 (Davis Unsworn Decl. ¶ 10).)  At the very least, Davis's surprising claim is inconsistent with the numerous statements that the Neubergers have continuously and consistently represented Davis in "all matters relating to [his] employment." (Id. at B1312 (Davis Unsworn Decl. ¶ 3).)  As a practical matter, it is apparent that Davis was represented at the deposition by the Neubergers – at least during cross-examination by defense counsel. (See, e.g., App. to Defs.' Opening Br. at A-3-A-5 (Davis Dep. 60:1-67:2) (showing Stephen J. Neuberger asserting numerous privilege objections on Davis's behalf and directing Davis not to answer questions).)

F. Supp. 2d 579, 583 (D. Del. 2001) (noting that concurrent conflict of interest rule guards against "a risk of divided loyalty to each client or an imposition on the independent judgment [of the lawyer]"); Dauro v. Allstate Insurance Co., No. Civ. A. 1:00CV138RO, 2003 WL 22225579, at *7 n.2. (S.D. Miss. Sept. 17, 2003), aff'd, 114 Fed. Appx. 130 (5th Cir. 2004) (noting that the "inherent conflict" arising from concurrent representation of plaintiffs and "key former employees") (App. to Defs.' Opening Br. at A-40 – A-47).

3.     <u>Plaintiffs' Counsel's Conflict Of Interest Between Plaintiffs And Davis Cannot Be Waived.</u>

Plaintiffs' counsel claim that any conflict of interest has been waived in this case. (Pls.' Answering Br. at 36; <u>see also</u> App. to Pls.' Answering Br. at B1303-B1304 (Price Unsworn Decl.¶¶ 4-11); B1306-B1308 (Warren Unsworn Decl. ¶¶ 4-11); B1309-B1311 (Foraker Unsworn Decl. ¶¶ 4-11); B1312-B1315 (Davis Unsworn Decl. ¶¶ 20-24); B1329-B1330 (Stephen Neuberger Unsworn Decl. ¶¶ 60-66).) Given that the Neubergers will necessarily have to sacrifice their duty of zealous representation to at least one of their clients, however, this conflict is not subject to waiver. <u>See</u> Model Rules of Prof'l Conduct R. 1.7 cmt. 15 ("[R]epresentation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation."). It is also not at all clear how counsel could have reached a conclusion that there is no conflict when they have asserted repeatedly that they have not spoken with Davis about the "substance" of these cases. As noted above, Defendants suggest that the Court convene a hearing to see how extensive the Rule 4.2 violation has been. Regardless of the outcome of the Rule 4.2 issues, however, Plaintiffs' counsel are operating under a non-waivable conflict of interest that, as an immediately practical matter, has at least tainted Davis's deposition.

Davis's refusal to be represented by defense counsel and his belief that defense counsel have interests that are in conflict with his own are based on a mistaken understanding of his role as a DSP "constituent." Davis is not the client. Defense counsel do not represent Davis in any individual capacity, but they do represent him as an official of the defendant DSP who has certain factual information relevant to these lawsuits and as a constituent of the DSP whose knowledge and actions are imputed to the DSP as a legal matter. Thus, because the DSP and its superintendent are clients, Davis's subjective preference for counsel and his belief that DSP counsel would be antagonistic to his personal interests is immaterial.

## C.     Defendants' And Their Counsel Have Not Violated Any Rules Of Professional Conduct Or Engaged In Any "Illegal Actions."

Apparently working on the supposition that the best defense against a claim of unethical conduct is a good offense, Plaintiffs' Answering Brief asserts that Defendants and their lawyers have themselves violated Rule 4.2, have denied Davis a constitutional right to counsel, and have threatened him with "retaliation" of some unspecified kind. These accusations are baseless. Davis is a high-ranking DSP manager with knowledge about the case. He is under no suspicion of wrongdoing. He has an excellent work history and has no discipline pending against him. Defendants seek to have a basic factual conversation "unencumbered by the untrammeled access of [Plaintiffs' counsel]" so that they can develop a full and accurate record and prepare their defense. Jones, 2001 WL 378846, at *2. Defendants, as employers responsible for the efficient management of a large public agency now being sued, have a right to perform this factual inquiry. Because the interaction defense counsel seek with Davis is routine, factual, and non-disciplinary, Davis does not have a constitutional or statutory right to counsel. Moreover, defense counsel, at all times, reasonably considered Davis to be an employee under their

representation for purposes of these limited communications regarding these lawsuits.

Accordingly, defense counsel did not violate Rule 4.2.

        1.    <u>Defendants And Defense Counsel Have A Right And A Duty To Speak To Davis.</u>

Defendants and the DSP, like any other employer, want their attorney to speak with a knowledgeable management employee about the facts involved in pending lawsuits. Defendants have the right and obligation as managers of a public agency to perform this basic factual investigation without counsel for the other side being present. The well-known privileges and protections afforded attorney-client communications and attorney-work product establish that the Plaintiffs' attorneys have no right to interfere in the process.[7]

Defendants and defense counsel have interviewed a number of present and former DSP employees. None has been considered a target of an investigation or threatened with any disciplinary proceeding. Contrary to Plaintiffs' counsel's overwrought fears, Davis has experienced no threats of retaliation – not even a harsh word. He is not now under investigation. There are no foreseeable circumstances under which Davis will be subject to any investigation for wrongdoing or otherwise threatened with adverse employment actions for cooperating in the preparation of the defense of these lawsuits against his employer.

---

[7] Plaintiffs' counsel suggests that their presence at counsel's interview of Davis would work no prejudice because Defendants' "trial strategy" is already well known. (Pls.' Answering Br. at 20-22, 30.) Notwithstanding Thomas Neuberger's vast experience and near-preternatural understanding of the thought processes of defense attorneys, it is certainly conceivable that a defense attorney might have an insight or theory of the case that eluded Mr. Neuberger. He is not entitled to uncover it by sitting in on interviews of a defense witness.

2.    Davis Has No Constitutional, Statutory, Or Public Policy Right to Have
      Plaintiffs' Counsel Present At Any Interview Conducted By His Own
      Employer.

Plaintiffs' counsel contend that "Davis has an absolute First Amendment right," as well

as a statutory right, to be represented by counsel as a witness in these proceedings.  (Pls.

Answering Br. at 22.)  These inflated assertions are an effort to distract the Court from counsel's

unethical conduct.  Ralph Davis does not have a right to counsel at an interview by his

employers' attorney in preparation for a defense of these lawsuits.

First, Plaintiffs' counsel devote not even a sentence of Plaintiffs' Answering Brief to the

obligations of a high-ranking employee to his employer, in this case the DSP.[8]  As Defendants

pointed out in the Opening Brief, an employee like Davis has duty of loyalty to cooperate with

his employer and its counsel.  See In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001);

United States v. Sawyer, 878 F. Supp. 295, 296 (D. Mass. 1995); Williams v. Pima County, 791

P.2d 1053, 1056-57 (Ariz. Ct. App. 1989).  As discussed above, an employer also has a right to

insist that employees not hinder or interfere with its operations and investigations.  See, e.g.,

Chotiner v. Phila. Hous. Auth., No. Civ.A.02-9504, 2004 WL 2915296, at *7 (E.D. Pa. Dec. 15,

2004) ("Governmental agencies would grind to a halt if employees could ignore their superiors'

lawful directives simply by asking to call counsel on the spot.").  The insistence in this case that

Davis cannot be questioned by counsel for Defendants in the absence of the Neubergers

interferes with the ability of the DSP to serve the residents of Delaware without the undue

involvement of opposing attorneys.  An employee has no public-policy right to an attorney

---

[8]  It is uncontested that because Plaintiffs sued former Col. Chaffinch, Col. MacLeish, and Secretary Mitchell in
their official capacities, the DSP and the Department of Safety and Homeland Security constitute the "real part[ies]
in interest."  Jones v. Lilly, 37 F.3d 964, 966 (3d Cir. 1994) ("[T]he [Supreme] Court explained that the real party in
interest in an official capacity suit is not the individual but rather the entity of which the officer is an agent.") (citing
Hafer v. Melo, 502 U.S. 21 (1991)).

where the purported representation would interfere with the employer-employee relationship and the undisputed right of the employer to conduct its own internal investigations.  See, e.g., Chotiner, 2004 WL 2915296, at *4-*8 (rejecting claim that defendants terminated plaintiff for engaging in the allegedly protected speech of asking for counsel).  Plaintiffs have cited no cases that hold to the contrary.

Second, Plaintiffs' counsel fail to establish how Defendants' proposed communications implicate the First Amendment, the source of Davis' proclaimed constitutional right to counsel. (See Pls. Answering Br. at 23 (asserting that Defendants "seek to use the ethical rules to deprive Capt. Davis of his First Amendment rights").)  For example, the free-speech and petition-clause protections of the First Amendment do not attach to a routine interview of an employee to explore matters within the scope of his job.  Chotiner, 2004 WL 2915296, at *4; Bradshaw v. Township of Middletown, 296 F. Supp. 2d 526, 546 (D.N.J. 2003) (holding that Petition Clause "only applies to petitions in the nature of a lawsuit or grievance"); Cipriani v. Lycoming County Housing Auth., 177 F. Supp. 2d 303, 322-23 (M.D. Pa. 2001).  Even if Davis's wish for legal representation were motivated by a public concern greater than his own self-interest, it does not, for the reasons discussed above, "exceed the [DSP's] interest, as an employer, in running an efficient, effective, workplace." Chotiner, 2004 WL 2915296, at *7 (citing Connick v. Myers, 461 U.S. 138, 150-51 (1983); Curinga v. City of Clairton, 357 F.3d 305, 309 (3d Cir. 2004)). This is particularly so given the high-ranking position Davis occupies.  Id. (citing Rankin v. McPherson, 483 U.S. 378, 390-91 (1987)).

Not only does Davis not have a public-policy or constitutional right to counsel, he does not, under the circumstances present here, have a right to an attorney in these circumstances under the Law Enforcement Officers Bill of Rights.  Del. Code. Ann. tit. 11, § 9200.  That statute

provides that an officer "under investigation or … subjected to questioning for any reason which

could lead to disciplinary action, demotion or dismissal … shall have the right to be represented

by counsel …." Id.  The defense seeks merely to question Davis about the facts in this lawsuit;

he is not under investigation or being questioned for reasons that could lead to disciplinary

action.  Although Plaintiffs' counsel and Davis imagine that Defendants' only goal is to "set

[Davis] up" for the alleged problems at the firing range (Pls.' Answering Br. at 21), this assertion

is not supported by the record, and Defendants disclaim any such intent.  Defendants simply

want to find out what happened at the range from the lieutenant responsible for it.

> 3.    The Neubergers Did Not Inform Defense Counsel Prior To The Deposition That Davis Was Represented By The Neubergers As A Witness In This Case.

Plaintiffs accuse defense counsel of engaging in "illegal" conduct and violating Rule 4.2

in connection with the "document collection e-mail."  (Pls.' Answering Br. at 32-33.)  Plaintiffs'

allegation of "unclean hands," however, is completely unfounded.  It is true that Plaintiffs'

counsel gave defense counsel a "heads up" that Davis was their client.  (App. to Pls.' Answering

Br. at B1332 (E-Mail from Stephen J. Neuberger to Robert J. Fitzgerald (dated July 26, 2005)).)

Plaintiffs' counsel, however, later assured defense counsel that they had had no communications

with Davis about this case.  (App. to Defs.' Opening Br. at A-2 (E-Mail from Edward T. Ellis to

Stephen J. Neuberger and Thomas S. Neuberger (dated Sept. 5, 2005)).)  The only reasonable

interpretation of Plaintiffs' counsel's explanation was that they continued to represent Davis in

his earlier, but wholly unrelated lawsuit, but did not purport to represent him in the instant cases.

If indeed the Neubergers thought they represented Davis in the Price/Foraker litigation, they

would not have a "self-imposed" restriction on communications with him, nor would they have

needed to take Davis's deposition.  Once it was clear that the Neubergers insisted on representing

Davis in this case, Defendants filed this Motion seeking relief from the Neubergers' ethical violations.[9]

### D.    Precluding The Neubergers From Representing Ralph Davis Is A Necessary And Narrowly Drawn Remedy For Their Violation Of Ethical Rules.

Citing this Court's balancing of the factors in Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc., 142 F. Supp. 2d 579, 583-85 (D. Del. 2001) (citing In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 162 (3d Cir. 1984)),  Plaintiffs' counsel claim that it would be inappropriate to preclude them from concurrently representing Davis.  (Pls.' Answering Br. at 37-40.)

Until recently, Defendants believed that requiring the Neubergers to withdraw from their representation of Ralph Davis was a necessary and narrowly defined way to halt the ongoing violation of two ethical rules and avoid any appearance of impropriety associated with Plaintiffs' counsel purported representation of a senior DSP official.[10]  See, e.g., IBM v. Levin, 579 F.2d 271, 283 (3d Cir. 1978) (stating doubts should be resolved in favor of disqualification to avoid even an appearance of impropriety); Webb v. E.I. DuPont De Nemours & Co., 811 F. Supp. 158, 160 (D. Del. 1992) (same); see also, e.g., Elonex, 142 F. Supp. 2d at 583 (stating that "disqualification is ordinarily the result of a finding that an ethical rule has been violated).  Such a remedy would not in any way reduce the value of the time, money, and efforts the Neubergers have expended on behalf of Plaintiffs.  Nor would it offend the "fragile emotional and

---

[9]  Defense counsel's conduct differs markedly from the actions of the Neubergers.  Although they claim that they lacked the "intent" to violate Rule 4.2, the Neubergers ignored the obvious concern that their contact and representation of Davis violated the Model Rules.  Instead of seeking guidance from the Court or an ethics body, the Neubergers recklessly agreed to represent both plaintiff-employees and a high ranking official of the employer.  See, e.g., HORA, Inc., 2005 WL 1387982, at *17 (disqualifying counsel who committed ethical violations by recklessly "ignoring the unsettled nature of the law" at issue) (quoting Belote, 1998 WL 136523, at *7).

[10]  Davis himself has agreed to obtain new counsel if the Court concludes that the Neubergers are prohibited from representing him in these cases.  (Pls.' Answering Br. at 40.)

psychological condition" of Plaintiffs.  (Pls.' Answering Br. at 39.)  It would not delay these proceedings; if it were deemed necessary Davis could find competent counsel who could "get up to speed" in short order.[11]

Moreover, this limited remedy would allow Defendants to exercise their right to talk to their employee about issues concerning his employment, as well as litigation issues, without Plaintiffs' lawyers being there. It would also protect Defendants' legitimate interest in preserving the privilege and confidentiality of any communications between its counsel and Davis.  This privilege is not grounded, as Plaintiffs' counsel surmise, on a "common interest" or "joint defense" claim. (Pls.' Answering Br. at 31.)  Rather, Defendants seek to obtain competent legal advice by having their counsel speak with a high-ranking official (in fact, a "constituent") who has firsthand knowledge of the facts at issue.  Upjohn v. United States, 449 U.S. 383, 394-95 (1981).  The case law cited by Plaintiffs in no way calls into question the privileged nature of such communications.[12]  Lastly, preventing the Neubergers from representing Davis, which would require that the DSP conduct all conversations with its own employee in the presence of the Neubergers, avoids a farce in which concepts like attorney-client privilege and attorney work product are meaningless.

---

[11] Contrary to Plaintiffs' counsel's claim that "defendants have sat on this issue" (Pls.' Answering Br. at 39), Defendants acted quickly and properly to seek a remedy for the Neubergers' continuing violation of binding ethical rules.  Having raised this issue with opposing counsel on several occasions, defense counsel gave the Neubergers one last opportunity to withdraw from representing Davis before filing this motion.  (App. to Pls.' Answering Br. at B1348 (E-Mail from Edward Ellis to Thomas S. Neuberger (dated October 12, 2005)).)  The Neubergers chose not to respond.

[12] See United States v. Furst, 886 F.2d 558, 574-76 (3d Cir. 1989)(rejecting employee-defendant's claim that he had attorney-client relationship with employer's counsel and also concluding that defendant had no reasonable expectation of confidentiality); Eisenberg v. Gagnon, 766 F.2d 770, 787-88 (3d Cir. 1985) ("Communications to an attorney to establish a common defense strategy are privileged *even though the attorney represents another client with some adverse interests*." (citations omitted) (emphasis added)); Gov't of V.I. v. Joseph, 685 F.2d 857, 862 (3d Cir. 1982) (considering non-employment situation where interests were "completely antagonistic" at all times and counsel made it clear he did not represent defendant).  None of these cases supports the proposition that there is no attorney-client privilege when the DSP attorneys interview DSP managers with the full expectation that the privilege applies.

Given Stephen Neuberger's declaration that his contact with Davis has been more extensive than previously known (App. to Pls.' Answering Br. at B1330 (Stephen Neuberger Unsworn Decl. ¶ 64)), it may be that disqualification of the Neuberger firm from these cases is the more appropriate remedy under Rule 4.2.  Defendants initially requested the limited remedy described above when they knew of only one violation of Rule 4.2, the communications between the Neubergers and Davis regarding the "document collection e-mail" of September 2, 2005. While Mr. Neuberger declares that his new communications were limited to issues of conflicts of interests, it is simply not possible that the conversations could have avoided, among other things, the ten subjects identified by Defendants as directly relevant to their defense of these cases. Accordingly, the limited remedy of barring any additional communications between the Neubergers and Davis may not be sufficient to repair the damage done by Mr. Neuberger's communications with Davis about the substance of these actions.  Defendants now suggest that the Court conduct a hearing to discover the extent of Mr. Neuberger's debriefing of Defendants' employee and the appropriateness of the disqualification remedy.

III.    **CONCLUSION**

For the reasons stated above and in Defendants' Opening Brief, Defendants request that the Court grant its Motion and preclude Thomas S. Neuberger and Stephen J. Neuberger from representing Capt. Ralph Davis and bar any additional ex parte communications.  Alternatively, Defendants ask the Court to disqualify the Neubergers from representation of Plaintiffs Price, Warren, and Foraker.


MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP


Date:  November 28, 2005                    /s/ Noel C. Burnham_____
                                            Noel C. Burnham (DE Bar No. 3483)
                                            Richard M. Donaldson (DE Bar No. 4367)
                                            Montgomery, McCracken, Walker & Rhoads, LLP
                                            300 Delaware Avenue, Suite 750
                                            Wilmington, DE 19801
                                            Telephone:  (302) 504-7840
                                            Facsimile:  (302) 504-7820

                                            Edward T. Ellis
                                            Robert J. Fitzgerald
                                            Montgomery, McCracken,
                                              Walker & Rhoads, LLP
                                            123 South Broad Street
                                            Philadelphia, PA  19109
                                            (215) 772-1500

                                            Counsel for Defendants

## CERTIFICATE OF SERVICE

I, Noel C. Burnham, hereby certify that on the 14th day of October 2005, I electronically filed the foregoing *Reply Brief In Support of the Motion of the Defendants To Bar Certain Communications of Counsel or, In the Alternative, To Disqualify Counsel* with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and mailed teo (2) copies to the following by postage pre-paid U.S. Mail:

Thomas Stephen Neuberger, Esq.
Stephen J. Neuberger, Esq.
The Neuberger Firm, P.A.
Two East Seventh Street, Suite 302
Wilmington, DE  19801

Martin D. Haverly, Esq.
Martin D. Haverly, Attorney At Law
Two East Seventh Street, Suite 302
Wilmington, DE  19801

*Counsel for Plaintiffs*


                    */s/ Noel C. Burnham*
                    Noel C. Burnham (DE Bar No. 3483)