# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CORPORAL B. KURT PRICE, et al.,   :
             :
    Plaintiffs,     :
             :   C.A. No. 04-956-GMS
    v.       :
             :
COLONEL L. AARON CHAFFINCH, et al., :
             :
    Defendants.    :

---

SERGEANT CHRISTOPHER FORAKER,  :
             :
    Plaintiff,     :
             :   C.A. No. 04-1207-GMS
    v.       :
             :
COLONEL L. AARON CHAFFINCH, et al., :
             :
      Defendants. :

## DECLARATION OF PAUL ECKRICH

   Paul Eckrich, Major, Delaware State Police, makes the following declaration pursuant to

28 U.S.C. § 1746:

    1.   I am a Major with the Delaware State Police ("DSP"), in charge of budget

and administration.

    2.   On March 17, 2004, I attended a meeting with then-Lt. Col. Thomas

MacLeish, Sgt. Christopher Foraker, Cpl. Kurt Price, Cpl. Wayne Warren, and others to discuss the

issues relating to the DSP's indoor firing range. Among the issues discussed were tests that had been

conducted on the air quality in the firing range.

A - 457

3.    At the close of the meeting, Lt. Col MacLeish asked the troopers assigned to the Firearms Training Unit whether they needed anything else done concerning their health.

4.    The troopers assigned to the Firearms Training Unity responded that Kurt Price and Wayne Warren were experiencing hearing loss.

I declare under penalty of perjury that the foregoing is true and correct.

Maj. Paul Eckrich, Delaware State Police

Date:  January 24, 2006

A - 458

①

01·30·04          (Range)          | Capt. Warren
                                   |    Lt. Col.

- trip to Las Vegas. Greg          |    me
  will ✓, Δ ~~flight~~             |    Ralph
  people on flight (Ashley)?

- 5th person at Range?  O.T. + amt of
  time/work - (recruits, other depts., in-service, etc.)

- Range -
  - Air handler - hanging ceiling?
    (12·14 ft. ?)

  - bullet trap - 3 yrs ago frangible  material
    due to lead problems
    frangible material clogging up filters +
    heads

  Solution - Δ way we do things. Get
             away from frangible.
    - Clean - fire round - Lawman has it
        lead free at pt. of fire.
    Action Target (Casey's Heating & Air)
    - Recommend they come in + do study.

*(left margin, vertical)* G'Greg recommends not shutting down range at this pt.

*(left margin)* what we are going to do

  - $2800 for air monitor (Foraker has in Budget)
  - Action target come in and do study (Greg & Ralph we or me)
  - Clean fire Δ over. ✓ specs for conversion
  - Alternative sites
  - Wear masks immediately.

A - 459                              D10906

02.02.04

Academy Issues

Greg W.
MAC
me

- Range: Greg's rpt. done (less review) - will have done tomorrow.
    I asked for a copy.

✳ - look for McDonald's Range Stuff (old)

{ - will finish w/ recruits this week.
  - Feb 11th - SORT will shoot w/ monitors

- $1200 to look at air handler (Ventilation System)
    ↳ Carey's Heating & Air (Ill.) at Range.

**A - 460**

**D10905**

## Information Record   Range Mtng

D3.17.04

**Name** _____ 1000 hrs

**Subject** _____ Fru. (4)

**Organization** _____ museum Conf. rm.

**Telephone - Business** ____ LT Col.
me
Warren

**Address** _____

**Home** ___ Davis
Sharp

**Fax** ___ J.Y.

**Other** _____

| Date | Follow-up | Notes |
|------|-----------|-------|
| LT. Col: → | | hand out J.Y. rpt. + Homin K's. |
| ✱ | | 5th person - at Range. |
| | | - Agreement in writing w/ Fac. Mgt. who will be responsible for what. |
| | | Priority ① - Clean Range |
| | | √ w/ Fac. Mgt. to see where we are |
| (Responsibility) | | Range personel → wk on SOP - maintenance Ck on Ammo. (Canada Agency) Contact MO grp to arrange trip. |
| | | Warren - will contact Fac. mgt ("light a fire under them") "we will" |
| | | "meet every 2 weeks" |
| | | Air report done in 2 weeks. |
| LT. Col. | | anything else you guys need to have done health wise. |
| ✱✱ ✱✱ | Hearing | - K.P. losing hearing in both ears. W.W. also losing hearing. |

**A - 461**

**D10781**

©1997 Franklin Covey Co. Printed in USA

Original–MO 17429

Range - Chronology of Events

12-19-03 (Fri) - 1st e-mail from Foraker

01-05-04 (Mon) 2nd e-mail from Foraker

01-05-04 ~~01-15-04~~ mt w/ MAC, me, Warren, Davis, Alexander

01-30-04    Mting w/ Warren, Davis, Lt. col. me.
            Warren rec. not to shut down Range at this time

02-02-04    Mting w/ Warren, MAC, me

02-03-04 (approx.) rec'd Warren Rpt.

02-10-04    Devore, Tiller, MAC, me, Warren, Foraker, Bryson

02-25-04    meet w/ Neilson Assoc. Inc
Am.         FTU - Warren, Sharp, me  2 from NAI

2-25-04     Corey's - Action Target Presentation
pm.              Fac. mgt. - Academy, Lt. col. Sharp, me

3-1-04      me, MAC.  ~~@~~ Skip, JY (Lt. col. gave choose to JY & Skip).

3-4-04      . Foreman, Fac mgt.    MAC, me, Sharp

3-16-04     MAC. & me  (Plan)

3-17-04     Museum - FTU - MAC - Sharp, me        (2) NAI tests
            Yeomans & Skip rpt. handed out.              ① 2-11-04
            2nd NAI rpt. handed out.                     ② 3-4-04

                                                     Provencher +
3-27-04     MAC, LT. Aviule, me.        A - 462       Action Target  bid.

                                                     FTU have been
                                                     to md. range.

D10782

From:       Yeomans John A (DSP)
Sent:       Monday, March 07, 2005 10:27
To:         MacLeish Thomas F (DSP)
CC:         rjfitzgerald@mmwr.com
BCC:
Subject:    FW: hearing evaluations

Colonel, to follow-up on our recent discussion relative to a hearing standard or policy here is what Dr. Aaron Green provided to me as to what his policy is regarding "normal hearing".

Clearly there is a threshold and a measure that he utilizes. He indicated that DR. Emmett had never called him regarding the standards. I will forward this to Dr. Emmett. I have started looking at a number of other State Police agencies hearing standards and they seem to be fairly consistent with the standard Dr.Green is utilizing.

I suppose we need to codify it and make sure it is ADA compliant.

## REDACTED

JY

-----Original Message-----
From: Aaron_Green@Bayhealth.Org [mailto:Aaron_Green@Bayhealth.Org]
Sent: Monday, March 07, 2005 09:52
To: Yeomans John A (DSP)
Cc: Ralph_DeFriece@Bayhealth.org; Jack_Dilts@Bayhealth.Org; Rex_Evans@bayhealth.org; Debbie_Pfaffenhauser@Bayhealth.Org
Subject: hearing evaluations


Captain Yeomans

The officers that have their hearing evaluations performed at Healthworks are usually baseline tests for the new recruits and annual surveillance test for other officers. And the rare instance where we evaluated officers for fitness for duty with regards to their hearing impairments. In the case of the new recruits we would consider a threshold average of 25 dB or less in either ear on testing at 500, 1000, 2000, and 3000 Hz to be normal. An ENT referral would be recommended for any baseline test above a threshold average of 25 dB in either ear. Also a mean difference in acuity between the two ears of 15 dB at lower frequencies (500 to 2000 Hz), or a 30-dB difference at higher frequencies (3000 to 6000) on baseline audiometry would result in recommending and ENT referral. The annual surveillance audiograms are considered normal if there is less than a 10 dB shift from their baseline at 2000, 3000, and 4000 Hz...officers that are noted to have a shift should have repeat testing in 30 days to determine if the shift was transient or permanent in which case a revision in their baseline may be required. We also recommend ENT referral for periodic examinations for findings of 15 dB at the lower frequencies or a high frequency loss of 20 dB. We would also make and ENT referral for persistent ear pain, drainage, dizziness, severe persistent tinnitus, or sudden, fluctuating, or rapidly progressive hearing loss not explained by a history of noise exposure alone.

In terms of fitness for duty and audiogram results, there are a number of variables that influence our recommendations. All officers that are able to hear  with the pure-tone audiometry at 25 dB or better in the 2000 -6000 Hz range are cleared immediately. If an ENT referral is made the officer would be on medical hold pending their ENT evaluation. The difficulty occurs when officers have a significant hearing impairment either at baseline or found during annual surveillance in excess of 40dB. Unfortunately pure-tone audiometry may not reflect impairment based on inability to function as an officer. A more thorough evaluation of fine discrimination of sound is usually

**A - 463**

D20483

required given the enormous role individual differences have on impairment despite the absolute value of standardized testing. Thanks for the opportunity to comment. .... Aaron Green M.D.

---

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message and any attachment(s) is intended only for  the confidential use of the intended recipient(s) named above. This e-mail message and any attachment(s) may contain confidential health information or other confidential information that is legally privileged and exempt from disclosure under applicable law. If the reader of this e-mail message is not the intended recipient or the employee agent responsible for  delivering it to the intended recipient, you should be aware that any dissemination, distribution, copying or action taken in  reliance on the content of this e-mail message or any attachment(s) is strictly prohibited.  If this e-mail has been received  in error, please notify us immediately via e-mail at Bonnie_Millman@Bayhealth.org and delete or otherwise destroy the original message, any attachment(s) and copies.  Thank you for your cooperation.

**A - 464**

**D20484**

**DISABILITY LEAVE/MODIFIED DUTY ASSIGNMENT DURING REHEBILITATION
FROM INJURY OR ILLNESS (22.2.1c)(22.2.4)**

**POLICY STATEMENT:** It is the policy of the Delaware State Police to
provide reasonable accommodation to allow an injured or ill
employee to retain salary and benefits.  Reasonable accommodation
may be in the form of workers' compensation benefits, sick leave,
and other accrued leave, permanent or temporary reassignment or
job-restructuring, or a combination of these functions.

In the event that the illness or injury is or becomes permanent
or exceeds the temporary benefits provided and the employee is
unable to perform essential job functions, the policies
regarding pension or separation shall apply.

1.    **Workers' Compensation**

   A.    Pursuant to 29 Delaware Code, Section 5933, as amended
         by House Bill No. 474, and 19 Delaware Code, Section
         2321, (see Procedure for Handling Workers'
         Compensation Claims) when an employee qualifies for
         workers' compensation benefits and is medically
         restricted from performing a job function assigned by
         the Division, the employee, for a period of three
         months from the date such compensation begins shall
         not be charged sick leave and shall receive from the
         State the difference, if any, between the total of (1)
         the amount of such compensation, (2) any disability
         benefits received under the Federal Social Security
         Act, and (3) any other employer supported disability
         program, and the amount of wages to which the officer
         or employee is entitled on the date such compensation
         begins, provided the injury or disease for which such
         compensation is paid is not a direct result of such
         officer or employee's misconduct and occurs during a
         period of employment for which the employee is
         entitled to receive wages.

   B.    In the event that a sworn employee qualifies for
         workers' compensation as described above for an injury
         or illness which occurs in the performance of their
         duties and was not performing a function or duty that
         is considered administrative in nature, the employee
         shall be entitled to these benefits for a period not
         to exceed twelve months.

A - 465



DEPOSITION
EXHIBIT
Baylor 7
7-26-05 KF

C.  In the event of a job-related injury, the provisions of the policy containing the procedures for handling a workers' compensation claim will be followed.  It will be the responsibility of the Troop Commander/Section Chief to ensure that the injured employee's supervisor notifies the Human Resources Office of the incident and completes the Supervisor's Report of Investigation.

D.  Following the period of time described above, either three months or twelve months from the date compensation begins, an employee may use sick leave to provide full regular pay during periods when he/she is paid less than full pay under workers' compensation benefits.  Such leave will be charged in proportion to the difference between workers' compensation pay and full pay.  Employees cannot take sick leave with pay in excess of hours actually accrued to date.

E.  Following the expiration of sick leave, the Superintendent, at his discretion, may authorize the employee to use accumulated vacation and/or compensatory time to allow the employee to remain on the active payroll.

F.  In the event that a period of 1 calendar year has not occurred from the date of absence due to a compensable illness or injury to the expiration of all available leave, the Superintendent may authorize an unpaid leave of absence to provide a minimum of a 1 year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to 6 month intervals, however, in no case may the total absence, paid, or unpaid, exceed 2 years from the initial date that compensation began.

G.  Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III, or 29 Delaware Code, Chapter 55.

A - 466

2.    **Sick Leave**

    A.    If an employee is medically restricted from performing a job function assigned by the Division, the employee may use accumulated sick leave to remain on the active payroll. Upon the expiration of all accrued sick leave, the Division may authorize the employee to use accumulated vacation leave and/or compensatory time to continue full pay and benefits.

    B.    In unusual circumstances where the Superintendent deems it in the best interest of the Division, and when the employee has in excess of five years service, and when a high probability exists that the employee will return to full service within a reasonable period, the Superintendent may authorize the employee to borrow ahead up to fifteen days of paid sick leave after all accumulated sick leave, compensatory time, and vacation is exhausted.

    C.    In the event that a period of 1 calendar year has not occurred from the date of the original absence due to illness or injury to the expirations of all available leave of absence to provide a minimum of a 1 year rehabilitation period prior to separation from the Division. The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to 6 month intervals, however, in no case may the total absence, paid or unpaid, exceed 2 years from the initial date of absence due to the injury or absence.

    D.    The Division may require additional documentation and may request that the employee be examined at the Division's expense by a physician of the Division's choice to obtain a second opinion.

    E.    Upon expiration of all approved leave, the employee shall be separated from the Division. Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III, or 29 Delaware Code, chapter 55.

A - 467

F.   In the event of an extended illness or non-job-related
     injury of five days or more, the Troop Commander/Section
     Chief will notify the appropriate Operations Officer and
     the Human Resources Office as soon as practicable upon
     learning of the non-job-related illness or injury and
     outline the particular circumstances.  Appropriate
     documentation will be completed by the administrative
     lieutenant/section chief within 5 workdays and forwarded
     to the Director of Human Resources.  The employee will
     be responsible for following the restrictions
     established by medical authorities both when working and
     off duty.  Disciplinary action may be taken against an
     employee who becomes at risk for injury by violating
     medical restriction or by performing physical activities
     or other function away from the job which the employee
     has been restricted from performing on the job or which
     the employee has professed an inability to perform.

G.   Troop Commanders/Section Chiefs with employees on less
     than full duty status will make weekly personal or
     telephonic contact with the employee.  This contact
     will enable the Troop Commander/Section Chief to
     evaluate specific operational needs.  During the
     contact, the Troop Commander/Section Chief will
     ascertain if the employee (or his/her family) is in
     need of assistance from the Division in any manner.
     If a request for assistance cannot be accomplished by
     the Troop Commander/Section Chief, the Director of
     Human Resources shall be advised.  In all cases,
     documentation of the contact will be placed in the
     employee's personnel file at his/her work location.

H.   On the date of the employee being unable to perform in
     a full duty status and continuing for the duration of
     the disability, any prior approval for additional
     part-time employment will be rescinded immediately.
     The approval for part-time employment to the
     Superintendent through the appropriate Field
     Operations Officer advising how working part-time will
     not aggravate the medial condition or injury.

I.   On the date of the employee being unable to perform in
     a full-time status and continuing for the duration of
     the disability, they are not permitted to work special
     duty, or Federally funded jobs, unless permission is
     granted from the appropriate Operations Officer.  The
     employee must advise how working these jobs will not
     aggravate the medical condition or injury.

III-6-37

3.  **Reassignment/Job Restructuring**

A.  If an employee suffers a permanent or prolonged disability which requires a restriction from performing job functions, the Division will attempt to provide reasonable accommodation through reassignment, job-restructuring, or reallocation of marginal job functions to co-workers.

1.  Basic police functions including, but not limited to, the activities limited below are considered essential job function of sworn positions regardless of rank and/or assignment and therefore must be able to be performed with or without accommodation except during a temporary rehabilitative period as described in Paragraph 4.

    a.  Driving a patrol vehicle for extended periods.

    b.  Getting in and out of vehicles.

    c.  Affecting a forcible arrest; possible physical confrontation (wrestling with suspects.)

    d.  Biannual firearms recertification which involves shooting a semi-automatic pistol and shotgun from standing and kneeling positions during the course of a training day.

    e.  Climbing obstacles and traversing rough terrain quickly.

    f.  Manual traffic control involving prolonged standing and requiring mental and physical alertness and dexterity.

    g.  Working under stressful and dangerous conditions, in inclement weather and for prolonged periods without the benefit of rest of meal breaks, and working rotating shifts.

    h.  Communicating effectively with people of various socioeconomic backgrounds and effectively utilizing sense perception discern various stimuli of danger and to maximize operational effectiveness.

2.  The required physical fitness examination measures the physical ability necessary to perform the activities noted above and other essential functions of all sworn positions.

A - 469

Since the fitness examination measures the necessary level of aerobic capacity, muscular strength, muscular endurance, flexibility, and other physical attributes necessary to safely perform essential job functions, the fitness test itself is considered an essential job function.

3. The required medical examination measures the officer's ability to safely and effectively perform the activities noted above and other essential job functions.

B. Reasonable accommodation is a modification of a job assignment or the work environment that allows an individual with a disability to perform the required work assignment. Job restructuring may involve reallocating or redistributing to perform the marginal functions of a job. By definition, the essential functions of a job are not subject to reallocation or redistribution.

C. It is the responsibility of the disabled employee to identify, through medical documentation, that he/she has a disability which can be accommodated without an undue hardship being placed upon the Division and further, that the disability does not prevent the employee from performing all essential functions of a Delaware State Police officer with or without reasonable accommodation. The employee will be required to furnish medical documentation from his/her physician(s) to the Director of Human Resources immediately following the fifth day of absence from work or full-duty status and periodically thereafter. The documentation shall include, but not be limited to:

1. the reason for the disability.

2. the specific length of disability.

3. the prognosis for recovery to full duty status.

4. a statement indicating the employee's fitness to resume the duties of full-time employment (see Section 3, A 1-3) and any physical or other limitations.

III-6-39

A - 470

D.  On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty, or Federally Funded jobs unless permission is granted from the appropriate Operations Officer.  The employee must advise how working these jobs will aggravate the medical condition or injury.

E.  The Division may require additional documentation of its choosing from a doctor, psychologist, rehabilitation counselor, occupational, or physical therapist, independent living specialist, or other professional with knowledge of the employee's functional limitations.

F.  Following review of all documentation and discussion with the employee and the Director of Human Resources, the Superintendent shall determine whether or not the requested accommodation will be made.  On occasion, competent medical authorities may differ in opinion as to the extent of the injury/illness and the employee's ability to return to full duty.  When there is a difference of opinion, the Superintendent has the discretion of directing the employee back to work in either a position compatible with rehabilitation or a regular assignment.  Any employee directed back to work by the Superintendent may apply for a disability pension if otherwise qualified.  The Pension Board has the option of granting or denying the employee's request.  Denying the employee's request for pension will result in the employee returning to work as directed or having his/her employment terminated.

4.  **Temporary**

A.  A temporary disability is a non-chronic impairment that does not last for a long time, has little or no long-term impact and/or does not substantially limit an employee's major life activities including the ability to function in their assigned position. Temporary disabilities are normally accommodated by injured leave (see Section 1), sick leave (see Section 2), or temporary reassignment or, job modification (see Section 3).

B.    It is the responsibility of the employee to identify through medical documentation (see Section 3-C), the extent of the disability and the prognosis including in an estimated date for full recovery.  As described in Sections 3-E and 3-F above, the Division may seek and follow additional opinions and will thereafter determine the level that the employee may be accommodated.

C.    Due to the limited operational impact on the Division, essential job functions as well as marginal job functions may be reassigned or temporary suspended in order to allow the employee to work during the period of rehabilitation.

D.    On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty and Federally funded jobs unless permission is granted from the appropriate Operations Officer.  As with outside employment request, the employee must advise how working jobs will not aggravate the medical condition or injury.

E.    A temporary impairment which continues beyond a period of 1 year from the date of the original absence or the date that the employee was unable to perform all required job functions shall be deemed a permanent disability and the policies contained herein shall apply.  No pyramidical application of benefits between is implied or will be allowed.

5.    This policy is intended to comply with the employment provisions of the Americans with Disabilities Act (Title I of the ADA) which is effective for the Division of the State Police of July 26, 1992, and with 19 Delaware Code, Chapter 7, SubChapter III, handicapped Persons Employment Protections.  Pursuant to these laws, an employee who believes that he or she is being discriminated against as a result of a disability as defined by these laws may contact the Equal Employment Opportunity Commission and/or the Anti-discrimination  Section of the Division of Industrial Affairs, Department of Labor of the State of Delaware.

III-6-41

A - 472

**DISABILITY LEAVE/MODIFIED DUTY ASSIGNMENT DURING REHEBILITATION FROM INJURY OR ILLNESS** (22.2.1c)(22.2.4)

**POLICY STATEMENT:** It is the policy of the Delaware State Police to provide reasonable accommodation to allow an injured or ill employee to retain salary and benefits.  Reasonable accommodation may be in the form of workers' compensation benefits, sick leave, and other accrued leave, permanent or temporary reassignment or job-restructuring, or a combination of these functions.

In the event that the illness or injury is or becomes permanent or exceeds the temporary benefits provided and the employee is unable to perform essential job functions, the policies regarding pension or separation shall apply.

1.  **Workers' Compensation**

    A.  Pursuant to 29 Delaware Code, Section 5933, as amended by House Bill No. 474, and 19 Delaware Code, Section 2321, (see Procedure for Handling Workers' Compensation Claims) when an employee qualifies for workers' compensation benefits and is medically restricted from performing a job function assigned by the Division, the employee, for a period of three months from the date such compensation begins shall not be charged sick leave and shall receive from the State the difference, if any, between the total of (1) the amount of such compensation, (2) any disability benefits received under the Federal Social Security Act, and (3) any other employer supported disability program, and the amount of wages to which the officer or employee is entitled on the date such compensation begins, provided the injury or disease for which such compensation is paid is not a direct result of such officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages.

    B.  In the event that a sworn employee qualifies for workers' compensation as described above for an injury or illness which occurs in the performance of their duties and was not performing a function or duty that is considered administrative in nature, the employee shall be entitled to these benefits for a period not to exceed twelve months.

**A - 473**

**D2620**

C.   In the event of a job-related injury, the provisions of the policy containing the procedures for handling a workers' compensation claim will be followed.  It will be the responsibility of the Troop Commander/Section Chief to ensure that the injured employee's supervisor notifies the Human Resources Office of the incident and completes the Supervisor's Report of Investigation.

D.   Following the period of time described above, either three months or twelve months from the date compensation begins, an employee may use sick leave to provide full regular pay during periods when he/she is paid less than full pay under workers' compensation benefits.  Such leave will be charged in proportion to the difference between workers' compensation pay and full pay.  Employees cannot take sick leave with pay in excess of hours actually accrued to date.

E.   Following the expiration of sick leave, the Superintendent, at his discretion, may authorize the employee to use accumulated vacation and/or compensatory time to allow the employee to remain on the active payroll.

F.   In the event that a period of 1 calendar year has not occurred from the date of absence due to a compensable illness or injury to the expiration of all available leave, the Superintendent may authorize an unpaid leave of absence to provide a minimum of a 1 year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to 6 month intervals, however, in no case may the total absence, paid, or unpaid, exceed 2 years from the initial date that compensation began.

G.   Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III, or 29 Delaware Code, Chapter 55.

**A - 474**

**D2621**

2.   **Sick Leave**

    A.   If an employee is medically restricted from performing a job function assigned by the Division, the employee may use accumulated sick leave to remain on the active payroll.  Upon the expiration of all accrued sick leave, the Division may authorize the employee to use accumulated vacation leave and/or compensatory time to continue full pay and benefits.

    B.   In unusual circumstances where the Superintendent deems it in the best interest of the Division, and when the employee has in excess of five years service, and when a high probability exists that the employee will return to full service within a reasonable period, the Superintendent may authorize the employee to borrow ahead up to fifteen days of paid sick leave after all accumulated sick leave, compensatory time, and vacation is exhausted.

    C.   In the event that a period of 1 calendar year has not occurred from the date of the original absence due to illness or injury to the expirations of all available leave of absence to provide a minimum of a 1 year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to 6 month intervals, however, in no case may the total absence, paid or unpaid, exceed 2 years from the initial date of absence due to the injury or absence.

    D.   The Division may require additional documentation and may request that the employee be examined at the Division's expense by a physician of the Division's choice to obtain a second opinion.

    E.   Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III, or 29 Delaware Code, chapter 55.

A - 475

D2622

F.  In the event of an extended illness or non-job-related
    injury of five days or more, the Troop Commander/Section
    Chief will notify the appropriate Operations Officer and
    the Human Resources Office as soon as practicable upon
    learning of the non-job-related illness or injury and
    outline the particular circumstances.  Appropriate
    documentation will be completed by the administrative
    lieutenant/section chief within 5 workdays and forwarded
    to the Director of Human Resources.  The employee will
    be responsible for following the restrictions
    established by medical authorities both when working and
    off duty.  Disciplinary action may be taken against an
    employee who becomes at risk for injury by violating
    medical restriction or by performing physical activities
    or other function away from the job which the employee
    has been restricted from performing on the job or which
    the employee has professed an inability to perform.

G.  Troop Commanders/Section Chiefs with employees on less
    than full duty status will make weekly personal or
    telephonic contact with the employee.  This contact
    will enable the Troop Commander/Section Chief to
    evaluate specific operational needs.  During the
    contact, the Troop Commander/Section Chief will
    ascertain if the employee (or his/her family) is in
    need of assistance from the Division in any manner.
    If a request for assistance cannot be accomplished by
    the Troop Commander/Section Chief, the Director of
    Human Resources shall be advised.  In all cases,
    documentation of the contact will be placed in the
    employee's personnel file at his/her work location.

H.  On the date of the employee being unable to perform in
    a full duty status and continuing for the duration of
    the disability, any prior approval for additional
    part-time employment will be rescinded immediately.
    The approval for part-time employment to the
    Superintendent through the appropriate Field
    Operations Officer advising how working part-time will
    not aggravate the medial condition or injury.

I.  On the date of the employee being unable to perform in
    a full-time status and continuing for the duration of
    the disability, they are not permitted to work special
    duty, or Federally funded jobs, unless permission is
    granted from the appropriate Operations Officer.  The
    employee must advise how working these jobs will not
    aggravate the medical condition or injury.

III-6-38

A - 476

3.    **Reassignment/Job Restructuring**

A.    If an employee suffers a permanent or prolonged
disability which requires a restriction from performing
job functions, the Division will attempt to provide
reasonable accommodation through reassignment, job-
restructuring, or reallocation of marginal job functions
to co-workers.

1.    Basic police functions including, but not limited
to, the activities limited below are considered
essential job function of sworn positions regardless
of rank and/or assignment and therefore must be able
to be performed with or without accommodation except
during a temporary rehabilitative period as
described in Paragraph 4.

a.    Driving a patrol vehicle for extended periods.

b.    Getting in and out of vehicles.

c.    Affecting a forcible arrest; possible physical
confrontation (wrestling with suspects.)

d.    Biannual firearms recertification which
involves shooting a semi-automatic pistol and
shotgun from standing and kneeling positions
during the course of a training day.

e.    Climbing obstacles and traversing rough
terrain quickly.

f.    Manual traffic control involving prolonged
standing and requiring mental and physical
alertness and dexterity.

g.    Working under stressful and dangerous
conditions, in inclement weather and for
prolonged periods without the benefit of rest
of meal breaks, and working rotating shifts.

h.    Communicating effectively with people of
various socioeconomic backgrounds and
effectively utilizing sense perception
discern various stimuli of danger and to
maximize operational effectiveness.

2.    The required physical fitness examination
measures the physical ability necessary to
perform the activities noted above and other
essential functions of all sworn positions.

A - 477

D2624

Since the fitness examination measures the necessary level of aerobic capacity, muscular strength, muscular endurance, flexibility, and other physical attributes necessary to safely perform essential job functions, the fitness test itself is considered an essential job function.

3. The required medical examination measures the officer's ability to safely and effectively perform the activities noted above and other essential job functions.

B. Reasonable accommodation is a modification of a job assignment or the work environment that allows an individual with a disability to perform the required work assignment. Job restructuring may involve reallocating or redistributing to perform the marginal functions of a job. By definition, the essential functions of a job are not subject to reallocation or redistribution.

C. It is the responsibility of the disabled employee to identify, through medical documentation, that he/she has a disability which can be accommodated without an undue hardship being placed upon the Division and further, that the disability does not prevent the employee from performing all essential functions of a Delaware State Police officer with or without reasonable accommodation. The employee will be required to furnish medical documentation from his/her physician(s) to the Director of Human Resources immediately following the fifth day of absence from work or full-duty status and periodically thereafter. The documentation shall include, but not be limited to:

1. the reason for the disability.

2. the specific length of disability.

3. the prognosis for recovery to full duty status.

4. a statement indicating the employee's fitness to resume the duties of full-time employment (see Section 3, A 1-3) and any physical or other limitations.

III-6-40

A - 478

D2625

D. On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty, or Federally Funded jobs unless permission is granted from the appropriate Operations Officer. The employee must advise how working these jobs will aggravate the medical condition or injury.

E. The Division may require additional documentation of its choosing from a doctor, psychologist, rehabilitation counselor, occupational, or physical therapist, independent living specialist, or other professional with knowledge of the employee's functional limitations.

F. Following review of all documentation and discussion with the employee and the Director of Human Resources, the Superintendent shall determine whether or not the requested accommodation will be made. On occasion, competent medical authorities may differ in opinion as to the extent of the injury/illness and the employee's ability to return to full duty. When there is a difference of opinion, the Superintendent has the discretion of directing the employee back to work in either a position compatible with rehabilitation or a regular assignment. Any employee directed back to work by the Superintendent may apply for a disability pension if otherwise qualified. The Pension Board has the option of granting or denying the employee's request. Denying the employee's request for pension will result in the employee returning to work as directed or having his/her employment terminated.

4. **Temporary**

A. A temporary disability is a non-chronic impairment that does not last for a long time, has little or no long-term impact and/or does not substantially limit an employee's major life activities including the ability to function in their assigned position. Temporary disabilities are normally accommodated by injured leave (see Section 1), sick leave (see Section 2), or temporary reassignment or, job modification (see Section 3).

III-6-41

A - 479

D2626

B.   It is the responsibility of the employee to identify through medical documentation (see Section 3-C), the extent of the disability and the prognosis including in an estimated date for full recovery.  As described in Sections 3-E and 3-F above, the Division may seek and follow additional opinions and will thereafter determine the level that the employee may be accommodated.

C.   Due to the limited operational impact on the Division, essential job functions as well as marginal job functions may be reassigned or temporary suspended in order to allow the employee to work during the period of rehabilitation.

D.   On the date of the employee being unable to perform in a full-duty status and continuing for the duration of the disability they are not permitted to work special duty and Federally funded jobs unless permission is granted from the appropriate Operations Officer.  As with outside employment request, the employee must advise how working jobs will not aggravate the medical condition or injury.

E.   A temporary impairment which continues beyond a period of 1 year from the date of the original absence or the date that the employee was unable to perform all required job functions shall be deemed a permanent disability and the policies contained herein shall apply.  No pyramidical application of benefits between is implied or will be allowed.

5.   This policy is intended to comply with the employment provisions of the Americans with Disabilities Act (Title I of the ADA) which is effective for the Division of the State Police of July 26, 1992, and with 19 Delaware Code, Chapter 7, SubChapter III, handicapped Persons Employment Protections.  Pursuant to these laws, an employee who believes that he or she is being discriminated against as a result of a disability as defined by these laws may contact the Equal Employment Opportunity Commission and/or the Anti-discrimination  Section of the Division of Industrial Affairs, Department of Labor of the State of Delaware.

III-6-42

A - 480

D2627

**DELAWARE STATE POLICE**
**HEADQUARTERS**
June 8, 1992

**MEMORANDUM**

> **TO:**      Colonel Clifford M. Graviet
>             Superintendent
>
> **FROM:**    Mr. John A. Dillman, III
>             Director of Personnel
>
> **SUBJECT:** Disability Leave/Modified Duty Assignment
>             During Rehabilitation from Injury or Illness

    Please review the enclosed policy draft which I have
written to govern the employment conditions of Delaware
State Police employees who are or become disabled and are
unable to fully meet job requirements.

    The policy is designed to comply with the Americans
With Disabilities Act which becomes effective, with respect
to employment provisions, on July 26, 1992.

    The policy further addresses the Division's need to
retain a full complement of able-bodied officers who are
able to perform full police functions regardless of rank or
job assignment.   However, the policy also accommodates
temporary disabilities during a period of rehabilitation.


JAD:vll

Enclosure:  /s/

cc/enc:  Lt. Colonel Alan D. Ellingsworth
         Jeffrey M. Taschner


A - 481

D2639

*Copy to Sharon Rothwell + Bill*
*+ Change 062592.*
*copy to John 062292.*
*copy to Lisa 061592. (see)*
*to Jim. 060992. (see)*

*old cover page*

## DISABILITY LEAVE/MODIFIED DUTY ASSIGNMENT DURING
## REHABILITATION FROM INJURY OR ILLNESS

**Policy Statement**:  It is the policy of the Delaware State Police

to provide reasonable accommodation to allow an injured or ill

employee to retain salary and benefits. ~~during a period of~~

~~recovery.~~  Reasonable accommodation may be in the form of

workers' compensation benefits, sick leave and other accrued

leave, *permanent or* temporary reassignment or job-restructuring, or a

combination of these functions.

In the event that the illness or injury is or becomes permanent

or exceeds the temporary benefits provided, *and the employee is unable to perform essential job functions.* the policies

regarding pension or separation shall apply.

I.  **Workers' Compensation**

    A.  Pursuant to 29 Delaware Code, 5933, when an employee

        qualifies for workers' compensation benefits and is

        medically restricted from performing a job function

        assigned by the Division, the employee, for a period of

        three months from the date such compensation begins

        shall not be charged sick leave and shall receive from

        the State the difference, if any, between the total of:

        (1) the amount of such compensation, (2) any disability

        benefits received under the Federal Social Security

        Act, and (3) any other employer supported disability

        program, and the amount of wages to which the officer

        or employee is entitled on the date such compensation

        begins, provided the injury or disease for which such

        compensation is paid is not the direct result of such

A - 482

D2640

officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages.

B. In the event that a uniformed employee qualifies for workers' compensation as described above for an injury or illness which occurs in the performance of their duties and was not performing a function or duty that is considered administrative in nature, the employee shall be entitled to these benefits for a period not to exceed twelve months.

C. Following the period of time described above, either three months or twelve months from the date compensation begins, an employee may use sick leave to provide full regular pay during periods when he or she is paid less than full pay under workers' compensation benefits. Such leave will be charged in proportion to the difference between workers' compensation pay and full pay. Employees cannot take sick leave with pay in excess of the hours actually accrued to date.

D. Following the expiration of sick leave, the Superintendent, at his discretion, may authorize the employee to use accumulated vacation and/or compensatory time to allow the employee to remain on the active payroll. In the event that authorization is not provided, payment of accumulated leave will be made according to the appropriate general order consistent with the provisions of the contract between the

A - 483

D2641

Department and the Delaware State Troopers Association and consistent with the provisions of the Fair Labor Standards Act.

E.  In the event that a period of one calendar year has not occurred from the date of absence due to a compensable illness or injury to the expiration of all available leave, the Superintendent may authorize an unpaid leave of absence to provide a minimum of a one year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to six month intervals, however, in no case may the total absence, paid or unpaid, exceed two years from the initial date that compensation began.

F.  Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III.

II.  <u>Sick Leave</u>

A.  If an employee is medically restricted from performing a job function assigned by the Division, the employee may use accumulated sick leave to remain on the active payroll of the State.  Upon the expiration of all accrued sick leave, the Division may authorize the employee to use accumulated vacation leave and/or compensatory time to continue full pay and benefits.

A - 484

3

D2642

B. In unusual circumstances where the Superintendent deems it in the best interest of the Division, and when the employee has in excess of five years service, and when a high probability exists that the employee will return to full service within a reasonable period, the Superintendent may authorize the employee to borrow ahead up to fifteen days of paid sick leave after all accumulated sick leave, compensatory time, and vacation is exhausted.

C. In the event that a period of one calendar year has not occurred from the date of the original absence due to the illness or injury to the expiration of all available leave, the Superintendent may authorize an unpaid leave of absence to provide a minimum of a one year rehabilitation period prior to separation from the Division.  The Superintendent, when he believes it to be in the best interest of the Division, may approve subsequent leaves of absence of up to six month intervals, however, in no case may the total absence, paid or unpaid, exceed two years from the initial date of absence due to the injury or absence.

D. Upon expiration of all approved leave, the employee shall be separated from the Division.  Retirement benefits may be provided in accordance with 11 Delaware Code, Chapter 83, Subchapter II and III.

A - 485

4

D2643

## III. Reassignment/Job-Restructuring

A. If an employee suffers a permanent or prolonged disability which requires a restriction from performing job functions, the Division will attempt to provide reasonable accommodation through reassignment, job-restructuring, or reallocation of marginal job functions to co-workers.

    1. Basic police functions including but not limited to the activities listed below are considered essential job functions of all uniformed positions regardless of rank and/or assignment and therefore must be able to be performed with or without accommodation except during a temporary rehabilitative period as described in Section IV:

    2.
- (A) Driving a patrol vehicle for extended periods.
- (B) Getting in and out of vehicles.
- (C) Possible physical confrontations (wrestling with suspects).
- (D) Firearms training (twice a year for approximately three hours).
- (E) Climbing obstacles and traversing rough terrain quickly.
- (F) Manual traffic control.

The required physical fitness examination measures the physical ability necessary to perform the activities noted above and other essential functions of all uniformed positions. Since the fitness examination measures the necessary level of aerobic capacity, muscular strength, muscular endurance, flexibility, and other physical attributes necessary to safely perform

A - 486

5

D2644

essential job functions, the fitness test itself is considered an essential job function.

B. Reasonable accommodation is a modification of a job assignment or the work environment that allows an individual with a disability to perform the required work assignment.  Job restructuring may involve reallocating or redistributing the marginal functions of a job.  By definition, the essential functions of a job are not subject to reallocation or redistribution.

C. It is the responsibility of the disabled employee to identify, through medical documentation, that he or she has a disability which can be accommodated without an undue hardship being placed upon the Division and further, that the disability does not prevent the employee from performing all essential functions of a Delaware State Police officer (for uniformed positions) and of the assigned job function (for all positions) with or without reasonable accommodation.

D. The Division may require additional documentation of its choosing from a doctor, psychologist, rehabilitation counselor, occupational or physical therapist, independent living specialist, or other professional with knowledge of the employee's functional limitations.

E. Following review of all documentation and discussion with the employee and the Director of Personnel, the

Superintendent shall determine whether or not the requested accommodation will be made.

## IV. Temporary Disability

A. A temporary disability is a non-chronic impairment that does not last for a long time, has little or no long-term impact and/or does not substantially limit an employee's major life activities including the ability to function in their assigned position.  Temporary disabilities are normally accommodated by injured leave (see Section I), sick leave (see Section II), or temporary reassignment or job modification (see Section III).

B. It is the responsibility of the employee to identify, through medical documentation, the extent of the disability and the prognosis including an estimated date for full recovery.  As described in Sections III D and III E above, the Division may seek and follow additional opinions and will thereafter determine the level that the employee may be accommodated.

C. Due to the limited operational impact on the Division, essential job functions as well as marginal job functions may be reassigned or temporarily suspended in order to allow the employee to work during the period of rehabilitation.

D. A temporary impairment which continues beyond a period of one (1) year from the date of the original absence or the date that the employee was unable to perform all

A - 488

7

D2646

required job functions shall be deemed a permanent
disability and the policies contained herein shall
apply.   No pyramidical application of benefits between
temporary and permanent disability is implied or will
be allowed.

V.   This policy is intended to comply with the employment
provision of the Americans with Disabilities Act (Title I of
the ADA) which is effective for the Division of State Police
on July 26, 1992, and with 19 Delaware Code, Chapter 7,
Subchapter III, Handicapped Persons Employment Protections.
Pursuant to these laws, an employee who believes that he or
she is being discriminated against as a result of a
disability as defined by these laws may contact the Equal
Employment Opportunity Commission and/or the Anti-
discrimination Section of the Division of Industrial
Affairs, Department of Labor of the State of Delaware.

06/09/92
JAD:vll

A - 489

8

D2647