**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CHRISTOPHER FORAKER,                  :
                                      :
                Plaintiff,            :
                                      :      C.A. No. 04-1207-GMS
        v.                            :
                                      :
L. AARON CHAFFINCH, et al.,           :
                                      :
                Defendants.           :

**ANSWERING BRIEF
IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II**

Date:  February 8, 2006                  Noel C. Burnham (DE Bar # 3483)
                                         Richard M. Donaldson (DE Bar I.D. #4367)
                                         Montgomery, McCracken, Walker & Rhoads, LLP
                                         300 Delaware Avenue, Suite 750
                                         Wilmington, DE  19801
                                         (302) 504-7840

                                         *Counsel for Defendants L. Aaron Chaffinch,
                                         Thomas F. MacLeish, David B. Mitchell, and the
                                         Division of State Police, Department of Safety and
                                         Homeland Security, State of Delaware*

# TABLE OF CONTENTS

Page

I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.................. 1

II.     SUMMARY OF THE ARGUMENT ................................................................. 2

III.    CONCISE COUNTER-STATEMENT OF FACTS ........................................... 2

IV.     ARGUMENT ................................................................................................ 7

        A.      Plaintiff's Protected Activity Under The First Amendment ................................ 8

        B.      Plaintiff Is Not Entitled To Summary Judgment Because His Protected
                Activity Was Not A Motivating Factor In Defendants' Actions ......................... 9

                1.      Chaffinch's actions are either not adverse to the Plaintiff, or
                        otherwise protected .............................................................. 10

                2.      MacLeish has not acted adversely to Plaintiff ......................... 13

                3.      Defendants were not motivated by Foraker's protected activity ............. 15

V.      CONCLUSION............................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

## CASES

Baldassare v. New Jersey, 250 F.3d 188 (3d Cir. 2001)......................................................... 8

Bart v. Teford, 677 F.2d 622 (7th Cir. 1992)................................................................. 13

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003)........................................................... 12

Connick v. Myers, 461 U.S. 138 (1983) ........................................................................ 8

Eichenlaub v. Twp. of Indiana, 385 F.3d 274 (3d Cir. 2004)......................................... 7

Green v. Phila. Housing Auth., 105 F.3d 882 (3d Cir. 1997) ...................................... 7, 8

Johnson v. Heimbach, No. Civ. A. 03-2483, 2003 WL 22838476,
   (E.D. Pa. Nov. 25, 2003)........................................................................................... 12

McKee v. Hart, --- F.3d ---, No. 04-1442, 2006 WL 27474 (3d Cir. Jan. 6, 2006)...................... 12

Primes v. Reno, 190 F.3d 765 (6th Cir. 1999)............................................................... 13

San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994) .............................................. 8

Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558 (E.D. Pa. 2004) ................................. 9

Shehee v. City of Wilmington, 67 Fed. Appx. 692 (3d Cir. 2003).................................. 8

Suarez Corp. Indus. v. McGraw, 202 F.3d 676 (4th Cir. 2000) ............................... 12, 13

X-Men Securities, Inc. v. Pataki, 196 F.3d 56 (2d Cir. 1999) ....................................... 13

## STATUTES

42 U.S.C. § 1983............................................................................................... 1, 2, 3, 4

## I.     <u>STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING</u>

This case arises under 42 U.S.C. § 1983 and the common law of the State of Delaware. Plaintiff Christopher Foraker asserts that Defendants L. Aaron Chaffinch and Thomas F. MacLeish retaliated against him because he filed and won an earlier retaliation lawsuit against Defendant Chaffinch.

Plaintiff filed this Complaint on August 30, 2004, alleging First Amendment retaliation under the Free Speech Clause (Count I); First Amendment retaliation under the Petition Clause (Count II); defamation (Count III); and false light invasion of privacy under state law (Count IV). (D.I. # 1; <u>see also</u> Combined Appendix to Defendants' Opening Briefs in Support of Motions for Summary Judgment ("CA") at A-30).[1])

On October 14, 2005, Defendants filed and served the Motion of the Defendants to Bar Certain Communications of Counsel or, in the Alternative, to Disqualify Counsel (D.I. # 32) on the grounds that Thomas S. Neuberger and Stephen J. Neuberger purport to represent concurrently Plaintiff and a key managerial employee and constituent of the Delaware State Police ("DSP"), Ralph Davis.  Counsel's dual representation violates Rule 4.2 of the Model Rules of Professional Conduct, which prohibits communications with already represented parties, and Rule 1.7, which prohibits representations that result in conflicts of interest between clients or between counsel and clients.  Defendants seek an order requiring Thomas and Stephen Neuberger to withdraw their representation of Ralph Davis.  Alternatively, Thomas and Stephen Neuberger should be disqualified from representing Plaintiff in this action.  Moreover,

---

[1] Defendants have moved for summary judgment on all counts in this case (D.I. # 60) and have filed a Combined Appendix in support of that Motion.  (D.I. ## 62 & 75.)  To prevent unnecessary duplication, Defendants, where possible and appropriate, cite their Combined Appendix.

Defendants are entitled to an order permitting their counsel to have <u>ex parte</u> communications with Ralph Davis.  Defendants' Motion is pending.

Pursuant to the Court's Order entered February 17, 2005, discovery in this matter ended on December 30, 2005.  On January 25, 2006, Plaintiff filed and served a Motion for Summary Judgment on Counts I and II.  (D.I. # 61.)  Plaintiff also filed and served an Opening Brief in support of their Motion (D.I. # 64) and an Appendix (<u>see</u> D.I. ## 65 & 66).  Pursuant to the Federal Rules of Civil Procedure and the Local Rules of Civil Practice and Procedure, Defendants file this Answering Brief.

## II.     <u>SUMMARY OF THE ARGUMENT</u>

1.      Defendants did not retaliate against Plaintiff in that Defendants' actions, considered individually or in their totality, were not adverse to Plaintiff.

2.      Plaintiff's allegedly protected activity, whether considered as speech or a petition, was not a "substantial" or "motivating" factor in any of Defendants' allegedly retaliatory actions.

## III.    <u>CONCISE COUNTER-STATEMENT OF FACTS</u>

Defendants rely on and incorporate the Concise Statement of Facts set forth in their Opening Brief in Support of Defendants' Motion for Summary Judgment.  (D.I. # 62 (<u>see</u> <u>id.</u> Part IV).)

For purposes of answering Plaintiff's Motion, Defendants make particular note of the following material facts that Plaintiff excluded from his Opening Brief:

Plaintiff Foraker is presently a sergeant designated the non-commissioned officer in charge ("NCOIC") of Delaware State Police Firearms Training Unit ("FTU").  On August 1, 2001, then-Col. Gerald Pepper promoted Foraker to the rank of sergeant and made him the NCOIC of the FTU.  On April 8, 2002, Col. Chaffinch, the newly appointed Superintendent,

transferred Foraker from the FTU and replaced him with Sgt. Richard Ashley. Foraker challenged the lateral reassignment in <u>Foraker v. Chaffinch</u>, No. 02-302-JJF (D. Del.), contending that Chaffinch retaliated against him for excessively criticizing a subordinate range officer who happened to be a friend of Chaffinch. In June 2003, a jury found that Col. Chaffinch had violated Foraker's free-speech rights by transferring him.

**The Firearms Training Unit:** The FTU falls within the DSP's Training Section. As the NCOIC, Foraker reports to the Assistant Director of Training, who in turn reports to the Director of Training, who is responsible for all training and certification within the DSP. During the time period relevant to this lawsuit, Capt. Greg Warren was the Director of Training and had his own lawsuit against Defendant Chaffinch. Then-Lt. Ralph Davis was the Assistant Director of Training and also had a lawsuit pending against Defendant Chaffinch.

**The DSP Firing Range and Bullet Trap:** In 1998, the State Department of Administrative Services ("DAS"), Division of Facilities Management, in cooperation with the DSP, constructed an indoor firing range for the FTU to conduct firearms training for the DSP. In the months after the facility opened, the DSP noticed an increase in the blood lead levels of troopers assigned there. The DSP studied the problem and in late 2000 decided to switch from leaded ammunition to non-leaded "frangible ammunition" in the hope that the change would reduce lead contamination in the range.

Unfortunately, the use of frangible ammunition had an adverse affect on the bullet trap, which was designed to catch and dispose of spent ammunition. Specifically, the frangible ammunition, rather than simply being caught inside the bullet trap, splattered into fragments and dust (<u>see</u> CA at A-521), forming a hard, clay-like substance when mixed with water that proved difficult for FTU personnel to handle. (CA at A-521; <u>see also</u> <u>id.</u> at A-136 (Warren Dep. 53).) It

clogged the bullet trap's pumps, filters, and spray nozzles and caused the conveyor system designed to dispose of the bullets to freeze up. (Id.; see also id. at A-222 (Foraker Dep. 113).) Despite these problems, from late 2000 until December 2003, the FTU staff, including Foraker, performed cleaning and other maintenance to keep the bullet trap functioning. (Id. at A-199 – A-200, A-214 (Foraker Dep. 20-23, 81); see also id. at A-80, A-82 – A-83, A-86 (Price Dep. 40-41, 48-52, 62); A-136 – A-142 (Warren Dep. 51-55; 61-65; 67; 69; 73-76).)

In December 2003, Foraker resumed command of the FTU as part of the post-verdict settlement of his first lawsuit. He and his staff, including Cpl. Kurt Price and Cpl. Wayne Warren, decided collectively to stop doing the maintenance necessary to keep the bullet trap operational. (Id. at A-214 – A-215 (Foraker Dep. 81-82); see also id. at A-89 (Price Dep. 75); A-154 (Wayne Warren Dep. 124); A-522 (State Auditor's Report).) As a result, the pumps and filters on the bullet trap became clogged, shooting areas became dry, and more ammunition dust filled the air. (See id. at A-511.5; A-89 (Price Dep. 76); A-154 (Wayne Warren Dep. 123).) Moreover, Foraker began to encounter additional mechanical difficulties (see id. at A-504.1 – A-504.5), which he reported up the chain of command, including, in some instances, to Defendant MacLeish. (See id. at A-504.1 – A-504.5.)

On March 20, 2004, the Delaware State News carried a news article describing problems at the firing range and quoting litigant Capt. Greg Warren for the proposition that the range "is the absolute epitome of a project from hell since its very inception." (Id. at A-528.) Other news articles followed.

On or around March 21, 2004, the DSP formally closed the range because the bullet trap system was completely broken, the ventilating system was not working as intended, and the entire building was reportedly contaminated with lead and other hazardous materials.

**The Media Tour:**  On April 6, 2004, DAS Secretary Gloria Homer conducted a media tour through the shut-down range.  Defendant Superintendent Chaffinch attended the tour, after which he was asked questions by the media and was quoted as follows:

He [Chaffinch] said he attended a "staff shoot" in September.

"There was some discoloration in the bullet trap but that was about it," he said.  "I think people who live in glass houses shouldn't throw stones.  It's a lot dirtier now.  Things seemed in their proper places in the fall.  I've never seen it like this."

Asked what "people" he was referring to, Col. Chaffinch said he was referring to "the people that provided (the media) with this information in the first place."

"The previous sergeant in charge did a good job," he continued.  "Things changed in December when another sergeant came in.  That's at least a portion of where the ball was dropped."

The "previous sergeant" was Sgt. Richard Ashley, who was picked by the colonel in April 2002 to replace Sgt. Christopher D. Foraker as range supervisor.

After Sgt. Foraker successfully sued the colonel in U.S. District Court last year, the court ordered Sgt. Foraker returned to his old job.  Capt. Warren has a federal job discrimination lawsuit against Col. Chaffinch pending.

"We will work collectively with Administrative Services to make corrections and establish a standard operating procedure protocol," Col. Chaffinch said.

"If the people that are assigned here now don't feel that protocol is part of their protocol, they will be assigned elsewhere."

Contacted later, Col. Chaffinch said Sgt. Ashley has retired.  He would not permit the Delaware State News to interview Capt. Warren or Sgt. Foraker.

"I have the authority to say yes or no," he said.  "I'm not going to allow those people to be interviewed at this point in regard to this particular situation.  I'm not trying to create any more of a mess than we already have."

He praised Sgt. Ashley for his work at the range.

"Because of the frangible ammunition we were using, the bullet trap required hands-on, daily cleaning," he said.  "Sgt. Ashley was willing to do that."

"I cannot say Sgt. Foraker was willing to do that.  He was interested in instruction and teaching people how to shoot.  He did not feel (bullet trap cleaning) was part of his purview.  He felt that was putting him in harm's way."

(CA at A-533 – A-538.)

**Auditor's Report:**  On April 21, 2004, the Governor requested the Auditor of Accounts for the State of Delaware ("State Auditor") to review "the issues surrounding the closing of the DSP Firing Range in March 2004."  (Id. at A-512.)  On May 12, 2004, investigators interviewed Capt. Greg Warren and Plaintiff Foraker, Price, and Warren, at the office of their common attorney in Wilmington.  The Auditor's investigators re-interviewed Capt. Warren, Sgt. Foraker, and Cpl. Price at their attorney's office on July 28, 2004.

The State Auditor issued his report on October 12, 2004.  He made the following conclusions pertinent to this case:

> On December 1, 2003, a new Sergeant took over command of the firing range.  In an interview he informed us that shortly thereafter he met with the current staff and as a result of that meeting a decision was made not to perform any maintenance at the range. The staff made the decision not to continue performing maintenance and custodial functions due to health related issues and not being qualified to perform those functions.
>
> On December 19, 2003, the Sergeant in charge sent an e-mail to his superiors noting that the conveyor system was not functional and expressing his and his staff's concern with health related issues pertaining to their performing maintenance on the bullet trap and recovery system.  The Sergeant also indicated he had contacted the conveyor system supplier and an environmental group to resolve the current problems.
>
> We found no evidence in the documentation made available to us where DSP command was notified that range staff would not be performing duties related to the maintenance and custodial functions historically accomplished by range staff.  The DSP provided us with information that identified 42 days of firearms training from December 2003 until February 2004.  In addition, the DSP Lieutenant Colonel stated that he spoke to the Captain in charge of the range and asked him whether or not the range should

> be closed and he was told by the Captain that the range did not need
> to be closed.
>
> * * *
>
> <u>We can only surmise that with the failing of the conveyor system, no
> maintenance performed on the bullet recovery system, and no custodial
> maintenance being performed to clean the firing range, that these
> situations contributed to an unhealthy and unclean environment leading
> to the ultimate closing of the firing range</u>.

(CA at A-522 (emphasis added).)  In other words, Price, Warren, and Foraker played a role in the

demise of the firing range when they stopped performing maintenance on the bullet trap but kept

using it, knowing that if they did so failure would be the certain result.

## IV.    <u>ARGUMENT</u>

Foraker asserts that Defendants Chaffinch and MacLeish "took action adverse to [him] …

in retaliation for [his] First Amendment protected speech."  (CA at A-50 (Compl. ¶ 81).)

Specifically, Foraker contends that, in retaliation for the lawsuit Foraker had filed against Col.

Chaffinch in April 2002, Defendants Chaffinch and MacLeish made statements to the media

about his performance at the DSP's indoor firing range, sent him to fitness-for-duty exams,

changed minor components of his job, and otherwise violated constitutional rights.[2]

Foraker's claims of First Amendment retaliation under both the Free Speech Clause

(Count I) and Petition Clause (Count II) are "analyzed under a three-step process."  <u>Green v.

Phila. Housing Auth.</u>, 105 F.3d 882, 885 (3d Cir. 1997) (citations omitted); <u>See Eichenlaub v.

Twp. of Indiana</u>, 385 F.3d 274, 282 (3d Cir. 2004) (citations omitted) (applying "three-part test"

to free speech and petition claims).  First, he must demonstrate that he engaged in protected

---

[2] These allegedly retaliatory acts also form the basis of Plaintiff Foraker's other First Amendment claims in <u>Price v. Chaffinch</u>, No. 04-956-GMS (D. Del.).  Foraker admits that he cannot distinguish between acts that Defendants may have taken because of his earlier lawsuit or because other allegedly protected speech.  (CA at A-247 (Foraker Dep. 202).)

activity, i.e., exercised his constitutional right to free speech or his right to petition the government.  See Shehee v. City of Wilmington, 67 Fed. Appx. 692, 693 (3d Cir. 2003). Second, he "must show the protected activity was a substantial or motivating factor in the alleged retaliatory action."  Green, 105 F.3d at 885 (citing Swineford v. Snyder County Pa., 15 F.3d 1258, 1270 (3d Cir. 1994)).  Lastly, Defendants may defeat Plaintiff's claims "by showing that the same actions would have been taken even absent the protected conduct."  Shehee, 67 Fed. Appx. at 693-94.

Defendants are not liable to Foraker and Plaintiff is not entitled to summary judgment because (1) the acts about which Foraker complains are not "adverse" as a matter of law, (2) some of those acts were themselves protected by the First Amendment, and (3) the acts were motivated by DSP policies and procedures designed to protect the health and safety of the FTU officers and the public.

A.     **Plaintiff's Protected Activity Under The First Amendment**

Under the first step of the Free-Speech Clause retaliation analysis, speech is a protected activity only if it relates to a matter of public concern.  Connick v. Myers, 461 U.S. 138, 146–47 (1983) (holding that a matter of public concern is "any matter of political, social or other concern to the community"); Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).  The Petition Clause, on the other hand, protects the filing of "non-sham" petitions without regard to the public concern test.  San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994).  For purposes of this Answering Brief and to defeat Plaintiff's summary judgment motion, Defendants need not address whether filing and winning a previous lawsuit is protected speech or is a constitutionally recognized petition.  Neither, by itself, entitles Foraker to judgment as a matter of law on his claims, and Plaintiff's demand for summary judgment fails for the reasons discussed below.

**B.    Plaintiff Is Not Entitled To Summary Judgment Because His Protected Activity Was Not A Motivating Factor In Defendants' Actions.**

The second step – whether Plaintiff's protected activity was a substantial or motivating factor in the alleged retaliatory action – addresses two separate issues.  Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558, 568 (E.D. Pa. 2004).  First, Plaintiff must show that Defendants actually did something that adversely affected him.  Id. (citation omitted).  Second, Plaintiff must show that Defendants' motivation for the adverse action was to retaliate against Plaintiff for the protected activity.  Id.

Foraker asserts that Chaffinch only took one retaliatory action against him – Chaffinch blamed Foraker for the shut down of the facility during the April 6, 2004 media tour of the firing range.  (Pl.'s Op. Brief 15-16.)

Foraker asserts the following as retaliatory actions by MacLeish:

> (1)    At the July 2004 Section Chiefs and Troop Commanders Meeting, MacLeish informed Foraker that as NCOIC of the FTU he was not to attend the meetings unless he was invited to address a firearms issue;

> (2)    MacLeish refused to allow Foraker to give speech at recruit graduation;

> (3)    MacLeish micromanaged Foraker by requiring that he justify manpower requests and budget allocations; and

> (4)    MacLeish sent Foraker to fitness-for-duty exams to test his hearing.

(Id. at 24-26.)

As a matter of law, these actions do not amount to adverse action against Foraker in that Foraker has not lost pay, benefits, status, seniority or any other indicia of employment as a state trooper since he returned to the FTU in December 2003.

The claims against Chaffinch and MacLeish are addressed separately.

1.    **Chaffinch's actions are either not adverse to the Plaintiff, or otherwise protected.**

Foraker argues Chaffinch gave media tours of range "during which he defamed Sgt. Foraker" and "blamed him for destroying" the range. (Pl.'s Op. Brief 15, 16.) Foraker specifically points to comments made by Col. Chaffinch at an April 6, 2004, media tour of the range.[3] (Id. at 16.) Importantly, Foraker admits that then-Lt. Col. MacLeish was not present at this tour (id. at 15), and he is unable to identify anything that MacLeish did or said that can be construed as a "malicious falsehood" blaming Plaintiff for the shut down of the range.

Foraker's claim that Chaffinch made his comments in retaliation for his previous lawsuit is factually baseless and legally insufficient to establish a First Amendment violation. First, Col. Chaffinch did not, and never has, "falsely blamed" Plaintiff for the shut down of the range. (CA at A-283 – A-284 (Chaffinch Dep. 56-57); cf. id. at A-336 – A-337 (MacLeish Dep. 45-46).) The problems at the range were related, in Chaffinch's words, to a "whole bunch" of issues. (id. at A-284 (Chaffinch Dep. 59).) As the State Auditor found, one of those issues was Foraker's refusal to perform the routine maintenance that the FTU had done for several years prior to December 1, 2003. (Id. at A-512 – A-513.) Chaffinch simply said that Foraker played a role in the condition of the range on the day of the media tour. While some might disagree with the wisdom of Chaffinch's choice of words, there is no real dispute that they are accurate.[4]

---

[3] Foraker also includes Chaffinch's statements made to WBOC-TV in his general accusation that Chaffinch publicly attacked him. (Pl.'s Op. Brief 15, 17.) Chaffinch said, "Our concern first is with the people that will be in here training. So, until such time as we know that it's safe and healthy to be here, we won't be here." (CA at A-553.1 – A-553.4.) There is no mention of Foraker, directly or indirectly. No reasonable person could understand these comments as retaliatory attacks on Foraker.

[4] In an attempt to prove that Chaffinch's statements were false, Plaintiff relies on various analogies to automobiles. (Pl.'s Op. Brief 19 & n.22.) These comparisons are unavailing. First, it is wrong to compare the shut down of the indoor firing range to the explosion of a car hit from the rear, unless one acknowledges that the driver of the car failed to perform routine maintenance that might have prevented the accident or the explosion. (Pl.'s Op. Brief 19 (citing Pl.'s App. at A314-15 (Baylor Dep. at 209-10).) It is also a false analogy to note that troopers are not allowed to "tinker with the engine [or] tweak the transmission" of a patrol car. (Id. at 19 n.22.) Whether it was a
Continued…

Second, Chaffinch's published statements cannot be considered retaliatory adverse actions because they are true. When asked how the condition of the range deteriorated to a point where shutting it down was necessary, Col. Chaffinch responded, "Things changed in December when another sergeant came in. That's at least a portion of where the ball was dropped." Prior to December 1, 2003, the FTU staff had routinely performed certain maintenance on the bullet trap, including replacing pumps and filters on the trap's water system and cleaning out the water tank. (CA at A-199 – A-200, A-214 (Foraker Dep. 20-23, 81); see also id. at A-80, A-82 – A-83, A-86 (Price Dep. 40-41, 48-52, 62); A-136 – A-142 (Warren Dep. 51-55; 61-65; 67; 69; 73-76).) As the State Auditor found, Foraker and his staff stopped doing the maintenance in December. (Id. at A-522.) As a result, the amount of smoke and dust in the range increased and the environmental conditions deteriorated.[5] Col. Chaffinch did not defame Foraker when he noted these changes; he merely described what happened.

Col. Chaffinch was also accurate when he stated, "I cannot say Sgt. Foraker was willing to do [hands-on, daily cleaning of the bullet trap]. He was interested in instruction and teaching people how to shoot. He did not feel (bullet trap cleaning) was part of his purview. He felt that was putting him in harm's way." Foraker and his staff were, in fact, not willing to continue maintaining the bullet trap. Foraker was primarily interested in instruction (i.e., teaching police recruits and others how to shoot), and he considered training his primary responsibility. (Id. at A-212 (Foraker Dep. 72).) Finally, Foraker and his staff have admitted that they stopped doing

---

….Continued

good idea or not, the FTU staff had been maintaining the bullet trap at the range for more than five years. When they stopped, they allowed the environmental problems they were already experiencing to pass the point of return.

[5] Additionally, sometime in December, the conveyor-dredge system on the bullet trap ceased functioning. (CA at A-203 (Foraker Dep. 35-36).) Foraker nevertheless continued to use the range to train recruits classes and other DSP units. (Id. at A-205 (Foraker Dep. at 44).)

the maintenance because of health concerns and to avoid "harm's way."  (Id. at A-522; see, e.g., id. at A-212 (Foraker Dep. 73).)

Col. Chaffinch also stated that "Sgt. Ashley was willing to do [the hands-on, daily cleaning of the bullet trap]."  Chaffinch's comparison of Foraker with Ashley cannot be the basis for First Amendment retaliation because it is substantially true.  Foraker admits that the bullet trap required extensive cleaning (id. at A-199 – A-200, A-214 (Foraker Dep. 20-23, 81), and the record contains overwhelming evidence that Ashley performed that maintenance, even while allowing others to "back off."  (Id. at A-95.)  Foraker may speculate that this statement is part of some scheme to "frame" him, but he can present no evidence to challenge its accuracy.

Even if Chaffinch made his comments out of hostility towards Foraker, the consequences of the statements are too insignificant as a matter of law to raise constitutional concerns.  They are the type of "criticism, false accusation, or verbal reprimands" that the Third Circuit has stated fails to state a claim under § 1983 and the First Amendment.  Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (citation omitted); see McKee v. Hart, --- F.3d ----, No. 04-1442, 2006 WL 27474, at *4-*5 (3d Cir. Jan. 6, 2006) ("[N]ot every critical comment – or series of comments – made by an employer to an employee provides a basis for a colorable allegation that the employee has been deprived of his or her constitutional rights.") (citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000)); Johnson v. Heimbach, No. Civ. A. 03-2483, 2003 WL 22838476, at *6 (E.D. Pa. Nov. 25, 2003).[6]

Furthermore, when the act alleged to be retaliatory is a defendant's speech (as opposed to some particular employment action), the plaintiff alleging retaliation must prove that offending

---

[6] Defendants have included copies of these unreported or presently unpublished cases in their Appendix to Answering Brief in Opposition to Plaintiffs' Motion for Summary Judgment on Counts I and II, which is being filed in the companion case of Price v. Chaffinch, No. 04-956-GMS (D. Del.).

party's statements include "a threat, coercion, or intimidation intimating that punishment,

sanction or adverse regulatory action will imminently follow." Suarez Corp., 202 F.3d at 687

(citation omitted). Accord X-Men Securities, Inc. v. Pataki, 196 F.3d 56, 67-72 (2d Cir. 1999).

For Chaffinch's words to constitute an adverse action in the absence of such a threat would

undermine Chaffinch's own First Amendment rights, as well as his duty to the public to address

matters of public concern. Suarez Corp., 202 F.3d at 688, n.13 (citation omitted). Chaffinch's

comments, of course, do not contain a threat or coercive remark directed towards Plaintiff.

Chaffinch simply said that the range was in such sorry shape because Foraker would not do what

his predecessor did. It is a true statement, confirmed later by the State Auditor's report. Thus,

Chaffinch's comments are not actionable.[7]

### 2.    MacLeish has not acted adversely to Plaintiff.

Foraker asserts that MacLeish, motivated by Foraker's earlier lawsuit against Chaffinch,

asked him to leave a section chief and troop commander's meeting in July 2004, thereby

diminishing his authority as the NCOIC of the firing range. (Pl.s' Op. Brief 24-26.)

Col. MacLeish has acknowledged that in July 2004, he told Foraker not to attend section chief

and trooper commander meetings unless he was asked by a section chief to report to the group on

FTU matters. (CA at A-380 (MacLeish Dep. 220-21); see also id. at A-62 – A-63; A-244

(Foraker Dep. 188-89).) MacLeish did so because Foraker was not a section chief or troop

commander and his presence at that group was not necessary. Foraker was the sergeant in

---

[7] While it is unclear from his Opening Brief, Foraker may see retaliation in a "absolute hateful stare" that
Col. Chaffinch allegedly gave him at meeting. (Pl.'s Op. Brief 25.) The First Amendment was not meant to protect
a hypersensitive plaintiff from looks, body language, or other subjective expressions of displeasure that cannot be
tied to any concrete harm. See McKee, --- F.3d ----, 2006 WL 27474, at *3; see also Bart v. Teford, 677 F.2d 622,
625 (7th Cir. 1992) (cautioning that "[i]t would trivialize the First Amendment to hold that harassment for
exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary
firmness from that exercise"). Cf. Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999)("If every low evaluation or
other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title
VII would be triggered by supervisor criticism or even facial expressions indicating displeasure.").

charge of the firing range.  He reported to a lieutenant, who in turn reported to a section chief, the Director of Training.  (Id.)  There is no evidence of record that, as a matter either of official policy or practice, the NCOIC of the FTU is required to attend section chief and troop commander meetings.[8]  Foraker cannot identify a single meaningful change in his job status, authority, or responsibilities as a result of being removed from the July meeting.  Accordingly, this action is not actionable.  See McKee, --- F.3d ----, 2006 WL 27474, at *5 (holding that defendants' decision to remove plaintiff as "co-leader" of an investigation was not "deprivation of a constitutional right").

The allegations about Foraker's graduation speech are also too trivial to be actionable. (Pl.'s Op. Brief 26.)  The elimination of an award speech to reduce the length of the graduation ceremony is surely not a constitutional question.

Foraker attributes the allegedly retaliatory micromanagement (see Pl.'s Op. Brief 26) to his new supervisor, Capt. Harry Downs, who became the head of the Training Academy after litigant Greg Warren retired, Capt. Albert Homiak, Downs's successor, and Lt. Ronald Hagans, who replaced litigant Ralph Davis as the  second-in-command at the DSP Academy in 2005. (CA at A-248 – A-251 (Foraker Dep. 204-16).)  Foraker says that they made him justify his manpower requests and his budgets.  There is no proof that anyone higher than these officers was responsible; that is, Defendants are not alleged to have done anything.  Furthermore, the

---

[8] Foraker claims that he received "orders to attend these meetings."  (Pl.'s Op. Brief 25.)  In fact, the e-mail notices that announce the meetings are not orders to attend.  Rather, they merely serve to notify a certain group of troopers that the meeting will take place.  (CA at A-456 (McQueen Dep. 39).)  There is no expectation or requirement that every trooper on the list attend.  It is true that Foraker's name was on an e-mail distribution list, whereby the e-mail author can enter one word or phrase to account for a longer list of addressees.  That list, however, is used for the distribution of information, other than announcing the monthly meetings, that may be useful and necessary for the NCOIC of the FTU.  Importantly, even after the July 2004 incident, Foraker's name remained on the list, and he still received information.

"micromanaging" did not involve anything more than asking Foraker to do his job as those superior officers saw it. It is not actionable conduct.

Lastly, although he does not fully brief the point, Foraker lists MacLeish's decision to send him to fitness-for-duty exams as another example of adverse action. (Pl.'s Op. Brief 26.) MacLeish did so only after Foraker showed hearing loss in a physical examination he requested himself and after Foraker filed a workers compensation claim against the DSP for hearing loss. (See CA at A-786; A-816.) As a result of the exams, Foraker was deemed fit for full duty. (Id. at A-817 – A-819.) He was never sidelined from his position as NCOIC of the FTU and has suffered no other alteration in his job status.[9] This too is not actionable retaliation.

### 3. Defendants were not motivated by Foraker's protected activity.

Foraker argues that there is no factual dispute that Defendants were motivated to retaliate against him because of his earlier lawsuit. Chaffinch and MacLeish, however, deny doing so, thereby eliminating the possibility of summary judgment for Foraker on matters that require undisputed proof of motive and causation.

Foraker claims that Chaffinch had an "open vendetta" against him. (Pl.'s Op. Brief 6.) Chaffinch's deposition testimony contradicts this hyperbolic claim. Chaffinch testified that, while he did not like the fact that Foraker sued him, he did not bear any animosity towards him or dislike him. (CA at A-280 (Chaffinch Dep. 41-42).) He also stated that he was not angry or irritated by Foraker's reinstatement to the FTU. (Id. at A-297 (Chaffinch Dep. 39).) Likewise, MacLeish testified that it was not true that he disliked Foraker or that he felt animosity towards him. (Id. at A-333 (MacLeish Dep. 32-33).)

---

[9] Defendants note that all four member of the FTU staff were sent for fitness-for-duty examinations, including one (James Warwick) who has never filed suit against anyone.

Plaintiff also makes much of the story that Chaffinch "bragged" to Conley, Dixon, and Baylor about making statements about Foraker to the media. Chaffinch, however, explicitly denies that these conversations occurred or that he ever said "I got [Foraker] back or the "mess at the range is all Foraker's fault." (Id. at A-314, A-316 (Chaffinch Dep. 177-79, 185-187).)

Foraker points to the fact that loyalty and politics may play a role in decisions made in the police department, as if that alone were sufficient to establish Defendants' bad intent. In fact, Chaffinch testified that loyalty is one of the many factors that he considers in making decisions and that because the Superintendent of the DSP is a political appointee, politics play a role in policy decisions. (Id. at A-308 – A-309 (Chaffinch Dep. 155-159).) This is to be expected in a democracy. Chaffinch also explained, however, that politics played no role in the day to day decisions regarding troopers' health and safety. (Id.)

In sum, the deposition testimony of Chaffinch and MacLeish indicates that they were not motivated by retaliation, and therefore summary judgment is inappropriate because, at the very least, there is a genuine dispute regarding Foraker's allegations.

## V.   <u>CONCLUSION</u>

Plaintiff has failed to demonstrate that, as a matter of law, he has suffered any adverse action motivated by Defendants' intent to retaliate against Plaintiff for exercising free speech and petition rights under the First Amendment.  Accordingly, this Court should deny Plaintiff's Motion for Summary Judgment on Counts I and II. (D.I. # 61).


Respectfully submitted,


Date:  February 8, 2006                      */s/ Noel C. Burnham*
                                             Noel C. Burnham (DE Bar No. 3483)
                                             Richard M. Donaldson (DE Bar No. 4367)
                                             Montgomery, McCracken, Walker & Rhoads, LLP
                                             300 Delaware Avenue, Suite 750
                                             Wilmington, DE 19801
                                             Telephone:  (302) 504-7840
                                             Facsimile:  (302) 504-7820

                                             Edward T. Ellis
                                             Robert J. Fitzgerald
                                             Montgomery, McCracken,
                                               Walker & Rhoads, LLP
                                             123 South Broad Street
                                             Philadelphia, PA  19109
                                             (215) 772-1500

                                             *Counsel for Defendants L. Aaron Chaffinch,*
                                             *Thomas F. MacLeish, David B. Mitchell, and the*
                                             *Division of State Police, Department of Safety and*
                                             *Homeland Security, State of Delaware*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that two (2) copies of the Answering Brief in Opposition to Plaintiff's

Motion for Summary Judgment on Counts I and II were served by hand delivery this 8th day of

February 2006 on:

>       Thomas Stephen Neuberger, Esquire
>       Stephen J. Neuberger, Esquire
>       The Neuberger Firm, P.A.
>       Two East Seventh Street
>       Suite 302
>       Wilmington, DE  19801
>
>       Martin D. Haverly, Esquire
>       Two East Seventh Street
>       Suite 302
>       Wilmington, DE  19801-3707
>
>       *Attorneys for Plaintiff*

>                 /s/ Noel C. Burnham
>       Noel C. Burnham (DE Bar No. 3483)