*9 There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court. *Erie Ins. Exchange v. Applica Consumer Prods., Inc.,* No. 02-1040, 2005 WL 1165562, at *3 (May 17, 2005) citing *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994). In exercising this discretion, however, I am guided by the following factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid,* 13 F.3d at 79. In choosing an appropriate sanction for the spoliation of evidence, courts should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Id.; Baliotis v. McNeil,* 870 F.Supp. 1285, 1289 (M.D.Pa.1994) ("A sanction that has the 'drastic' result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a 'last resort,' to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available.") (internal citations and quotations omitted).

*1. Degree of Fault*

"When determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case." *In re Wechsler,* 121 F.Supp.2d 404, 415 (D.Del.2000); *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995) ("[I]t must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.").

Paramount argues that Davis is at fault because he willfully wiped the computer's hard drive clean of all information when he knew that the computer's memory was relevant to the litigation. *Baliotis,* 870 F.Supp. at 1290-91 ("A litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."); *Mosaid,* 348 F.Supp.2d at 336 ("While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation."). I agree. Davis knew or should have known that the computer's memory was relevant to the lawsuit against him because he received notice of the action against him on March 9, 2005-sixteen days before he wiped the hard drive clean.

*10 Davis argues that he is not at fault because he reasonably wiped the computer's hard drive clean of all prior memory in preparation for selling it to Seymour, who had expressed interest in the computer as early as February 23, 2005. This argument does not obviate his duty to preserve the computer's memory. Once he learned of the lawsuit pending against him and the subject matter of that lawsuit, he either knew or should have known that the computer's memory was a crucial piece of evidence in this action. His failure to preserve this evidence places the fault for its destruction squarely upon Davis.

*2. Prejudice*

"When considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed." *Wechsler,* 121 F.Supp.2d at 416 ("[W]hen one side is completely deprived of the opportunity to inspect the evidence because it was destroyed after the other side had a chance to examine it, then sanctions for spoliation are generally appropriate."). Paramount is prejudiced by the destruction of this evidence because it has not and will not have any opportunity to determine whether its motion picture or the eDonkey network software was stored on Davis' computer on the date of the alleged infringement. There are no other means of retrieving the information stored on Davis' computer prior to the time of the alleged infringement; that information is lost forever. *See id.* ("Of course, when a party is denied any opportunity to examine the evidence, this test would automatically be satisfied.").

*3. Substantial Unfairness and Deterrence*

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Westlaw.

Paramount argues that in order to avoid substantial unfairness and deter such conduct by others in the future I should impose a spoliation inference sanction against Davis for wiping his hard drive clean; Paramount asserts that this is the least onerous sanction to impose. *See Mosaid,* 348 F.Supp.2d at 335. The spoliation inference permits a fact finder to infer that the "destroyed evidence might or would have been unfavorable to the position of the offending party." *Id.* at 336 ("If a party has notice that evidence is relevant to an action, and either proceeds to destroy that evidence or allows it to be destroyed by failing to take reasonable precautions, common sense dictates that the party is more likely to have been threatened by that evidence."); *Brewer,* 72 F.3d at 334 ("When an item of evidence is relevant to an issue in a case, the trier of fact generally may receive the fact of the item's nonproduction or destruction as evidence that the party that has prevented production did so out of the well founded fear that the item of evidence would harm him or her."); *Schmid,* 13 F.3d at 78 *quoting Nationwide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 218 (1st Cir.1982) (Breyer, J.) ("the evidentiary rationale for the spoliation inference is nothing more than the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the document.").

*11 The spoliation inference applies only where: (1) "the evidence in question was within the party's control," *Brewer,* 72 F.3d at 334; (2) "there has been an actual suppression or withholding of the evidence," *id.;* (3) "the evidence destroyed or withheld was relevant to claims or defenses," *Mosaid,* 348 F.Supp.2d at 336; and (4) "it was reasonably foreseeable that the evidence would later be discoverable," *id.* The spoliation inference sanction is appropriate in this case because, as discussed above, the information stored on the computer was within Davis' exclusive control, he destroyed that information by wiping his hard drive clean after receiving notice of this action, the information destroyed was relevant to Paramount's copyright infringement claim, and Davis knew or should have known that the information stored on his computer would later be necessary to confirm any copyright infringement or to demonstrate that he had not infringed on Paramount's copyright.

However, because neither party has requested a jury trial, Paramount argues that the typical spoliation inference jury instruction is inapplicable here. Instead, Paramount argues that I should act as the fact finder now to find as a matter of law that Davis stored the motion picture file and eDonkey network software on his computer. In other words, Paramount argues that because Davis wiped the hard drive clean of all information I should decide the motion for summary judgment by concluding from the spoliation inference that the motion picture and eDonkey network software were in fact stored on his computer at the time of the infringement.

It may be that Davis intentionally wiped the computer's memory in order to impair the ability of Paramount to discover evidence of the motion picture and eDonkey network software on his computer. However, such a factual finding is not appropriate at the summary judgment stage for three reasons. First, making such an adverse inference at this stage is tantamount to granting summary judgment-a far more severe sanction-in favor of Paramount and against Davis merely for wiping the hard drive clean. I also note that Paramount has not moved for a summary judgment sanction. *See Baliotis,* 870 F.Supp. at 1289 ("A sanction that has the 'drastic' result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a 'last resort,' to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available."). Second, with respect to Paramount's motion for summary judgment, I must view the evidence in the light most favorable to Davis and draw all inferences in his favor. Paramount has not cited and I cannot find any case in which a court has used the spoliation inference to determine an issue of fact in favor of granting summary judgment. Third, a spoliation inference is merely an inference that a fact finder may draw from a view of all the evidence presented at trial; it is not a legal conclusion that must be reached when evidence is presented that a party has willfully destroyed relevant evidence.

*12 Notwithstanding the spoliation inference, there remain genuine issues of material fact as to whether the motion picture and eDonkey network software were on Davis' computer at the time of the alleged infringement and whether Davis intentionally wiped his computer hard drive clean to avoid Paramount discovering his infringing activities. Accordingly, there are three related genuine issues of material fact: whether Davis engaged in any infringing activity; whether he was a first propagator of the motion picture; and whether he was misidentified. My ruling here does not mean that Paramount will not have the benefit of the spoliation inference at trial. I will take Davis' willful destruction of evidence into consideration at the time of trial.

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

B-23

Westlaw.

The genuine issues of material fact discussed above also preclude Davis' motion for summary judgment. The parties' cross motions for summary judgment will be denied. An appropriate order follows.

ORDER

AND NOW, this 2nd day of December, upon consideration of the parties' cross motions for summary judgment and for the reasons set forth in the accompanying memorandum, it is ORDERED that the parties' cross motions for summary judgment are DENIED. I recommend that defendant seek legal representation.

E.D.Pa.,2005.
Paramount Pictures Corp. v. Davis
Slip Copy, 2005 WL 3303861 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 442453 (Trial Pleading) Complaint (Jan. 21, 2005)
• 2:05cv00316 (Docket) (Jan. 21, 2005)

END OF DOCUMENT

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Westlaw.

Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 2003 WL 21104954 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
POSITRAN MANUFACTURING, INC., Plaintiff/Counter-Defendant,
v.
DIEBOLD, INC., Defendant/Counter-Claimant.
**No. 02-466 GMS.**

May 15, 2003.

MEMORANDUM AND ORDER

SLEET, J.

I. INTRODUCTION

*1 On May 31, 2002, the plaintiff, Positran Manufacturing Inc. ("Positran"), filed the above-captioned action asserting claims for breach of contract. In response, the defendant, Diebold, Inc. ("Diebold") has asserted counterclaims for breach of contract, fraud, and unjust enrichment. A two-day bench trial is scheduled to begin on June 16, 2003.

Presently before the court is Diebold's motion for relief from Positran's allegedly intentional destruction of evidence. For the following reasons, the court will grant Diebold relief, albeit not in the requested form.

II. BACKGROUND

In the first count of its counterclaim, Diebold asserts that Positran failed to make payments to Mosler as they became due for goods tendered by Mosler under its agreement with Positran.[FN1] Positran, however, argues that this obligation was "canceled out" under a supposed oral agreement between it and Mosler to "net" that obligation against amounts Mosler allegedly owed to Positran.

   FN1. Diebold subsequently purchased Mosler's assets and accounts-receivable, including the roughly $1.3 million account-receivable against Positran.

Diebold now contends that, while its discovery requests were pending, and just days before his deposition, Positran's Vice-President, Joseph Uhl ("Uhl"), intentionally destroyed relevant evidence. Specifically, Diebold alleges that Uhl destroyed his handwritten notes which set forth his contemporaneous account of events that are the subject of both Positran's claim and Diebold's counterclaim. This fact is not in contention because, at his July 11, 2002 deposition, Uhl admitted that, just before his deposition, he did, in fact, throw away his handwritten notes.

Diebold alleges that the destroyed notes reflected communications between Positran and Mosler regarding Mosler's product orders to Positran. According to Diebold, these communications are crucial to the issue of the scope of the implied license to make Mosler goods. Diebold further alleges that the destroyed notes contained information on the Positran-Diebold negotiations that led to the agreement upon which Positran bases its "netting" claim.

Additionally, Diebold maintains that, not only did Uhl destroy documents, he fabricated a typewritten document which was subsequently produced to Diebold in discovery. Uhl then falsely testified that the document was a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

verbatim, typed version of the destroyed handwritten notes. In support of its contention that this document is fraudulent, Diebold points to the following testimony taken from Uhl at his July 11, 2002 deposition. At that deposition, Uhl stated that the only documents to which he referred in creating the typed document were the handwritten notes that he destroyed. He further testified that the only difference between the documents is that, whereas the destroyed documents were handwritten, the produced document is typewritten.

Upon closer inspection of the produced document, however, Diebold noticed that it duplicates, often verbatim, excerpts from Positran's complaint. Additionally, while Uhl stated that his handwritten notes did not refer to exhibits, the typed document does refer to exhibits. Those exhibit references in turn exactly match the exhibit references in Positran's complaint.

### III. DISCUSSION

*2 A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit. *See, e.g., Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D.Pa.1996) (citing *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994)); accord *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 888-89 (S.D.N.Y.1999) (asking whether the party "knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation"); *Bass v. General Motors Corp.,* 929 F.Supp. 1287, 1288 (W.D.Mo.1996) (same). A party who breaches this duty by destroying relevant evidence or by allowing relevant evidence to be destroyed may be sanctioned by the court. *See, e.g., Howell,* 168 F.R.D. at 505; accord *TeleCom Intn'l Am. Ltd. v. AT & T Corp.,* 189 F.R.D. 76, 81 (S.D.N.Y.1999). When this destruction is willful or in bad faith and intended to prevent the other side from examining the evidence, the court may impose the most severe sanction of them all-the outright dismissal of a claim or the entry of a default judgment. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 74 (S.D.N.Y.1991) ("[T]he even harsher sanction of default [or dismissal] may be imposed as a sanction for the intentional destruction of evidence if the party seeking the evidence has been severely prejudiced and no lesser sanction is adequate."); accord *TeleCom,* 189 F.R.D. at 81 (noting that the sanction of dismissal is a "drastic remedy" which should be imposed only in "extreme circumstances," such as when a party wilfully destroys evidence or otherwise acts in bad faith) (relying on *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)); *Baliotis,* 870 F.Supp. at 1289 ("A sanction that has the 'drastic' result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a 'last resort,' to be imposed only 'if no alternative remedy by way of a lesser, but equally efficient, sanction is available.' ") (citations omitted).

When determining whether to impose sanctions for the spoliation of evidence, the court must consider the following three factors:
(1) the degree of fault and personal responsibility of the party who destroyed the evidence;
(2) the degree of prejudice suffered by the other party; and
(3) the availability of lesser sanctions which would avoid any unfairness to the innocent party while, at the same time, serving as a sufficient penalty to deter the same type of conduct in the future.

*See Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994); accord *Indemnity Ins. Co. of N. Am. v. Liebert Corp.,* 1998 WL 363834, at *3 (S.D.N.Y. June 29, 1998).

As the *Schmid* court emphasized, when determining the degree of fault and personal responsibility attributable to the party that destroyed the evidence, the court must consider whether that party intended to impair the ability of the other side to effectively litigate its case. 13 F.3d at 80; *see also Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir.1995) ( "[I]t must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for."); accord *Collins v. Throckmorton,* 425 A.2d 146, 150 (Del.1980) ( "[W]here a litigant intentionally suppresses or destroys pertinent evidence, an inference arises that such evidence would be unfavorable to his case .").

*3 In addition, when considering the degree of prejudice suffered by the party that did not destroy the evidence, the court should take into account whether that party had a meaningful opportunity to examine the evidence in question

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Westlaw.

before it was destroyed. *See Thiele v. Oddy's Auto & Marine, Inc.,* 906 F.Supp. 158, 162 (W.D.N.Y.1995). As the *Thiele* court explained, when one side is completely deprived of the opportunity to inspect the evidence because it was destroyed after the other side had a chance to examine it, sanctions for spoliation are generally appropriate. *Id.* at 162-63 ("[W]ithout any ability to examine the boat, [the third-party defendant] will be greatly frustrated in its ability to defend its case. Since [the plaintiff] is plainly at fault for allowing the boat to be placed in a landfill, any claims against [the third-party defendant] must be dismissed."); *see also Baliotis,* 870 F.Supp. at 1290-91 ("At a minimum ... an opportunity for inspection should be afforded ... before relevant evidence is destroyed.").

In the present case, it is clear that Uhl's destruction of his notes reflects an extreme degree of fault and personal responsibility. Indeed, he admits that he personally destroyed his contemporaneous account of events that are, at a minimum, relevant to the central issues in this case. Further, he destroyed the evidence, not before litigation ensued, but rather, months after Diebold served document requests in a related case, a month after Positran filed its complaint in the present case, and mere days before his own deposition. On these facts, Positran cannot credibly claim that Uhl was unaware of his obligations.

More disturbing still, Positran now attempts to explain the similarities between Uhl's typewritten document and its complaint by arguing that the typewritten document is verbatim only to the extent that portions of the information were taken from Uhl's handwritten notes. Positran further explains that Uhl may have also referred to other documents in preparing his typewritten notes. Thus, Positran's explanation is basically that some of the typewritten document is a verbatim transcript of Uhl's handwritten notes, but not necessarily all of it reflects his notes. Moreover, although Uhl himself denied having referred to outside documents at his April 16, 2003 deposition, Positran takes the position that he was "intimidated" during the questioning, and was thus incorrect on this point.

While the problems with Positran's explanation are manifold, the court need only address one to make its point. Assuming that Positran's version is correct, this position merely exacerbates the problem because it makes it even less clear whether the typed document bears any resemblance to Uhl's handwritten notes. Neither the court, nor Diebold, can know what Uhl culled from his notes, what he pulled from other sources, and what may have been destroyed in notes he ultimately omitted from the typewritten document.

*4 Likewise, because Diebold has no means of determining what Uhl's contemporaneous notes described, the prejudice to Diebold is not insignificant. There is no question that Diebold did not have the opportunity to examine Uhl's notes prior to their destruction. Additionally, Diebold has presented evidence that the information in Uhl's handwritten document would have been relevant to its case. For instance, focusing just on the May 7, 2001 entry in Uhl's typed document, the meeting that day allegedly related to a "credit hold," Positran's refusal to ship products, a production cut-back, quality issues, and a possible account "netting" arrangement. These are all issues in the present case and in its related companion case. Instead of Uhl's contemporaneous notes of this meeting, however, Diebold is left with Positran's assurance that Uhl completely and accurately transcribed all of his notes from that meeting. Moreover, Uhl's actions have deprived Diebold of the opportunity to use a contemporaneous record to cross-examine Positran's representative to determine what really occurred. Thus, given Positran's own inability to coherently and consistently explain what the typewritten document actually consists of, the court is compelled to conclude that Diebold has suffered prejudice through the loss of the handwritten document.

In light of the circumstances surrounding Uhl's destruction of his notes, the unavoidable inference is that the notes would have been helpful to Diebold's case. The court does not, however, believe that Diebold's requested sanction of dismissal is warranted in this case. Diebold has not argued that Uhl's handwritten notes are the only evidence available to prove its claims and adequately defend itself. Thus, while a sanction is clearly warranted, dismissal would be unjustly harsh. The court will, therefore, impose a "spoliation inference" in this case. This inference will allow the trier of fact, in this case, the court, to assume the destroyed evidence would have been unfavorable to the offending party. Such a sanction is sufficient to avoid substantial unfairness to Diebold, while at the same time serving as a deterrent to Positran, as well as other future litigants who may consider engaging in similar dilatory tactics.

## IV. CONCLUSION

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

Westlaw.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. Diebold's Motion for Relief from Intentional Destruction of Evidence (D.I.25) is GRANTED.
2. Positran's Motion to Exceed Its Answering Brief Page Limit (D.I. 44) is declared MOOT.

D.Del.,2003.
Positran Mfg., Inc. v. Diebold, Inc.
Not Reported in F.Supp.2d, 2003 WL 21104954 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV00466 (Docket) (May. 31, 2002)

END OF DOCUMENT

© Copyright 2006 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

B-28

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Patricia SKEETE, Plaintiff,
v.
MCKINSEY & COMPANY, INC., and Richard Porth, Defendants.
No. 91 Civ. 8093 (PKL).

July 7, 1993.

Schreiber, Simmons, MacKnight & Tweedy, New York City (Andrew N. Krinsky, of counsel), for plaintiff.
Epstein Becker & Green, P.C., New York City (Carol S. Bernheim, of counsel), for defendants.

OPINION AND ORDER

LEISURE, District Judge,
*1 This is an action arising out of allegations by plaintiff, Patricia Skeete ("Skeete"), that she was discriminated against on the basis of her race, sex, and national origin. On December 2, 1991, Skeete commenced this action against her former employer, McKinsey & Company, Inc. ("McKinsey"), and supervisor, Richard Porth, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and Section 1981 of Title 42 of the United States Code, each as amended by the Civil Rights Act of 1991. Defendants filed a motion to preclude evidence, or alternatively to impose an adverse inference on plaintiff, as a sanction for plaintiff's loss and destruction of evidence. Defendants further seek an award of reasonable costs, including attorney fees. For the reasons stated below, the Court denies defendants' motion in its entirety.

BACKGROUND

In the complaint, plaintiff Skeete alleges that, during the course of her employment, she was subjected to racial and sexual harassment and was discharged from her employment on November 6, 1990 "because of her race and/or her sex and/or her national origin and in retaliation for her requests that defendant McKinsey provide a work place [sic] free from sexual and racial harassment." Complaint, dated December 2, 1991, at ¶ 6, annexed as Exhibit A to the Affidavit of Carol S. Bernheim, Esq., sworn to on April 16, 1993 ("Bernheim Affidavit"). From May 1990, when Skeete alleges that false and pretextual claims were being made against her by her supervisor, until the time of her discharge in November 1990, Skeete taped several in-person conversations with employees, voice mail messages from her office, and conversations and messages on her answering machine at home.

On January 22, 1992, Skeete was served with defendants' First Request for Production of Documents. The defendants sought production of, inter alia:
All diaries, logs, calendars, appointment books, telephone recordings, tape recordings and documents, whether prepared or maintained for personal or business-related purposes, which contain your records, notes, descriptions or thoughts concerning your work assignments, work environment, job positions, peers, supervisors and managers, and any other aspects of the terms and conditions of your employment.

See Defendants' First Request for Production of Documents, Request No. 10, dated January 22, 1992 ("Document Request No. 10"), at 5, annexed as Exhibit C to the Bernheim Affidavit. On March 4, 1992, Skeete responded to this request by noting that:A transcript of certain taped telephone conversations is being prepared and will be provided. No other such documents exist, other than any documents annexed hereto numbered 1 through 106 which may be included within this request.

See Plaintiff's Response to Defendants' Document Request, Response No. 10, dated March 4, 1992, at 6, annexed as Exhibit D to the Bernheim Affidavit.

On April 20, 1992, defendants requested that Skeete produce the original tapes of the aforementioned telephone conversations. See Letter of Defense Counsel, dated April 20, 1992, annexed as Exhibit E to the Bernheim Affidavit. On April 27, 1992, Skeete's counsel produced one microcassette tape and one standard-size cassette tape containing certain recordings created by plaintiff during her employment at McKinsey. On May 1, 1990, plaintiff's deposition was commenced. During

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01207-GMS    Document 77-4    Filed 02/08/2006    Page 9 of 14

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

plaintiff's deposition, defendants learned of the existence of original recordings that were not disclosed in response to defendants' earlier request. Plaintiff testified that she attempted to tape record several (1) voice mail messages from the office, (2) in-person conversations with other employees, and (3) messages or conversations on her answering machine at home.

*2 At plaintiff's deposition, defendants orally requested that all of these tapes, which were not disclosed in response to defendants' discovery request, be produced. Skeete maintains that this request was made "after the materials had been innocently and unknowingly lost" in the almost two years that transpired between the creation of the tapes and defendants' request for their production. *See* Plaintiff's Memorandum in Opposition to Motion to Preclude Evidence, dated April 28, 1993, at 4. Skeete disputes whether these tapes fell within the scope of Discovery Request No. 10, which defendants argue clearly put her on notice as to the need to produce such tapes. Instead, Skeete contends that prior to May 1, 1992, she did not know that defendants wanted such tapes and was not aware of any duty to save them. *See* Affidavit of Patricia Skeete, sworn to on April 24, 1993 ("Skeete Affidavit"), at ¶ 18. Skeete concedes that she may have re-recorded over some of the conversations or lost certain tapes. *See* Skeete Affidavit, at ¶¶ 3, 18. More specifically, Skeete notes that "I had left the tapes on my credenza or night table and on occasion my sister would use them to record music." Skeete Affidavit, at ¶ 18.[FN1] In addition, Skeete also states that "other tapes may have been misplaced during my move from New York to Atlanta, but at no time did I set out to erase a recording." *Id.* Thus, Skeete contends that their loss or destruction was unintentional.

Defendants also sought the production of notes describing plaintiff's thoughts about her employment which were created by plaintiff during her employment at McKinsey. Plaintiff disclosed the one-time existence of such notes, but stated that she did not possess any such notes because (1) she customarily would discard them shortly after they were made and (2) while she would save some notes on occasion in a box under her desk which contained other personal papers, she never recovered that box after she was discharged from her employment at McKinsey. *See* Skeete Deposition, at 116-121, annexed as Exhibit O to the Bernheim Affidavit; Skeete Affidavit, at ¶ 19. Therefore, Skeete contends that, to the extent such notes may still exist and have some relevance to the litigation, they are in the possession of McKinsey.

Defendants have moved to preclude plaintiff from offering evidence concerning certain recordings of in-person conversations, telephone conversations, voice mail and answering machine messages, and handwritten notes on the grounds that plaintiff has destroyed or lost the original tapes and documents upon which such evidence is derived, as well as other tapes and documents which may have been favorable to defendants. In the alternative, if the Court permits such evidence, defendants seek to impute an adverse inference to the plaintiff that the destroyed or lost evidence would have been favorable to defendants.

DISCUSSION

I. AUTHORITY FOR IMPOSING SANCTIONS

*3 It is well established that a court has discretion to impose sanctions on a litigant for failure to produce evidence. In the instant case, no court order was in effect addressing the documents and tapes at issue and, therefore, the Court appears to have no authority to impose sanctions under Rule 37(b) of the Federal Rules of Civil Procedure.[FN2] However, a violation of a court order is not a prerequisite for the imposition of sanctions. *See Sassower v. Field,* 973 F.2d 75, 80-81 (2d Cir.1992), *cert. denied,* 113 S.Ct. 1879 (1993); *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("International Brotherhood of Teamsters"),* 948 F.2d 1338, 1345 (2d Cir.1991); *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 552 (S.D.N.Y.1989). Instead, the Court can rely on its broad inherent powers to sanction parties "acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower,* 973 F.2d at 81 (citing *Chambers v. NASCO, Inc.,* 111 S.Ct. 2123, 2133 (1991)); *International Brotherhood of Teamsters,* 948 F.2d at 1345. The Second Circuit has noted that this inherent power "stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *International Brotherhood of Teamsters,* 948 F.2d at 1345 (quoting *Chambers,* 111 S.Ct. at 2132); *see also Penthouse Int'l, Ltd. v. Playboy Enters., Inc.,* 663 F.2d 371, 386 (2d Cir.1981) ("A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices."); *Capellupo v. FMC Corp.,* 126

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01207-GMS   Document 77-4   Filed 02/08/2006   Page 10 of 14

Not Reported in F.Supp.   Page 3
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

F.R.D. 545, 550-51 (D.Minn.1989) (with respect to the destruction of documents, "the Court relies on its inherent power to regulate litigation, preserve and protect the integrity of proceedings before it, and sanction parties for abusive practices"). Accordingly, even in the absence of an order, the Court clearly has the power to sanction the improper destruction of evidence by a party under its inherent powers. *See, e.g., Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y.1991); *Capellupo,* 126 F.R.D. at 550-51.

## II. DUTY TO PRESERVE EVIDENCE

In assessing whether sanctions are appropriate in the instant case, the Court must address the threshold issue of whether or not Skeete had a duty to preserve the now lost or destroyed evidence. In *Turner, supra,* where a sanction of $6,723.65 was levied against defendants and their attorneys for the destruction of evidence and other discovery abuses, United States Magistrate Judge James C. Francis IV discussed the parameters of this duty to preserve:
"While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request."

*4 *Turner,* 142 F.R.D. at 72 [FN3] (quoting *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 593 F.Supp. 1443, 1455 (C.D.Cal.1984) (citations omitted)); *see also Computer Assocs. Int'l, Inc. v. American Fundware, Inc.,* 133 F.R.D. 166, 169 (D.Colo.1990).

Under this standard, it is clear that a discovery request places a litigant on notice that the documents or materials sought in the request are potentially relevant to the litigation and, thus, should be preserved. *See Turner,* 142 F.R.D. at 73. Even in the absence of a discovery request, "the complaint itself may alert a party that certain information is relevant and likely to be sought in discovery." *Turner,* 142 F.R.D. at 73 (citing *Computer Assocs. Int'l, Inc.,* 133 F.R.D. at 169; and *Telectron, Inc. v. Overhead Door Corp.,* 116 F.R.D. 107, 127 (S.D.Fla.1987)). Moreover, some courts have held that this duty to preserve evidence "even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." *Id.* at 73 (citing *Capellupo,* 126 F.R.D. 550-51 & n. 14; and *Alliance To End Repression v. Rochford,* 75 F.R.D. 438, 440 (N.D.Ill.1976)).

In the instant case, it appears that a substantial number of the missing tapes were lost or destroyed after the commencement of the action and after plaintiff received Discovery Request No. 10. For example, Skeete notes that in April of 1992, she allowed her sister to re-use one of the original tapes at issue to record some jazz. Skeete argues that the missing tapes, which involved conversations or messages from third parties, did not fall within the scope of Request No. 10. Thus, Skeete contends that Request No. 10 did not put her on fair notice that she had an obligation to produce such tapes.

The Court finds this argument unpersuasive. The issue of whether or not all of the tapes fell within Document Request No. 10 is not critical to the analysis because, independent of that request, Skeete had general notice that all the tapes were potentially relevant to the action. In other words, the complaint in the instant case, by itself, would alert a reasonable plaintiff as to the potential relevance of these tape recordings in the litigation. The complaint involves allegations of racial and sexual discrimination and harassment. A plaintiff bringing such an action should realize, upon commencement of the action, that tape recordings that she made during the course of her employment consisting of voice mail messages from the office, in-person conversations, and messages or conversations on her answering machine at home, could become relevant to the litigation and, therefore, should be preserved. The need to preserve such evidence should have been especially obvious to plaintiff in the instant case in light of the fact that her apparent motivation in gathering such information on tapes was to obtain proof of harassment and discrimination, as well as to defend herself against unfounded charges relating to her performance. *See* Skeete Affidavit, at ¶ ¶ 7, 10. Under these circumstances, a reasonable person would safeguard all tapes relating to her employment upon commencement of the litigation. Accordingly, the Court finds that, upon commencement of the action, Skeete had a duty to preserve these tape recordings relating to her employment. [FN4]

## III. AN ADVERSE INFERENCE CHARGE

*5 Having found that Skeete had a duty to preserve the tapes, the Court now must determine the appropriate sanction, if any, which should be

Not Reported in F.Supp.                                                                                         Page 4
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

imposed upon Skeete for the loss or destruction of such evidence. One sanction which the Court can impose is an adverse inference charge which instructs the jury that it may infer from the loss and destruction of the evidence that it would have been damaging to Skeete's case. The use of an adverse inference as a sanction for the spoliation of evidence serves both a remedial and punitive purpose. The remedial purpose of such an inference is to "restore the prejudiced party to the same position with respect to its ability to prove its case that it would have held if there had been no spoliation." Turner, 142 F.R.D. at 74. Moreover, the punitive component of such a sanction is based upon the rationale that " '[a]llowing the trier of fact to draw the inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." Turner, 142 F.R.D. at 74 (quoting Nation-Wide Check Corp. v. Forest Hill Distributors, Inc., 692 F.2d 214, 218 (1st Cir.1982)). With these basic purposes in mind, the Court must consider "the two objective factors that weigh most heavily in determining the appropriateness of an adverse inference: the intent of the party responsible for the destruction and the content of the evidence destroyed." Turner, 142 F.R.D. at 74.

The Court will first address the plaintiff's state of mind which is a key factor in determining whether an adverse inference, relating to the loss or destruction of documents, is appropriate. It is clear that an adverse inference is an appropriate sanction when the spoliation of evidence is intentional.[FN5] See, e.g., Turner, 142 F.R.D. at 74 ("Where the destruction is intentional-that is, where the destroyer intended to prevent use of the evidence in litigation-courts clearly have the power to invoke such an inference."); Capellupo, 126 F.R.D. at 551 ("Purposeful impairment of the opposing party's ability to discover information justifies invocation of [sanction] powers."); INA Aviation Corp. v. United States, 468 F.Supp. 695, 700 (E.D.N.Y.) (an adverse inference may be appropriate if party shows that the spoliator purposely destroyed the evidence), aff'd mem., 610 F.2d 806 (2d Cir.1979).

The Court has reviewed the entire record, including Skeete's detailed affidavit in which she provided a credible and satisfactory explanation for the loss or destruction of the materials, and finds that there is no evidence that Skeete intentionally lost or destroyed materials to prevent their use in the litigation. In her affidavit, Skeete states that the loss or destruction of the materials was unintentional:
McKinsey's and Porth's motion is based on allegations that I intentionally destroyed, or "misplaced", or selectively saved materials relevant to this case. As demonstrated below, this simply is not so. At worst, I unintentionally dubbed over, or inadvertently failed to save, or am unable to locate, certain tapes which were created, and lost, long before I had any idea that there might be a duty to save them....
*6 I acted properly with respect to all materials to the best of my limited technical abilities, and in accordance with my understanding of my obligations. I have complied with all of the discovery requests that have been made of me; and have spent hours reviewing tapes trying to locate materials on behalf of defendants.

Skeete Affidavit, at ¶ ¶ 3, 4. Skeete then describes the circumstances which led to her taping these events and also provides an explanation as to why she is now unable to produce certain tapes and notes. See Skeete Affidavit, at ¶ ¶ 6-19. Finally, Skeete again emphasized that it was a failure to understand the potential relevance of these items, rather than bad faith, which led to the loss or destruction of these items:I am not a professional recording engineer, and I attempted as best as I could to preserve what I thought would enable me to defend myself to McKinsey, the company I had worked for eleven years and expected to stand-up for me against Mr. Porth's unfounded contentions. What I have succeeded in saving, whether beneficial or harmful to me, I have produced. I have never intentionally destroyed any tapes or notes relating to this lawsuit.

Skeete Affidavit, at ¶ 21.

The Court finds Skeete's explanation as to why the tapes were lost or destroyed to be credible. Based upon the current record, Skeete's conduct appears to be the product of her ignorance about the need to preserve such materials. There is no evidence suggesting that Skeete was acting in bad faith. In assessing Skeete's state of mind, the Court has taken into consideration many factors including the explanation of the plaintiff, the sophistication of the plaintiff, her conduct during the course of the discovery, the nature of the lawsuit, and the type of evidence involved. Accordingly, under the circumstances of the instant case, the Court concludes that the loss or destruction of evidence was the result of Skeete's negligence, rather than as part of some intentional effort to destroy evidence.

There is a split of authority on whether a finding of bad faith is necessary for an adverse inference to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 5

appropriate. See *Turner*, 142 F.R.D. at 74-75 (discussing case authority on this issue). Courts have held that an adverse inference is appropriate only when the spoliation of evidence was intentional. See, e.g., *Britt v. Block*, 636 F.Supp. 596, 606-07 (D.Vt.) ("Destruction of records through misunderstanding or negligence is not sufficient to supply evidence or recast the burden of proof."), *aff'd mem.*, 805 F.2d 390 (2d Cir.1986); *INA Aviation Corp.*, 468 F.Supp. at 700 ("one cannot justify the drawing of [an adverse] inference where the destruction of evidence is unintentional or where the failure to produce evidence is satisfactorily explained"). Other courts have held that the negligent or reckless destruction of evidence may warrant the imposition of an adverse inference against the spoliator. See, e.g., *Pressey v. Patterson*, 898 F.2d 1018, 1024 (5th Cir.1990); *Nation-Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 219 (1st Cir.1982); *Turner*, 142 F.R.D. at 75-76. The rationale behind a sanction for negligent conduct is that "[t]he adverse inference provides the necessary mechanism for restoring the evidentiary balance." *Turner*, 142 F.R.D. at 75. As the Court noted in *Turner*, "[t]he inference is *adverse* to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Id.* (emphasis in original).

*7 The Second Circuit has never clearly addressed this issue. In *Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir.1991), the Second Circuit addressed a request for an adverse inference and held that "[o]n the facts of this case, 'one cannot justify the drawing of ... an [adverse] inference where the destruction of evidence is unintentional.' " 922 F.2d at 1024 (quoting *INA Aviation Corp.*, 468 F.Supp. at 700). By using the phrase "[o]n the facts of this case," the Second Circuit implied that, in other circumstances, the use of an adverse inference as a sanction may be warranted even where the destruction was merely negligent. [FN6]

Assuming *arguendo* that an adverse inference may be appropriate on a finding of mere negligence, the Court finds that an adverse inference is still unwarranted in the instant case because defendant has failed to demonstrate that the lost evidence bears some relationship to the inference sought. Courts have held that "[b]efore an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed inference and the information contained in the lost evidence." *Turner*,

142 F.R.D. at 76; *see also Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 923-24 & n. 7 (2d Cir.1981) (court will not allow an adverse inference charge where the failure to produce records bears no logical relationship to inference sought); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 133 (S.D.Fla.1987) (in sanctioning a party for destruction of evidence, the Court found that documents at issue were directly relevant to plaintiff's grievances). Thus, defendants must show that they suffered prejudice as a result of Skeete's failure to produce the requested evidence. The moving party usually sets forth some type of extrinsic evidence as to the content of missing materials which demonstrates the extent to which such materials would have been harmful to the spoliator. This corroboration is especially important where the destruction is merely negligent since there is no bad faith in such cases from which to infer the evidence would have been detrimental to the spoliator. *See Turner*, 142 F.R.D. at 77 ("where the destruction was negligent rather than willful, special caution must be exercised to ensure that the inference is commensurate with information that was reasonably likely to have been contained in the destroyed evidence").

In the instant case, the Court finds the defendants have not demonstrated prejudice from the denial of access to the destroyed or lost materials. Defendants fail to provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to Skeete or would have been relevant to the issues in this lawsuit. Instead, defendants engage in pure speculation as to the content of these materials. The defendants' inability to produce such evidence is especially problematic given that the lost tapes consist of messages and conversations of persons who are still available to McKinsey and whose testimony on these conversations could be elicited and provided to the Court. [FN7] It is entirely possible that the lost taped voice mail messages and conversations were entirely innocuous and irrelevant to any issues in this litigation. Under these circumstances, where defendants have not demonstrated a nexus between the content of the materials and the inference the defendants wish to have drawn, an adverse inference is unwarranted. *See Turner*, 142 F.R.D. at 77 ("[w]here, as here, there is no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate"); *see also Stanojev*, 643 F.2d 914, 923-24 & n. 7 (2d Cir.1981) (employer's failure to produce certain records creates no adverse inference of age discrimination where

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

such records appeared to have no relevance on that issue).

*8 Based upon the current record, the Court concludes that Skeete's mere negligence in losing the materials at issue, without any showing as to the relevance of such materials to the lawsuit or prejudice to the defendants, clearly does not support the exercise of the Court's inherent power to sanction Skeete by giving an adverse inference charge to the jury at the time of trial. The use of an adverse inference under the circumstances of the instant case is simply inappropriate and would not promote the remedial or punitive rationales underlying this type of sanction. The disposition of these disputed facts and credibility issues, including *any* inferences which should be drawn from Skeete's conduct, will be made by the jury at trial after hearing all of the evidence and arguments from counsel. Accordingly, the request for an adverse inference is denied. [FN8]

## IV. COSTS AND ATTORNEY'S FEES

Defendants also request an award of attorney's fees and costs, including the costs and fees incurred in investigating the destruction of the evidence and the preparation of this motion. While such sanctions are usually awarded for willful destruction of evidence, the Court recognizes that, even in instances involving negligence, courts have found these sanctions to be appropriate. See Turner, 142 F.R.D. at 77-78. Moreover, "[e]ven when rejecting an adverse inference, courts impose monetary sanctions for the destruction of evidence." Turner, 142 F.R.D. at 77. However, having considered the peculiar circumstances of the instant case, including *inter alia*, the nature of the lawsuit, the sophistication of the plaintiff, the absence of willful conduct, the nature of the evidence involved, and the relative financial strength of the parties, the Court, in its discretion, finds that sanctions in the form of attorney's fees and costs are unwarranted.

Plaintiff's request for an award of attorney's fees and costs in connection with opposing this motion also is denied.

## CONCLUSION

For the reasons stated above, defendants' motion for the preclusion of evidence, or in the alternative for the use of an adverse inference, is denied.

Defendants' request for costs and attorney's fees is denied. Plaintiff's request for an award of costs and attorney's fees in opposing the motion also is denied.

SO ORDERED.

FN1. At her deposition, plaintiff noted, as an example, that sometime during the week of April 20-24, 1992 she had allowed her sister to tape some jazz over an original tape because she had given a copy of the tape to her attorney. See Deposition of Patricia Skeete, dated May 1, 1992, at 135, annexed as Exhibit F to the Bernheim Affidavit.

FN2. Rule 37(b) is only applicable for violations of an *order* of the Court relating to the specific discovery sought. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363-64 (2d Cir.1991); Salahuddin v. Harris, 782 F.2d 1127, 1131-32 (2d Cir.1986); Israel Aircraft Indus., Ltd. v. Standard Precision, 559 F.2d 203, 208 (2d Cir.1977). Since there was no court order in effect in the instant case, the Court cannot impose sanctions pursuant to Rule 37(b). See Daval Steel Prods., 951 F.2d at 1364 ("there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)"); *but see* Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y.1991) (suggesting that courts have the power to sanction the destruction of evidence under Rule 37(b) even prior to the issuance of a discovery order).

FN3. In *Turner*, the defendants filed objections to the Magistrate Judge's order assessing sanctions on the grounds that the decision was clearly erroneous and contrary to law. This Court rejected that motion and upheld the order imposing the sanctions. See Turner v. Hudson Transit Lines, Inc., No. 89 Civ. 4252 (PKL), 1992 WL 51570 (S.D.N.Y. March 9, 1992).

FN4. With respect to the handwritten notes, Skeete explained that she discarded most of the notes shortly after she made them during the course of her employment and the remaining notes were left in a box at her desk after her discharge in November 1990 and, thus, should be in the possession of McKinsey. See Skeete Affidavit, at ¶ 19.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

The Court finds her sworn statement to be credible. Accordingly, no duty to preserve arose with respect to these handwritten notes.

FN5. There are some cases which indicate that, under certain circumstances, it is an abuse of discretion not to draw an inference when the party destroyed evidence in bad faith. *See, e.g., Alexander v. National Farmers Org.,* 687 F.2d 1173, 1205-06 & n. 40 (8th Cir.1982), *cert. denied,* 461 U.S. 937 (1983).

FN6. The Court notes that the use of adverse inferences in cases involving conduct which is merely negligent seems to undermine, to some extent, the Second Circuit's limitations on a court's inherent power to impose sanctions. In *United States v. International Brotherhood of Teamsters, supra,* the Second Circuit noted that "this Court, in recognizing the need for restraint, has always required a particularized showing of bad faith to justify the use of the court's inherent power." 948 F.2d at 1345 (citing *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986), *cert. denied,* 480 U.S. 918 (1987)).

FN7. With respect to a particular taped conversation that is missing regarding a voice mail message from Tom Woodward, a McKinsey employee, to another employee, Dolores Roebuck, Skeete concedes that the conversation involves Mr. Woodward accusing Skeete of sending "racially-harassing letters" to herself. *See* Skeete Affidavit, at ¶ 15. Since Ms. Skeete has described the conversation and conceded that it took place, the Court finds no prejudice to the defendants. Furthermore, the defendants may call as witnesses those involved in the conversation contained on this lost tape.

FN8. For all of the above stated reasons, the Court also finds that the more severe penalty of preclusion of evidence is inappropriate. Accordingly, the request for such relief is similarly denied.

S.D.N.Y. 1993
Skeete v. McKinsey & Co., Inc.
Not Reported in F.Supp., 1993 WL 256659 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:91cv08093 (Docket) (Dec. 02, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.