IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CORPORAL B. KURT PRICE, et al.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A.No.04-956-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No.04-1207-GMS |
| | : | |
| **COLONEL L. AARON CHAFFINCH, et al.,** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS
AND OTHER RELIEF DUE TO DEFENDANTS' INTENTIONAL DESTRUCTION
OF RELEVANT EVIDENCE**

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

**MARTIN D. HAVERLY, ATTORNEY
AT LAW**
**MARTIN D. HAVERLY, ESQ. (#3295)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 654-2255
Martin@HaverlyLaw.com

Attorneys for Plaintiffs

Dated: February 15, 2006

**TABLE OF CONTENTS**

ARGUMENT..................................................................................................................1

I.  DEFENDANTS INTENTIONALLY DESTROYED EVIDENCE RELEVANT TO THIS LITIGATION AND A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THEM AS A SANCTION TO PUNISH AND DETER THEIR ILLEGAL CONDUCT...............1

    A.  Defendants Claim That No Evidence Was Destroyed.........................................1

    B.  Yet the Defense Expert States that the Specific Data Plaintiff Seeks Was Destroyed.........1

        1.  The Defense Expert Admitted and Confirmed that Chaffinch's Arch System Messages Were Destroyed and Are Lost Forever................................1

            a.  The Arch System is Used for "Informal Communications"......................2

            b.  Plaintiffs Have Met Their Burden.............................................3

            c.  Summary......................................................................4

        2.  The Defense Expert Also Admitted and Confirmed That Not All Electronic Documents Are Stored on the Server..................................4

    C.  Defendants Do Not Contest the Duty to Preserve.............................................5

    D.  Procedural Issues..................................................................................6

        1.  Local Rule 7.1.1 Has Been Fulfilled.................................................6

        2.  This is a Sanctions Motion..........................................................7

CONCLUSION..............................................................................................................7

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

Darchia v. Ashcroft, 101 Fed.Appx. 373 (3d Cir. 2004)..................................................................5

In re Wechsler, 121 F.Supp.2d 404 (D.Del. 2000)..........................................................................3

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir. 1994)..............................................3

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc)..............4

Zubulake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004)..............................................4

**Rules**

D.Del.L.R. 7.1.1..............................................................................................................................7

## ARGUMENT

I.  **DEFENDANTS INTENTIONALLY DESTROYED EVIDENCE RELEVANT TO THIS LITIGATION AND A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THEM AS A SANCTION TO PUNISH AND DETER THEIR ILLEGAL CONDUCT.**

**A. Defendants Claim That No Evidence Was Destroyed.** The defense answering brief ("AB") repeatedly states that no evidence was destroyed and that any evidence which was destroyed was backed up - so in effect, nothing has been lost. For example -

> Chaffinch's hard drive contained no independent relevant evidence and the erasing of Chaffinch's hard drive "destroyed" no evidence[.]

(AB at 6).

> [T]here was no evidence (relevant or not) available on Chaffinch's hard drive.

(AB at 5 n.2).

> Plaintiffs' assertion, however, rests on a flawed assumption - that Chaffinch's computer contained documents or data that are not available elsewhere.

(AB at 5). Defendants have clearly and unequivocally staked out their position.

**B. Yet the Defense Expert States that the Specific Data Plaintiff Seeks Was Destroyed.** Contradictorily however, the second defense affidavit from Lt. Moses of the DSP's own High Tech Crimes Unit explicitly admits that the very evidence plaintiffs seek was destroyed, was not backed up and instead was lost forever. Thus, it is clear that defendants' repeated denials are false and should not be believed and guilt can be inferred from their false denials.

**1. The Defense Expert Admitted and Confirmed that Chaffinch's Arch System Messages Were Destroyed and Are Lost Forever.** In plaintiffs' opening brief, they expressly identified the documents that they were seeking and believed had been destroyed - the Arch system messages contained on Chaffinch's computer. (See OB at 3, 5, 11, 14, 17, 18).

In Lt. Moses Affidavit (see Price, et al. v. Chaffinch, et al. at D.I. 93 at page B1), he explains the DSP's text messaging and paging service with Arch Paging. (Id. at ¶ 9; B3). He

1

indicates how the system enables DSP users to send 200 character pages to Troopers possessing Arch pagers. (Id.). He continues and explains that -

> These messages are not stored by Arch. This information is not logged by DSP because it is only used for informal communications.

(Id.). But it is these messages from the Arch text paging system that plaintiffs sought to discover and despite repeated defense protestations to the contrary, Lt. Moses has admitted that this information was not backed up and instead it was destroyed.

Arch Paging does not store the messages. The DSP does not store the messages. Instead the messages can only be found on Chaffinch's hard drive, the same hard drive that Lt. Moses admitted was destroyed and wiped clean of all data, despite the pendency of this litigation. (Id. at ¶ 7; B2). The Arch system messages have been lost forever because defendants destroyed Chaffinch's hard drive.

       **a. The Arch System is Used for "Informal Communications."** Lt. Moses swore that the Arch messages are not backed up or logged by the DSP because they only are used for "informal communications." (Id. at ¶ 9; B3). But this is exactly why plaintiff sought access to the system - because it is used for informal communications to his DSP friends and close associates and contains information from Chaffinch which would not otherwise have a paper trail.

Tellingly, defendants refused to mention, reference or otherwise even discuss the Arch message system in their brief. However, Lt. Moses' affidavit is actually more revealing. The system can transmit messages of up to 200 characters. (Id. at ¶9; B3). As an illustrative example, on the issue of Chaffinch's planning of and reaction in the aftermath of his April 6, 2004 FTU media tour where he publicly attacked plaintiffs and blamed them for the destruction of the FTU, the following types of messages to Chaffinch's close associates easily fit within this number of characters.

   •  Mac - I'll be back later. I'm going to get those SOB's at the FTU. (66

characters).[1]

- RL - Talk later. I'm going to stick it to CF and FTU Troops. They f-ck with me I f-ck back. (92 characters).[2]

- Mac - I got them back. You should see what I did to them. They'll keep their mouths shut from now on. (101 characters).[3]

This is a great deal more than just a few digits. Destruction of the Arch messages are the equivalent of destroying e-mail messages. A lot of thoughts and information above and beyond mere telephone numbers can be conveyed in 200 characters. The foregoing are just examples of one limited area.

**b. Plaintiffs Have Met Their Burden.** Contrary to defense protestations, as explained in their opening brief, plaintiffs have easily met their burden of proof in our Circuit. Under the general Third Circuit and District of Delaware test, plaintiffs have come forth with "plausible, concrete suggestions as to what the lost evidence might have been." In re Wechsler, 121 F.Supp.2d 404, 423 (D.Del. 2000); Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 80 (3d Cir. 1994) (see OB at 17-18 for greater detail on the law). As discussed above, plaintiffs have specifically identified what the lost evidence would have been as well as the specific system that was destroyed. According, its relevance has been established.

Moreover, even under the specialized Zubulake electronic discovery test (see OB at 10-14), plaintiffs have established that the hard drive was destroyed "intentionally or willfully ... [and]

---

[1] "Mac" is a nickname for defendant MacLeish. The record demonstrates that Chaffinch routinely and publicly bragged about Sgt. Foraker that "I'm going to get that son of a bitch." (Dixon 17-18,77; A527-28, 542). These "A" appendix references are to plaintiffs' appendix in support of their motion for summary judgment.

[2] "RL" is a nickname for Chaffinch's friend Major R.L. Hughes. "CF" is plaintiff Sgt. Chris Foraker. The record demonstrates that Chaffinch loudly brags that "if people f-ck with Chaffinch, I'm going to f-ck back" about Troopers who speak out and oppose him. (Dixon 10, 53-54; A526,536-37). Before the media tour, Chaffinch also bragged that he was going to "stick it to" Sgt. Foraker. (Conley Decl. ¶ 7; A1564-65).

[3] Upon returning from his media tour. Chaffinch bragged to Major Baylor that "I got them back," referring to plaintiffs. (Baylor 387, 390; A398-99).

3

that fact alone is sufficient to demonstrate relevance." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004). Defendants admittedly destroyed the hard drive pursuant to their document destruction policies - policies which they had a duty to suspend.[4] As Lt. Moses admitted in his affidavit, the intentional application of their document destruction policies to Chaffinch's computer hard drive resulted in the loss of the Arch system messages which were not backed up, recorded or logged anywhere else. (Moses Aff. at ¶¶ 7,9; B2-3). Accordingly, the relevance of the data has been established due to its intentional destruction under Zubulake.

        **c. Summary.** In sum, despite the repeated defense denials in their brief that any data was destroyed, Lt. Moses explained in record evidence that the defense position is plainly false. And as the Third Circuit en banc has explained,

> a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit.

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1069 (3d Cir. 1996) (en banc). Thus, it is clear on our record that defendants' self-serving denials of destruction of evidence are false and should not be believed. From their false denials, consciousness of guilt can be inferred.

        **2. The Defense Expert Also Admitted and Confirmed That Not All Electronic Documents Are Stored on the Server.** Lt. Moses' affidavit also explains another fact that defendants have chosen to quickly gloss over. He explains that electronic documents created on a DSP computer are stored on the central server, "unless the user specifically designates another file path." (Moses Aff. at ¶ 4; B2). Thus, if a computer user changes the file path from the default, they can store documents on their own computer, documents that are not backed up and captured when the server is backed up.

---

[4] In light of their duty to investigate and become aware of and suspend the document destruction policies, the defense claim that "there is no evidence that either individual Defendant even knew that Chaffinch's computer was to be" erased, rings hollow. (AB at 8).

4

In their opening brief, plaintiffs explained that their discovery requests also sought numerous other electronic documents such as draft and final memos, letters and other documents that Chaffinch stored on his computer that would not be caught as part of the server backup. (OB at 3-5). Defendants again have failed to rebut plaintiff's showing in this regard. Instead, they weakly claim that nothing was destroyed. But as discussed, that assertion is simply false as demonstrated by the affidavit of their own computer expert.

The closest defendants come to trying to factually rebut plaintiff's well-founded assertion is the claim that "there is no evidence that Defendant Chaffinch knew how to designate a file for saving or even used his office computer on a regular basis." (AB at 3 n.1). Notably, defendants have cited to no record evidence whatsoever in this regard to support their weak claim that the leader of the largest and most high tech police force in the state did not use his computer. Instead, all they offer is speculation and conjecture. Thus, they have failed to create a proper record. They offer no affidavits. No declarations. No evidence of any kind. This is plainly improper and their unfounded assertion must be ignored. See Darchia v. Ashcroft, 101 Fed.Appx. 373, 376 (3d Cir. 2004) (legal "determinations must be based on evidence in the record, rather than speculation or conjecture.").

So, for the same reasons discussed above relating to destruction of the Arch system messages, plaintiffs also have met their burden regarding the destruction of memos, letters and other documents that would have otherwise also been on Chaffinch's computer hard drive. Defendants' guilt can be inferred.

**C. Defendants Do Not Contest the Duty to Preserve.** No where in the defense brief have defendants challenged or seriously contested that they (1) had a duty to preserve evidence that might be relevant to this litigation and they (2) had a duty to suspend their document destruction policies in light of pending litigation. They have not challenged any of the Third Circuit or District of Delaware cases or legal standards, nor have they challenged any of the Zubulake preservation

5

standards which are exhaustively discussed in plaintiffs' opening brief.

Instead, the cornerstone of the defense position is that there is no duty to preserve Chaffinch's hard drive because all the contents of the drive were backed up. (See, e.g. AB at 5). But as demonstrated above, the Arch system messages plaintiffs specifically identified and sought by name were in fact destroyed and not backed up. Similarly, message drafts that were saved to the system and not to the server were not backed up. Thus, the well-recognized duty to preserve discussed at length in plaintiffs' opening brief does in fact apply because defendants have destroyed unique and relevant evidence that was not backed up.

As to the defense claim that plaintiff should have questioned Chaffinch about these issues during his deposition in August 2005, the answer to this question is simple - plaintiff did now know about these specific computer issues until after this deposition. For example, it was not until later that plaintiffs learned of: the Arch system; the Blackberry system; and the frequency with which defendants use these systems for their informal communications among themselves. Upon beginning to learn of and trying to discover as much information as possible about these systems through other methods, plaintiffs filed several of the document requests at issue.

**D. Procedural Issues.**

**1. Local Rule 7.1.1 Has Been Fulfilled.** Plaintiffs acknowledge regret that their e-mail to defense counsel conferring about the present matter came only the day before their motion was filed. Due to the voluminous summary judgment, consolidation and sanctions briefing that was being filed the next day in both the Foraker and Price actions,[5] counsel did not remember to contact defense counsel about this matter until the day before the filings were due. As soon as he remembered, he immediately contacted defense counsel about the matter to gage their position. The delay is regrettable. But plaintiffs could not hold off on filing this sanctions motion because it

---

[5] As well as simultaneous briefing that was occurring in the Conley v. Chaffinch action that also is presently before this Court.

is a dispositive merits motion seeking the entry of a default judgment which would end the liability portion of this case and the Scheduling Order requires that such motions be filed that very next day or the right to do so would have been waived.[6]

However, as defendants have made clear in their Answering Brief, conferring further about this matter would have been pointless as defendants continue to deny that any unique or relevant evidence was destroyed - ignoring the sworn affidavit of their own computer expert who swears that the Arch messaging system messages on Chaffinch's computer were in fact destroyed. As the briefing makes clear, this is not a matter that could be resolved.

**2. This is a Sanctions Motion.** Again, contrary to the defense claims, this is not a discovery motion, instead, it is a sanctions motion which affects and is integrally connected to the merits of the case, the issues briefed and under submission in plaintiffs' motions for summary judgment and the upcoming trials in these cases. It is simply not a discovery matter where a party petitions the Court to compel the production of a document that is being withheld. Instead, it is a merits motion seeking to have a default judgment entered against defendants, ending the liability portion of this case.

## CONCLUSION

For the above stated reasons, as well as those set forth in greater detail in plaintiffs' opening brief, plaintiffs respectfully request that the Court sanction defendants for their actions in intentionally destroying key evidence relevant to this lawsuit and enter a default judgment against them as follows: in the Price case - C.A.No. 04-956-GMS on Counts I and II (First Amendment retaliation); and in the Foraker case - C.A.No. 04-1207-GMS and Counts I and II (First Amendment retaliation), Count III (defamation) and Count IV (false light invasion of privacy). Alternatively, plaintiffs respectfully request that the burden of proof be shifted to defendants on

---

[6] Notably, because this is a dispositive merits motion seeking entry of default judgment, it is technically not even subject to the strictures of D.Del.L.R. 7.1.1.

each and every element of the respective legal paradigms, and that the jury also receive an adverse inference instruction.

Lastly, attorneys fees and costs also should be awarded, in addition to a fine intended to remind defendants of the severity of their wrongdoing.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: February 15, 2006            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on February 15, 2006, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Robert Fitzgerald, Esquire
Montgomery McCracken Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Richard M. Donaldson, Esquire
Montgomery McCracken Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**

FTU/ Briefs / FTU - Spoilation Sanctions RB.final