# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTOPHER FORAKER, | : |
| | : |
| Plaintiff, | : |
| | :   C.A. No. 04-1207-GMS |
| v. | : |
| | : |
| L. AARON CHAFFINCH, et al., | : |
| | : |
| Defendants. | : |

# REPLY BRIEF
# IN SUPPORT OF DEFENDANTS'
# <u>MOTION FOR SUMMARY JUDGMENT</u>

Date: February 17, 2006

Noel C. Burnham (DE Bar # 3483)
Richard M. Donaldson (DE Bar I.D. #4367)
Montgomery, McCracken, Walker & Rhoads, LLP
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

*Counsel for Defendants L. Aaron Chaffinch, Thomas F. MacLeish, David B. Mitchell, and the Division of State Police, Department of Safety and Homeland Security, State of Delaware*

## TABLE OF CONTENTS

**Page**

I. PLAINTIFF HAS FAILED TO ESTABLISH THAT DEFENDANT ENGAGED IN A COURSE OF RETALIATORY CONDUCT AGAINST HIM ................................ 1

II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ................................ 4

III. PLAINTIFF'S CLAIMS FOR DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY FAIL AS A MATTER OF LAW .......................................... 6

    A. Plaintiff's claim that he is not a public figure fails as a matter of law .................. 6

    B. Foraker Cannot Establish That The Defendants Acted With Actual Malice ......... 8

    C. The Inferences That Plaintiff Draws Do Not Meet Plaintiff's Burden To Prove That The Statements Are False .................................................................... 10

    D. Defendant's Statements Are Constitutionally Protected Expressions of Opinion ........................................................................................................ 14

    E. Defendants Should Be Awarded Summary Judgment On Plaintiff's False Light Invasion of Privacy Claim ............................................................................ 16

V. CONCLUSION……………………………………………………………………….16

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................................. 8

Baldassare v. New Jersey, 250 F.3d 188 (3d Cir. 2001) ................................................................ 4

Bates v. MacKay, 321 F. Supp. 2d 173 (D. Mass. 2004) ............................................................... 2

Bose Corp. v. Consumers Union, 466 U.S. 485 (1984) ................................................................. 9

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003) ................................................................. 2, 5, 6

Chicago Reader v. Sheahan, 141 F. Supp. 2d 1142 (N.D. Ill. 2001) ............................................. 1

Coughlin v. Westinghouse Broadcasting and Cable, Inc.,
   603 F. Supp. 377 (E.D. Pa. 1985), aff'd, 780 F.2d 340 (3d Cir. 1985) .................................... 6-7

Garrison v. Louisiana, 379 U.S. 64 (1964) .................................................................................... 9

Gill v. Delaware Park, 294 F. Supp. 2d 638 ............................................................................ 8, 14

Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657 (1989) ................................. 8

Herbert v. Lando, 441 U.S. 153 (1979) ......................................................................................... 9

Hinshaw v. Smith, --- F.3d ---, 2006 WL 212372 (8th Cir. Jan. 30, 2006) .................................... 1

McKee v. Hart, --- F.3d ---, 2006 WL 27474 (3d Cir. 2006) ..................................................... 4-5

New York Times v. Sullivan, 376 U.S. 254 (1964) ........................................................................ 8

Newman v. Hansen & Hempel Co., No. 01-9871, 2002 WL 31455990 (N.D. Ill. 2002) ............ 15

Pickering v. Bd. of Ed., 391 U.S. 563 (1968) ................................................................................ 2

Quiroz v. Hartgrove, No. 97-6515, 1999 WL 281343 (N.D. Ill. Mar. 24, 1999) ........................ 15

St. Amant v. Thompson, 390 U.S. 727 (1968) ............................................................................ 8-9

Suarez Corp. Indus. v. McGraw, 202 F.3d 676 (4th Cir. 2000) .................................................... 1

Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000) ..................................................................... 4-5

U.S. v. Lanier, 520 U.S. 259 (1997) ............................................................................................ 4

U.S. v. Nat'l Treasury Employees Union, 513 U.S. 454 (1995) ..................................................... 2

X-Men Securities, Inc. v. Pataki, 196 F.3d 56 (2d Cir. 1999) ....................................................... 1

**STATE CASES**

Doe v. Cahill, 884 A.2d 451 (Del. 2005) ..................................................................................... 12

Godbehere v. Phoenix Newspapers, 783 P.2d 781 (Ariz. 1989) ............................................. 7, 16

Jackson v. Filiben, 281 A.2d 604 (Del. 1971) ............................................................................... 6

Martin v. Widener Univ. Sch. of Law, No. 91C-03-255,
    1992 WL 153540 (Del. Super. June 4, 1992) ........................................................................ 10

Ramunno v. Cawley, 705 A.2d 1029 (Del. 1998) ........................................................................ 11

Riley v. Moyed, 529 A.2d 248 (Del. 1987) ............................................................................ 10, 14

Slawick v. News-Journal Co., 428 A.2d 15 (Del. 1981) .............................................................. 10

Stevens v. Independent Newspapers, Inc., No. 85C-OC11, 1988 WL 25377
    (Del. Super. Ct. Mar. 10,1988)………………………………………………………………..15

I.  **PLAINTIFF HAS NOT ESTABLISHED THAT DEFENDANTS ENGAGED IN A COURSE OF RETALIATORY CONDUCT AGAINST HIM.**

In order to make the facts of this case fit the "Big Picture" he is trying to foist upon the Court, Foraker has multiple bullet points to try to make a handful of ambiguous events into a "long and continuing course of retaliatory harassment." (Pl.'s Ans. Br. 6.) In fact, as demonstrated in Defendants' Opening Brief, the handful of ambiguous events are not sufficient to raise a constitutional question.

1.  The reality is that what Plaintiff characterizes as "launching a local, regional, national and international media campaign," was Col. Chaffinch talking to a single newspaper reporter at a media event arranged by persons Foraker has chosen not to sue. Chaffinch's comments about Foraker at the media event are indisputably true and fall within Chaffinch's own First Amendment rights, as described in Suarez Corp. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000), and X-Men Securities v. Pataki, 196 F.3d 56, 67-72 (2d Cir. 1999). Accordingly, they are not actionable under the First Amendment. Foraker seeks to avoid the Suarez and X-Men principle by arguing that those precedents are not employment cases. That distinction is meaningless because the justification for the principle is that the governmental official being sued has a right -- and frequently a duty -- to speak on matters of public concern. His status as a supervisor does not affect that right and duty. As long as he does not speak coercively, the public official cannot be liable. The recent case cited by Foraker, Hinshaw v. Smith, --F.3d--, 2006 WL 212372 (8th Cir. Jan. 30, 2006), supports this view. Foraker's argument seems to be that anytime a public employer/manager speaks, he speaks coercively simply because he is the boss. There is no support in the case law for this principle. Employment vs. non-employment in this context is "a distinction without a difference." The Chicago Reader v. Sheahan, 141 F. Supp. 2d 1142, 1144 (N.D. Ill. 2001). Accordingly, the centerpiece of Foraker's "long and

continuous course" of retaliation is not actionable. It falls within the category of acts that the Third Circuit has found not actionable as mere verbal criticism of a public employee. Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003).

    2.    Foraker now claims that Chaffinch "gagged" him. (Pl.'s Ans. Br. 6.) It is axiomatic that a public official can restrict his subordinates' access to the press in order to prevent disruption of the public business. This rule is perhaps best understood in the police context. See e.g., Bates v. MacKay, 321 F. Supp. 2d 173, 182 (D. Mass. 2004) ("The police department had the right to designate one officer to act as the official media representative. Police officers have no protected right to speak in an official capacity on behalf of the police department.") Both Chaffinch and MacLeish have said that they refused to allow Foraker or other troopers to speak about problems at the range because they wanted to prevent disruption of the working relationship between the DSP and the Department of Administrative Services, the agency responsible for refurbishing the range so that the State Police could use it again. This is an entirely permissible rationale long-recognized by the United States Supreme Court. United States v. Nat'l Treasury Employees Union, 513 U.S. 454, 468 (1995); Pickering v. Bd. of Ed., 391 U.S. 563, 568 (1968). DSP leadership barring Foraker from commenting to the press about the firing range is not actionable under the First Amendment.

    3.    There is no evidence that Defendants violated the terms of the previous settlement agreement or changed Foraker's duties or his staff in any material way. During his first term as Non-Commissioned Officer In Charge ("NCOIC") of the Firearms Training Unit ("FTU"), Foraker had three subordinates; on December 1, 2003, he had three subordinates -- the same three subordinates his predecessor Rich Ashley enjoyed on November 30, 2003. After his fellow-litigant Greg Warren left the DSP in mid-2004, a different captain became the Director of

Training, and the new captain did things differently, which had an effect on everybody within the DSP Training Section. It is absurd for Foraker to claim that every supervisory change was some form of retaliation. The contention that Chaffinch and MacLeish were responsible for the new captains' management style is still more remote. It is patently dishonest for Foraker to claim that the DSP removed his position and title as a "Section Chief" (Pl.'s Ans. Br. 7) or that it changed the DSP chain of command. These contentions may lengthen the plaintiff's brief but they have no support in the factual record.

4.      The DSP leadership sent Foraker for medical examinations because he was part of a unit that made repeated claims of medical impairment and filed workers compensation claims against the State of Delaware. It cannot possibly be actionable for DSP management to test Foraker under these circumstances.

5.      Finally, Foraker further puffs up his Answering Brief with the unsupported contention that Defendants were "bad mouthing" Foraker within the DSP and to the firearms industry. (Pls. Ans. Br. 7.) It is notable that Foraker offers no record citation for the fiction that Chaffinch or MacLeish "bad mouthed" him within the DSP. The Court should ignore this contention because it is simply not true. Foraker argues in a footnote that a deputy attorney general for the State of Delaware who had represented Defendant Chaffinch in the original Foraker lawsuit called Foraker a "bad penny" in front of someone from a gun company. (Pls. Ans. Br. 8 n.9.) This allegedly occurred some years after the first Foraker trial. Even if true, this is not action by either defendant or attributable to either defendant under the principles of vicarious liability. Again, the Court should ignore it.

Once the Court applies the law of non-coercive public statements to Chaffinch's comments at the firing range on April 6, 2004, and ignores the many factual assertions for which

there is no support in the massive record Foraker's attorneys have submitted, the Court is left with Foraker's contention that after Greg Warren left the DSP, the new head of training had different expectations of him. Foraker has presented no evidence that the Defendants directed the new managers in those expectations, or that they disrupted him in the performance of his duties. Accordingly, these events are not actionable under the First Amendment, and the Court should grant summary judgment to Defendants on Foraker's claims.

## II.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

To the extent the actions taken by Col. Chaffinch and Col. MacLeish are found to be a "campaign of retaliatory harassment" against Plaintiff, Defendants are entitled to the defense of qualified immunity because, under the case law as it had developed in 2004, it would not have been possible for these defendants to have predicted that the events at issue here would amount to a constitutional tort.

Plaintiff contends that qualified immunity is not available in this case because "it was unlawful to engage in a long continuing course of retaliatory harassment against Sgt. Foraker because he filed his lawsuit." (Pl.'s Ans. Br. 18.) He unremarkably states that he has a right to engage in protected speech and to petition the government without facing retaliation. (Id.) This is utterly beside the point. Defendants know perfectly well that the law prohibits retaliation against troopers who engage in protected First Amendment activity. (Appendix to Plaintiffs' Opening Briefs ("Pls.' App.") (Vol. I) at A152 (MacLeish Dep. 236-37); A427 (Chaffinch Dep. 9-10).) The issue here, of course, is not whether the "general constitutional rule" against retaliation had been announced, but whether that rule applied with "obvious clarity to the specific conduct in question." U.S. v. Lanier, 520 U.S. 259, 271 (1997).

In McKee v. Hart, the Third Circuit recognized that in cases like Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000), and Baldassare v. New Jersey, 250 F.3d 188, 194-95 (3d Cir.

-4-

2001), it had clearly established a general rule outlawing retaliatory harassment. McKee v. Hart, --- F.3d ---, 2006 WL 27474, at *5-*7. It held, however, that Suppan "gave little guidance as to what the threshold of actionability is in retaliatory harassment cases" and that Baldassare was nothing more a "straightforward retaliation claim" which did not address the more contextually specific question of what type or amount of activity would create a cognizable claim. Id. at *6.

As was the case in McKee, nothing in the case law of the Third Circuit in 2004 "clearly established" that Defendants' alleged conduct – making truthful, protected comments to the media, removing Foraker from a meeting he was not expected to attend, directing unwanted looks and growls at Foraker, minor modifications of job responsibilities, and application of written policies – would subject Defendants to a trial for retaliation. That is, at the time of Col. Chaffinch's and Col. MacLeish's conduct, there was a "dearth of precedent of sufficient specificity (and factual similarity to this case) regarding a public employee's First Amendment right to be free from retaliatory harassment." Id. at *7.

Plaintiff argues, relying on Hope v. Pelzer, 536 U.S. 730 (2002), that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." (Pl.'s Ans. Br. 19.) While this may be true, it is still necessary to establish that the conduct is of the type that the Defendants would reasonably expect to violate Plaintiff's First Amendment rights. The type of conduct engaged in by Defendants is of the *de minimus* variety which McKee held not to be sufficient, and thus could not reasonably be expected to violate Plaintiff's rights.[1] McKee, 2006 WL 27474 at *4.

---

[1] Foraker claims that Chaffinch should be especially aware of the fact that he cannot retaliate against Foraker because of the outcome of Foraker's prior lawsuit against him. Chaffinch does not dispute the fact that he cannot retaliate against Foraker, rather he disputes the fact that the course of conduct which Foraker claims he engaged in is retaliatory.

-5-

Plaintiff argues that, unlike the defendants in McKee, Chaffinch and MacLeish could have learned from the opinion in Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003). (Pl.'s Ans. Br. 23-24 n.25 (citing McKee, --- F.3d ---, 2006 WL 27474, at *6).)  In Brennan, however, the court explained that "criticism, false accusations, or verbal reprimands" were not retaliatory acts. McKee, --- F.3d ---, 2006 WL 27474, at *7 (citing Brennan, 350 F.3d at 419).  Brennan, does not clearly establish that Plaintiff's claims, even when considered in their totality, would amount to a constitutional violation.  Accordingly, Defendants are entitled to qualified immunity and summary judgment on both counts of the Amended Complaint.

### III.  PLAINTIFF'S CLAIMS FOR DEFAMATION AND FALSE LIGHT INVASION OF PRIVACY FAIL AS A MATTER OF LAW.

In response to Defendants' Opening Brief, plaintiff acknowledges that allegedly defamatory statements made by the Defendants are truthful statements.  Plaintiff's argument that his defamation claims should not be dismissed on the law misstates both the facts and the law. Plaintiff, a public official, has failed to meet his high burden at the summary judgment stage to prove constitutional actual malice.  The allegedly defamatory inferences drawn by Plaintiff are not reasonable and do not meet his burden of proving that Defendants' statements are false. Moreover, Defendants' statements are protected expressions of opinion, and to the extent that they are not, they are substantially true.  Accordingly, summary judgment should be granted in favor of Defendants on Plaintiff's claim for defamation.

#### A.  Plaintiff Is A Public Official.

Plaintiff's contention that he is neither a public official nor a limited purpose public figure for the purposes of his defamation and false light invasion of privacy claims is wrong as a matter of law.

First, it is settled law that police officers are public officials.  See Jackson v. Filiben, 281 A.2d 604, 605 (Del. 1971) ("Police officers must be considered as public officials within the Times rule."); Coughlin v. Westinghouse Broadcasting and Cable, Inc., 603 F. Supp. 377, 385-385 (E.D. Pa.), aff'd, 780 F.2d 340 (3d Cir. 1985) ("The strong public interest in ensuring open discussion and criticism of [a police officer's] qualifications and job performance warrant the conclusion that he is a public official." (quoting Gray v. Udevitz, 656 F.2d 588 (10th Cir. 1981))).  Foraker, who held an important position as the NCOIC of the Firearms Training Unit, qualifies as a public official.  Foraker has not cited a single case in which a police officer was found not to be a public official.

Plaintiff attempts to draw a distinction between the settled case law and his situation, claiming that "the neglect of duty which defendants accuse Sgt. Foraker of engaging in involves maintenance which Hazmat experts, not police officers typically handle at FTU facilities."  (Pl.'s Ans. Br. 36.)  Plaintiff claims that the conduct at issue does "not revolve around official traditional acts or duties as a police officer" and therefore, "plaintiff is not a public official in this instance."  (Pl.'s Ans. Br. 38.)

In support of this argument, Foraker apparently relies upon the following quotation from Godbehere v. Phoenix Newspapers:  "there can be no false light invasion of privacy for matters involving official acts or duties of public officers."  Godbehere v. Phoenix Newspapers, 783 P.2d 781, 789 (Ariz. 1989).  The Godbehere case does not support the distinction Plaintiff suggests between traditional and non-traditional duties; if anything, it establishes that police officers are public officials who have no expectation of privacy in connection with their duties.  Indeed, Godbehere clearly states that "a plaintiff cannot sue for false light invasion of privacy if he or she is a public official *and* the publication relates to performance of his or her public life or

duties." Id. It is obvious that the allegedly defamatory statements made by the Defendants concern Foraker's capacity as a police officer, not as a private citizen. Plaintiff's attempt to so narrowly define the subject matter of the comments at issue is misleading and nonsensical. Clearly, the statements he finds objectionable involved his official duties at the FTU. Accordingly, Foraker is a public official and the statements at issue relate to his performance of his public life and duties.[2]

### B.    Foraker Cannot Establish That The Defendants Acted With Actual Malice.

As a public official, Plaintiff must prove with clear and convincing evidence at the summary judgment stage that Defendants acted with actual malice. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Plaintiff cannot meet this burden.

"Actual malice" is a term of art in constitutional law that has nothing to do with the common law meaning of malice as bad motive or ill will. Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 666 (1989) ("the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term"). To prove actual malice, a plaintiff must establish that the defendant published a factually false statement of fact with actual knowledge that it was false or with "reckless disregard" of whether it was false. New York Times v. Sullivan, 376 U.S. 254, 270-71 (1964); Gill v. Delaware Park, 294 F. Supp. 2d 638, 646 (D. Del. 2003).

"Reckless disregard" is also a term of art unrelated to common law negligence or even gross negligence. See New York Times, 376 U.S. at 288 (finding of negligence "is constitutionally insufficient to show the recklessness that is required for a finding of actual malice"). Even "highly unreasonable conduct constituting an extreme departure from the

---

[2] As demonstrated in Defendants' Opening Brief, Plaintiff is also a limited purpose public figure. Regardless of whether he voluntarily entered the public controversy surrounding the range, there can be no dispute that as the

-8-

standards of investigation and reporting" will not meet this standard of proof. <u>Harte-Hanks Communications</u>, 491 U.S. at 663-64; <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731-32 (1968). Rather, proof of reckless disregard requires a showing that the defendant "<u>in fact</u> entertained serious doubts" as to the truth of the publication, <u>St. Amant</u>, 390 U.S. at 731 (emphasis added), or that the challenged statements were published with a "high degree of awareness of their probable falsity." <u>Garrison v. Louisiana</u>, 379 U.S. 64, 74 (1964).

Since only a showing of a "calculated falsehood" meets the burden of proving actual malice, <u>Garrison</u>, 379 U.S. at 75, proof of actual malice depends on the defendant's state of mind. <u>Herbert v. Lando</u>, 441 U.S. 153 (1979); <u>Bose Corp. v. Consumers Union</u>, 466 U.S. 485, 494 (1984) (determination "rests <u>entirely</u> on an evaluation of [the author's] state of mind when he wrote his initial report"). Accordingly, the Court's inquiry is concerned <u>only</u> with the author's beliefs about the truthfulness of the publication.

Plaintiff has not come close to meeting this very high burden. He has not shown that any of the statements made by Defendants were objectively false, let alone that Defendants believed them to be false when they were made. He has presented absolutely no evidence that Defendants did not in fact believe Foraker did not perform all the duties of his job and "did something wrong." In fact, Defendants' testimony shows they believed that Foraker did not fully and correctly perform his job duties. (Pls.' App. (Vol. I) at A132 (MacLeish Dep. 154); A454 (Chaffinch Dep. 115).) The only purported evidence of actual malice is that Chaffinch and MacLeish were aware of problems with the FTU before Foraker returned in December 2003. Plaintiff also cites to Chaffinch's "boasting" about "getting" Foraker before and after the press conference. (Pl.'s Ans. Br. 37.) These items fall far short of actual malice as a matter of law.

---

sergeant in charge of the range, he was part of this ongoing, very controversial public debate. (Defs.' Op. Br. 26.)

Neither the existence of problems at the FTU nor the failure to point out these problems demonstrate that Chaffinch believed that the statements he made were untrue. The evidence on which Foraker relies, that Chaffinch wanted to "get" Foraker, is irrelevant to the actual malice inquiry; it says nothing about whether he believed in the truth of the statements he made to the newspaper. Hostility and ill will have nothing to do with constitutional actual malice. Accordingly, Foraker has failed to meet his burden of showing that Defendants' statements were made with actual malice. Summary judgment should be awarded in favor of both Defendants.

### C. The Inferences That Plaintiff Draws Do Not Meet Plaintiff's Burden To Prove That The Statements Are False.

In Defendant's Opening Brief, the Defendants demonstrated by undisputed facts that the actual statements uttered by the Defendants were substantially true. Foraker has not pointed to any evidence to show that the actual statements were not substantially true. Instead, he attempts to avoid summary judgment by concocting outlandish interpretations of these statements, and then asserting that those interpretations are false. It is Foraker's burden to prove that the statements are false, and he cannot meet his burden by relying on self-serving and unreasonable interpretations of Defendants' words.

"To support a cause of action for libel, the underlying facts must be false as well as defamatory." Riley v. Moyed, 529 A.2d 248, 254 (Del. 1987). Even if a statement is technically false, "[u]nder Delaware law there is no liability for defamation when a statement is determined to be substantially true." Id. at 251 (emphasis added). Whether language can reasonably be construed as defamatory is a matter of law for the court to decide. Riley, 529 A.2d at 251.[3] "The

---

[3] Foraker argues that the doctrine of substantial truth does not apply in this case because Defendants have omitted several key facts which would lead the reader to draw a different inference from the statements, or perhaps render the drawing of inferences unnecessary. In order to prevail under this theory, a plaintiff must show that the omission renders the already published material assertion of fact untrue. Martin v. Widener, No. 91C-030255, 1992 WL 153540, at * 11 (Del. Super. Ct. June 4, 1992). "If the alleged libel was no more damaging to plaintiff's reputation

court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character." Slawick v. News-Journal Co., 428 A.2d 15, 17 (Del. 1981). Foraker argues that whether or not the statements made by defendants Chaffinch and MacLeish are defamatory on their face, the inference drawn from them is that Foraker "did something wrong" or "was not doing his job very well." (Pl.'s Ans. Br. 26-27.) While defamation can be implicit, rather than explicit, the Court must "take the words in their plain and natural meaning and understand them as would a person of average and intelligent perception." Ramunno v. Cawley, 705 A.2d 1029, 1035-36 (Del. 1998). The inferences drawn by Plaintiff, however, are based on his hypersensitivity regarding the range and his specialized and personal knowledge of the FTU. He does not interpret them as would a person of average and intelligent perception.

Foraker contends that the representations made by Defendants portray him as the "person responsible for the shutdown of the FTU range and imply that only three months after his return as Section Chief he had broken the multi-million dollar facility." (Pl.'s Ans. Br. 39). Yet Foraker has not identified a single statement made by either Defendant which places the entire blame for the problems at the range with him. The April 6, 2004, article quotes Defendant Chaffinch for the statement that "in the future a standard operating procedure will be established" which indicates that Chaffinch believes that the lack of a standard operating procedure may be responsible in part for the failure of the range. (Combined Appendix to Defendants Opening Briefs in Support of Motions for Summary Judgment "CA" at A -2723-26.) This statement undercuts Foraker's claim that Chaffinch has placed the blame for all of the problems with him.

---

in the mind of the average reader than a truthful statement would have been, the statement is substantially true. In making the evaluation, the court considers whether the 'gist' or 'sting' of the article was true." Id. If it the gist or

Foraker has identified as defamatory, for the first time in his Answering Brief, specific statements made in the WBOC news report. Foraker claims that MacLeish's use of the word "began" in the following statement -- "The fire arms training unit began experiencing some problems—some health problems that copper taste in their mouth—runny nose, stuffiness, things of that nature" -- implies that the problems began with Foraker. (Pl.'s Ans. Br. 29) As Foraker admits, his name was not mentioned on WBOC.[4] (Id. at 29 n.32.) He nevertheless claims that anyone who either knew he worked at the range or who learned he worked at the range would somehow conclude from that statement that he was responsible for the problems at the range and that the problems began when he took over. Id.[5] This statement is not defamatory because MacLeish does not blame Foraker. It is also not defamatory because a reader of average intelligence and perception would never conclude what Foraker alleges. Only a reader who already knew the facts -- that Foraker had stopped doing necessary maintenance on the bullet trap -- would conclude that Foraker was responsible. This is not the ordinary intelligent listener of WBOC; rather, it is someone who has personal knowledge of the range history.

Foraker also claims that MacLeish implied in the WBOC report that Foraker failed to follow standard operating procedure at the range when he said that "there will be a very sound, strict, standard operating procedure that will be done and followed." (Pl.'s Ans. Br. 29.) Again, MacLeish never mentioned or referred to Foraker in this statement, nor did he ever say that a standard operating procedure had not been followed in the past. Like Chaffinch's statement in the April 6, 2004, article, this statement suggests that there previously had been no standard

---

the sting of the article is true, as it is here, the statements cannot be defamatory as a matter of law.

[4] The statements made on WBOC are not defamatory because they do not refer to or mention Foraker. To establish his defamation claim under Delaware law, Plaintiff must prove, among other things that the statement is "concerning the plaintiff," and "a third party would understand the character of the communication as defamatory." Doe v. Cahill, 884 A.2d 451, 463 (Del. 2005).

-12-

operating procedure. It is nonsensical to assert that Chaffinch and MacLeish's acknowledgement of the fact that no standard operating procedure existed at the range would lead the average reader to believe that one did exist and that Foraker did not follow it.

Foraker next claims, without any support or legal authority, that Chaffinch and MacLeish "adopted" the statements of Gloria Homer during the WBOC newscast. He claims that they did this "by standing right next to her without correcting her in any way." (Pl.'s Ans. Br. 29.) Besides the fact that plaintiff attempts to selectively use Chaffinch's testimony to prove his point, this cannot be the basis for a defamation claim against Chaffinch or MacLeish. As stated, in Defendants' Opening Brief, one of the elements of a defamation claim under Delaware law is publication of a statement. The statement plaintiff challenges was not published by MacLeish or Chaffinch; rather, the statements were published by Secretary Homer, who is not a defendant here. There is no evidence that either defendant made any statement to specifically adopt or incorporate the Secretary's comments; thus, these statements are not actionable. Moreover, while plaintiff claims that Chaffinch "'just stood back' and watched Homer lambast (sic) Sgt. Foraker," in reality, Chaffinch testified as follows:

> **Q:** Do you recall if she blamed anyone for the conditions at the range?
>
> **Chaffinch:** I am sure she blamed -- I don't recall exactly, but I -- she pretty much was apologetic to me before we ever went in so I knew <u>we were getting ready to get slammed</u>. I just kind of sat back -- I didn't sat back, but I stood back and watched.

(Pls.' App. (Vol. I) at A443 (Chaffinch Dep. 70).) (emphasis added) It is clear, when read in context, that Chaffinch is referring to the DSP, not Foraker, being "slammed" by Secretary Homer. Indeed, Chaffinch felt that the comments were directed at him as superintendent of the police department, which is evidenced by his use of the word "we." (Id.)

---

[5] Whether or not the statement pins responsibility on Foraker, it is indisputably true that the stated "health problems" began in January 2004. (CA at A-504.4, A-511.1-A-511.6.)

-13-

Foraker also claims that Chaffinch's statement on television that people will not be allowed to train in the FTU until it has been shown to be safe and healthy "falsely impli[es] that everything Sec. Homer said was true and [Chaffinch was] not defending his men." (Pl.'s Ans. Br. 30.) Foraker's interpretation of this statement is quite a stretch and certainly is not one that an average reader would draw. Foraker's assertion that Chaffinch and MacLeish adopted Homer's statements is nothing more than an attempt to tie them to conduct for which they are not responsible. He certainly has not established that any of their speech is defamatory.

Because the inferences suggested by Foraker are wildly unreasonable, he has not established that Defendants' statements have a defamatory meaning, and therefore, Defendants should prevail on summary judgment.

### D. Defendant's Statements Are Constitutionally Protected Expressions of Opinion.

Foraker claims that the statements made by Defendants Chaffinch and MacLeish imply that Foraker "did something wrong" or "was not doing his job very well." (Pl.'s Ans. Br. 26-27.) Even if this were a reasonable inference, it is a protected expression of opinion for which Foraker cannot recover.

It is well established that "a pure statement of opinion is constitutionally protected and cannot be defamation as a matter of law. Whether a statement constitutes opinion or factual representation is a question of law and is made from the position of an ordinary reader." Gill v. Delaware Park, LLC, 294 F. Supp. 2d 638, 647 (D. Del. 2003) (internal citations omitted). Courts employ a four-part test to determine whether a statement is a fact or opinion: "First, the Court should analyze the common usage or meaning of the challenged language. Second, the Court should determine whether the statement can be objectively verified as true or false. Third,

the Court should consider the full context of the statement.  Fourth, the Court should consider the broader social context into which the statement fits."  Riley, 529 at 251.

When analyzed under the Riley test, it is clear that these statements are protected expressions of opinion.  All these statements were made in the context of the public debate and at the beginning of a media investigation into the cause of the problems at the shooting range.  It is not possible to verify the truthfulness of whether Foraker "did something wrong" or was "good at his job" because these are highly subjective statements.  They are vague and have no precise meaning.  See Stevens v. Independent Newspapers, Inc., No. 85C-OC11, 1988 WL 25377, at *4 (Del. Super. Ct. Mar. 10, 1988) ("Doing something wrong is a concept that is open to many interpretations and does not necessarily imply highly damaging facts.")  Moreover, vague and hyperbolic statements regarding job performance have been held to be protected opinion.  See Newman v. Hansen & Hempel Co., No. 01-9871, 2002 WL 31455990, at *2 (N.D. Ill. Nov. 1, 2002) (statement that plaintiff was "incompetent at her job" and "stupid" were protected opinion"); Quiroz v. Hartgrove, No. 97-6515, 1999 WL 281343, at *15 (N.D. Ill. Mar. 24, 1999) (statement that nurse was "stupid" and "incompetent" were "not capable of being proven true or false as they are inherently subjective").  Under these cases, the statements identified by Foraker that imply that he is "not doing a good job" or "did something wrong" are indisputably protected expressions of opinion that are not defamatory as a matter of law.  Summary judgment should be granted in favor of Defendants on this issue.

    **E.**    **Defendants Should Be Awarded Summary Judgment On Plaintiff's False Light Invasion of Privacy Claim .**

Plaintiff's false light invasion of privacy claim is based on his contention that he is not a public official, and therefore the discussion of his job performance in a public forum placed him in a false light. As discussed at length above, Plaintiff is a public official, and therefore, his claim for false light invasion of privacy fails as a matter of law. <u>Godbehere</u>, 783 P.2d. at 343.

**V.**    <u>**CONCLUSION**</u>

For the reasons set forth in Defendants Motion for Summary Judgment (D.I. ## 60 & 62) and set forth above, Defendants request that the Court enter summary judgment in their favor and against Plaintiff on all counts of the Amended Complaint.

Respectfully submitted,

Date:  February 17, 2006                /s/ Noel C. Burnham
                                          Noel C. Burnham (DE Bar No. 3483)
                                          Richard M. Donaldson (DE Bar No. 4367)
                                          Montgomery, McCracken, Walker & Rhoads, LLP
                                          300 Delaware Avenue, Suite 750
                                          Wilmington, DE 19801
                                          Telephone:  (302) 504-7840
                                          Facsimile:  (302) 504-7820

                                          Edward T. Ellis
                                          Robert J. Fitzgerald
                                          Montgomery, McCracken,
                                             Walker & Rhoads, LLP
                                          123 South Broad Street
                                          Philadelphia, PA  19109
                                          (215) 772-1500

                                          *Counsel for Defendants L. Aaron Chaffinch,*
                                          *Thomas F. MacLeish, David B. Mitchell, and the*
                                          *Division of State Police, Department of Safety and*
                                          *Homeland Security, State of Delaware*