# THE NEUBERGER FIRM
### ATTORNEYS AND COUNSELLORS AT LAW

## TWO EAST SEVENTH STREET
## SUITE 302
## WILMINGTON, DELAWARE 19801-3707

WWW.NEUBERGERLAW.COM
EMAIL: INFO@NEUBERGERLAW.COM

THOMAS S. NEUBERGER, ESQUIRE
STEPHEN J. NEUBERGER, ESQUIRE

PHONE: (302) 655-0582
FAX: (302) 655-9329

March 31, 2006                                    **Via CM/ECF Filing**

The Honorable Gregory M. Sleet
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

RE:     **Foraker v. Chaffinch, et al.,** C.A. No. 04-1207-GMS
        **Revisions to the Joint Proposed Pretrial Order**

Dear Judge Sleet:

        The parties have continued to work diligently to complete the Joint Proposed Pretrial Order for
the Court.  To ensure the Court has the final documents, plaintiff submits several revised schedules of
the Pretrial Order in accord with the instructions given by your staff.  Defendants are being served with
the revised documents via CM/ECF by the filing of this letter with its accompanying attachments.

        Enclosed please find plaintiffs' instructions for the supplementation and amendment of the
Pretrial Orders as filed.

1.      Substitute the Final Pretrial Order with the revised Final Pretrial Order as attached.

2.      Substitute Schedule (c)(1) Plaintiffs' Exhibits with the revised Schedule (c)(1) Plaintiffs' Exhibits
        as attached.

3.      Substitute Schedule (c)(2) Plaintiffs' Demonstrative Exhibits with the revised Schedule (c)(2)
        Plaintiffs' Demonstrative Exhibits as attached.

4.      Substitute Schedule (e) Plaintiffs' Expert Witnesses with the revised Schedule (e) Plaintiffs'
        Expert Witnesses as attached.

5.      Substitute Schedule (i)(ii) - Preliminary Jury Instructions with the revised Preliminary Jury Instructions as attached.

6.      Substitute Schedule (i)(ii) - Joint Jury Instructions with the revised Joint Jury Instructions as attached.

7.      Substitute Schedule (l) Discovery Statement with the revised Schedule (l) Discovery Statement as attached.

If the Court wishes, my office is available and would be more than happy to "swap out" the old schedules with the revised ones, so that your staff need not be burdened with the task.  My staff informs me that this is how the Court previously addressed pretrial order revisions.


Respectfully submitted,

/s/ Stephen J. Neuberger

Attorney for Plaintiff


cc:     Thomas S. Neuberger, Esq. (via CM/ECF)
        Martin D. Haverly, Esq. (via CM/ECF)
        Richard M. Donaldson (via CM/ECF)

Foraker \ Letters \ Sleet.03

# Attachments

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** | : | **C.A. No. 04-1207-GMS** |
| **individually and in his official capacity as** | : | |
| **Superintendent of the Delaware State Police;** | : | |
| **LIEUTENANT COLONEL THOMAS F.** | : | |
| **MACLEISH, individually and in his official** | : | |
| **capacity as Deputy Superintendent of the** | : | |
| **Delaware State Police; DAVID B. MITCHELL,** | : | |
| **in his official capacity as the Secretary of the** | : | |
| **Department of Safety and Homeland Security of** | : | |
| **the State of Delaware; and DIVISION OF** | : | |
| **STATE POLICE, DEPARTMENT OF SAFETY** | : | |
| **AND HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |

**<u>FINAL PRETRIAL ORDER</u>**

This matter having come before the court at a pretrial conference held pursuant to Fed. R.

Civ.P. ("Rule") 16, Thomas S. Neuberger, Esquire and Stephen J. Neuberger, Esquire, 2 East

Seventh Street, Suite 302, Wilmington, DE 19801, tel. 302.655.0582, and Martin D. Haverly,

Esquire, 2 East Seventh Street, Suite 201, Wilmington, DE 19801, tel. 302.654.2255, having

appeared as counsel for plaintiff and Edward T. Ellis, Esquire and Robert Fitzgerald, Esquire,

123 South Broad Street, Philadelphia, PA 19109, tel. 215.772.1500, Richard M. Donaldson,

Esquire and Noel C. Burnham, Esquire, 300 Delaware Ave., Suite 750, Wilmington, DE 19801,

tel. 302.504.7840, having appeared as counsel for defendants, the following actions were taken:

1.      This is a civil action for compensatory and punitive damages and for injunctive

relief for retaliatory violations of the Speech and Petition Clauses of the First Amendment, and

for supplemental state law claims.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

1343(a)(3) and (4), 28  U.S.C. §§ 2201 and 2202, and the First Amendment to the U.S.

Constitution.  The Court also retained jurisdiction over this matter to enforce its order of

reinstatement in Foraker v. Chaffinch, et al., C.A. No. 02-302-JJF (D.Del).  The cause of action

arises under 42  U.S.C. § 1983.  This Court has jurisdiction over the state law claims pursuant to

28 U.S.C. § 1367 which provides for supplemental jurisdiction.  The claims arose in this judicial

district.  Jurisdiction is not disputed.

2.      The following stipulations and statements were submitted and are attached to and

made a part of this Order.

(a)     a comprehensive stipulation or statement of all uncontested facts, which will

become a part of the evidentiary record in the case (and which, in a jury trial, may

be read to the jury by the court or any party);

(b)     an agreed statement or statements by each party of the contested issues of fact and

law and a statement or statements of contested issues of fact or law not agreed to;

(c)     except for rebuttal exhibits, schedules in the form set out in the attached Schedule C

of;

(1)     all exhibits (all exhibits shall be marked for identification before trial),

including documents, summaries, charts and other items expected to be

offered in evidence and

(2)     any demonstrative evidence and experiments to be offered during trial;

(d)      a list or lists of names and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list;

(e)      stipulations or statements setting forth the qualifications of each expert witness in such form that the statement can be read to the jury at the time the expert witness takes the stand;

(f)      a list of all depositions, or portions thereof, to be read into evidence and statements of any objections thereto;

(g)      an itemized statement of special damages;

(h)      waivers of any claims or defenses that have been abandoned by any party;

(I)      for a jury trial, each party shall provide the following:

        (1)      trial briefs except as otherwise ordered by the Court;

        (2)      three sets of marked proposed jury instructions, verdict forms, and special interrogatories, if any; and

        (3)      a list of questions the party requests the Court to ask prospective jurors in accordance with Fed.R.Civ.P. 47(a) and D.Del. LR 47.1(a);

(j)      for a non-jury trial, each party shall provide proposed *Findings of Fact and Conclusions of Law* in duplicate;

(k)      a statement summarizing the history and status of settlement negotiations, indicating whether further negotiations are ongoing and likely to be productive;

(l)      a statement that each party has completed discovery, including the depositions of expert witnesses (unless the Court has previously ordered otherwise).  Absent good cause shown, no further discovery shall be permitted; and

(m)      all motions *in limine*: briefing on all such motions shall be completed by the date for the  filing of this Pretrial Order.  No party shall file more than ten motions without the prior approval of the court.  The party seeking relief shall file a motion and opening brief of up to five (5) pages.  The responding party shall file

an answering brief of up to five (5) pages and the moving party shall then, if necessary, file a reply of up to three (3) pages.  The following motions *in limine* are attached:

(1)     Plaintiffs' Motion to Limit the Cross Examination of Captain Glenn Dixon

(2)     Plaintiffs' Motion in Limine to Preclude Expert Testimony of Brian P. Sullivan

(3)     Defendants' Motion Pursuant to *Daubert  v . Merrell Dow Pharmaceuticals, Inc.*

Defendants Statement:
Defendants mistakenly believed that motions in limine were due on March 21, 2006.  Defendants now understand that the Court's form Final Pretrial Order contemplates that such preliminary motions were to filed and served in such time as to allow all briefing to be submitted with the parties' proposed Final Pretrial Order.  Defendants acknowledge that, with respect to the above motions, they have failed to adhere to that expectation.  They regret the mistake, which was not in any way intended to prejudice Plaintiffs are delay the trial of this case, and request that the Court consider the merits of the motions.

Plaintiffs' Statement:
The Court's Rule 16 procedures are very clear.  All motions in limine were due on February 28, 2006.  As the Court contemplates in its Rule 16 Scheduling Order, such a date allows all motion in limine briefing to be completed and submitted by the time the pretrial order is due.  Plaintiffs planned their trial and pretrial schedules around the dates set forth by the Court in its Order more than one year ago.  Plaintiffs carved out attorney time to respond to defendants' motions in limine in early March.  None were filed and plaintiffs proceeded under that assumption.  It is important to note that defendants did not miscalculate by a day or two.  Instead, they miscalculated by nearly a month.  Now, due to scheduling conflicts relating to pending trials, pretrials and legal obligations in this and several other cases, plaintiffs have been prejudiced by defendants' belated submissions and no longer have sufficient time to respond to the issues raised by defendants.  Plaintiffs will be filing a motion to strike defendants' untimely motions in limine in the near future.

3.     Trial of this case is expected to take five (5) days per the original scheduling order.  Plaintiff and Defendants believe this is inadequate time.

4.      *[Indicate the type of trial by placing an X in the appropriate box]*

Jury  _X_                  Non-jury _____

5.      The parties recommend that eight jurors be selected at the commencement of the

trial.

(6)    This Order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

(7)    Possibility of settlement of this case was considered by the parties.

(8)    <u>Miscellaneous</u>: <u>Plaintiffs' Statement</u>: (A) It is plaintiff's contention that in July of 2004, when Lt. Colonel MacLeish permanently barred plaintiff from Commanders meetings, defendants materially violated Judge Farnan's order in <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del), which plainly stated plaintiff was to be reinstated "with all rights, privileges, duties, responsibilities and supervisory authority previously held by him." Both individual defendants were aware of and bound by that order. As a post-trial matter, plaintiff Moves that the Court find defendants guilty of civil contempt and assess such sanctions as the Court deems appropriate, against both individual defendants.

*Defendants' response:* The Court Order of November 20, 2003 should not be entered in evidence. Foraker should not be permitted to make reference to it, and counsel should not be allowed to argue that Defendants violated the Order or are in contempt of court. This lawsuit is a civil suit for alleged violations of Foraker's First Amendment rights. Whether a consent order exists is irrelevant to the jury's inquiry under 42. U.S.C. § 1983. This lawsuit is not, and never has been, a petition for adjudication of civil or criminal contempt.

Moreover, it is not at all clear whether it would be civil or criminal contempt, and in neither eventuality has Foraker followed the procedures necessary to bring such a petition before the Court.

Lastly, a contempt petition must be brought in the civil action in which the order was entered, in this case, <u>Foraker v. Chaffinch</u>, No. 02-302-JJF (D. Del.).

<u>Plaintiffs' Statement</u>: (B) A jury prayer on destruction of evidence could be needed in this case.

*Defendants' response:*  This issue has been fully briefed, and Defendants reference their Answering Brief in Opposition to the Motion for Sanctions and Other Relief Due to Defendants' Intentional Destruction of Relevant Evidence (D.I. # 93).

_____
United States District Judge

Date: _____

**THE NEUBERGER FIRM, P.A.**


_____
**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com


**MARTIN D. HAVERLY, ATTORNEY AT LAW**


_____
**MARTIN D. HAVERLY, ESQ. (#3295)**
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 654-2255
Martin@HaverlyLaw.com

Attorneys for Plaintiff

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

_____

**EDWARD T. ELLIS, ESQ. (*admitted pro hac vice*)**
**ROBERT FITZGERALD, ESQ. (*admitted pro hac vice*)**
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500


_____

**NOEL C. BURNHAM, ESQ. (#3483)**
**RICHARD M. DONADLSON, ESQ. (#4367)**
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

Attorneys for Defendants


Draft.07

**Schedule (c)(1)**
**Plaintiff's Exhibits**

2.  The following exhibits were offered by plaintiff and marked for identification.  Defendants objected to their receipt in evidence on the grounds stated.

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P1 | Special Verdict Form in <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del.) (Chaffinch ex.1, A476-79) | Fed. R. Evid. 403; inflammatory and unfairly prejudicial | **FRE 403**<br>    Notably, defendants concede relevance.<br>    The use of this exhibit is hardly "unfair" or "inflammatory."  Instead, like no other document, the special verdict form fairly and accurately reflects the factual findings of the federal court jury three years ago, the jury verdict that enraged defendants and launched them on their mission of destroying Sgt. Foraker's life and career.  <u>Everything</u> flows from this exhibit – including our present case.<br>    It is these factual findings that give rise to defendants' motive to retaliate against Sgt. Foraker – which is key in this case.  Deposition testimony established that this jury verdict was unprecedented in the history of the DSP. And it is because of this unprecedented jury verdict that Chaffinch has bragged throughout the DSP that "I'm going to get that son of a bitch," and has made it his mission to do just that.<br>    Moreover, this exhibit reveals that Chaffinch's conduct was both "shocking and offensive" and that he acted "with malice or with callous and reckless indifference or oppressively" in violating Sgt. Foraker's rights.  Again, this is hardly an "unfair" or "inflammatory."  Instead, it represents the true and accurate factual findings.<br>    On the punitive damages issue, this exhibit makes clear that $60,000 was insufficient to "punish and deter" Chaffinch.  Defendants' true rational for trying to exclude this key exhibit is the knowledge that the jury will use this  figure as a baseline as they search for a sum above and beyond that will "punish and deter" defendants from their illegal conduct.  $60,000 did not stop him from breaking the law – how large of an award will? |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P2 | Stipulated Order in Foraker v. Chaffinch, et al., C.A.No. 02-302-JJF (D.Del.) (A004-7, 034-35) | Fed. R. Evid. 401, 402, & 403 | FRE 401-402 (relevance): - This exhibit has independent legal significance and evidentiary value.  This Order requires that Sgt. Foraker be reinstated with all the job duties he previously had.  The violation of this term of the Order is key causal evidence and independently constitutes adverse employment action.  It also is key evidence in support of an award of punitive damages. Each defendant has testified that he knew of the requirements of this Order.  If the jury finds that Sgt. Foraker's job duties were nonetheless diminished by defendants, this is compelling evidence of reckless, intentional and malicious conduct warranting a substantial award of punitive damages as well as a finding of civil or criminal contempt against defendants.<br><br>FRE 403: - This exhibit does not contain the amount of money paid to plaintiff.  Accordingly, any defense objection on this grounds is without merit and may be disregarded. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P3 | Settlement Agreement in <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del.) (A001-3) | Fed. R. Evid. 403 amount of money paid to Plaintiff is inflammatory and unfairly prejudicial (see, e.g., <u>Kennon v. Slipstreamer, Inc.</u>, 794 F.2d 1067, 1070-71 (5th Cir. 1985); <u>see also</u> <u>Vincent v. Louis Marx & Co.</u>, 874 F.2d 36, 42 (1st Cir. 1989); <u>McInnis v. A.M.F., Inc.</u>, 765 F.2d 240, 246-52 (1st Cir. 1985)) | FRE 403: - Notably, defendants concede relevance under FRE 401-402. Defendants also concede the inapplicability of FRE 408.<br><br>    The cases cited by defendants are not FRE 403 cases. Instead, they are FRE 408 cases. Accordingly, they do not support the proposition for which defendants have cited them.<br><br>    Moreover, as explained below, plaintiffs are not offering this for the purpose prohibited by 408 – to establish liability<br><br>    Instead, this exhibit is being offered for several reasons. First, it is part and parcel of Sgt. Foraker's protected activity – this is the settlement agreement that ended his first court case. Thus it has independent legal significance and evidentiary value.<br><br>    Second, it is relevant to defendants' motivation to retaliate against plaintiff. Chaffinch was outraged by the terms of this settlement agreement (including the amount of money) and this provides a portion of his motivations to destroy Sgt. Foraker. that he settled with Sgt. Foraker and that Foraker won his lawsuit. This is evidence pertaining to the cause of his illicit motivations.<br><br>    Third, this is key causal evidence. Defendants violated the terms of this settlement agreement in their treatment of Sgt. Foraker. This is compelling evidence of causation. See <u>Village of Arlington Heights v. Metropolitan Hous. Develop. Corp.</u>, 429 U.S. 252, 267 (1977). Defendants fail to articulate or demonstrate how these uses are unfairly prejudicial to them. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P4 | Various media articles covering <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del.), dated June 2003 and Nov. 2003 (CF69-76; MacLeish ex. 1, A200-7) | Fed. R. Evid. 401, 402, 403, 801,& 802 | FRE 401, 402 (relevance):<br>- This is relevant to defendants' motivation to retaliate against plaintiff. The unprecedented jury verdict against Chaffinch received widespread media attention throughout the state and defendants testified at their depositions that they did not like the plethora of adverse media attention that the jury verdict received.  This exhibit is excerpts of that media attention.  It tends to demonstrate defendants' motive for wanting to seek revenge on plaintiffs.  They were publicly humiliated by the media attention resulting from the jury verdict.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801, 802 (non-hearsay purpose):<br>- This is not being offered for truth of the matter asserted.  This is being offered to help demonstrate defendants' motive to retaliate. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P5 | DSP Annual Performance Appraisal of Christopher D. Foraker, dated 12/1/03 - 9/3/04 (CF1-13; A834-42) | Fed. R. Evid. 401, 402, 403, 801 & 802 Defendants have not attacked Plaintiff's performance as NCOIC of the FTU. (He is not a Section Chief.) They have contended – and Plaintiff has admitted – that he did not perform basic maintenance required to keep the bullet trap running. The exhibit does not address the bullet trap problem; accordingly, it is irrelevant. The exhibit also invites litigation of side issues because it was prepared by Foraker supporter and fellow litigant, Ralph Davis, and in part parrots the position taken by Plaintiff's attorneys in their briefs. | FRE 401, 402 (relevance): <br> - Defendants are attacking Sgt. Foraker's performance as Section Chief of the FTU. These documents tend to prove that his performance <u>during this same time frame</u> was exceptional. <u>No mention</u> is made of any negligence or performance deficiencies. <br>  The entire defense position in this case (as well as Chaffinch's public retaliatory attacks on Sgt. Foraker have attacked his performance at the FTU. This exhibit clearly rebuts the defense attacks. <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. <br> - to the extent defendants claim that this exhibit 'parrots' the position taken in plaintiff's briefs, this performance evaluation was prepared several years before the briefs were even written. Instead, it would be fair to say that plaintiff's briefs 'parrot' the position taken by Sgt. Foraker's Supervisor who found that his performance was outstanding and he did not have any performance deficiencies whatsoever during the time period defendants claim Plaintiff's performance was deficient. <br><br> FRE 404 (non-propensity purpose): <br> - This evidence is being offered to show that defendants are lying when they claim that Sgt. Foraker's performance was negligent or deficient during the relevant time period. These are his performance evaluations made during that same time period and no mention is made of any such negligence or deficiencies. <br><br> FRE 801,802 <br> - FRE 803(6) (hearsay exception - business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP. <br> - FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance during the relevant time period. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P6 | DSP Annual Performance Appraisal of Christopher D. Foraker, dated 12/1/03 - 9/3/04, signed by Lt. Randall L. Hughes (A2650-61) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P5. | See response to P5 above.<br><br>Plaintiffs note that this portion of plaintiff's performance evaluation was signed by Major Hughes, a high ranking officer on defendants' Executive Staff who is close friends with defendant Chaffinch.<br><br>To the extent defendants seek to attack Capt. Davis' credibility since he once sued defendant Chaffinch, defendants can offer no such attack on the credibility of Chaffinch's own friend who signed this evaluation. |
| P7 | Limited Addendum to DSP Annual Performance Appraisal of Christopher D. Foraker, dated 10/1/03 - 9/30-03, signed by Capt. Homiak (A2642-49) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P5. | See response to P5 above.<br><br>Plaintiffs note that this portion of plaintiff's performance evaluation was signed by Capt. (now Major) Homiak, a high ranking officer on defendants' Executive Staff who was recently promoted by defendant MacLeish.<br><br>To the extent defendants seek to attack Capt. Davis' credibility since he once sued defendant Chaffinch, defendants can offer no such attack on the credibility of MacLeish's own recent promotion. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P8 | Capt. Daryl R. Mergenthaler's recommendation of Christopher D. Foraker for a Exceptional Performance Award addressed to Col. L. Aaron Chaffinch, dated 2/15/02 (Mergenthaler ex. 1 - <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del.), A1152) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P5. | FRE 401, 402 (relevance): <br>- This document is being offered because it tends to prove the great respect and high regard in which Sgt. Foraker was held by all those in the DSP prior to the events at issue in this case.  This evidence tends to prove that Sgt. Foraker had a sterling professional reputation in the past.  Accordingly, this document helps demonstrate the baseline against which to measure how Sgt. Foraker's reputation has been injured by defendants' defamatory falsehoods, words and actions. <br><br>FRE 403: <br>- Defendants have not specified the 403 grounds on which they have objected.  When defendants do specify the grounds, plaintiffs will be able to respond. <br><br>FRE 404: <br>- FRE 404(b) (non-propensity purpose):  This exhibit is offered to help demonstrate the baseline of Sgt. Foraker's sterling professional reputation before defendants maliciously attacked and defamed him. <br><br>FRE 801,802 <br>- FRE 803(6) (hearsay exception - business record): This is plaintiff's performance evaluation made in the course of regularly conducted activities of the DSP. <br>- FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agents concerning plaintiff's job performance during the relevant time period. |
| P9 | *Delaware State News* article of 4/7/04 - "Debate ranges on blame at range" (MacLeish ex. 5, A214-17) | No objection. | So it is admitted. |
| P10 | *American Police Beat Magazine* article (CF66-68; B28-30) | No objection. | So it is admitted. |
| P11 | video tape from WBOC-TV (D.I. 81) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P12 | *Delaware State News* article of 4/18/04 - "'Del. State Police is broken': Legislators express concern about mounting allegations" (FTU2874-78; A2734-38) | Fed. R. Evid. 401, 402, 801, & 802 As set forth in more detail elsewhere, this exhibit is inflammatory; it also deals with issues not in dispute. | FRE 401, 402 (relevance): - This is relevant to defendants' motivation to retaliate against plaintiff. The problems at the FTU were receiving widespread media attention and defendants testified at their depositions that they did not like the plethora of adverse media attention they were receiving. This exhibit helps demonstrate defendants' motive for wanting to silence the plaintiff whistleblower. It also demonstrates the public concern in the subject matter of plaintiff's speech. - Plaintiff's protected speech in this case includes all of his speech – from the filing of his earlier lawsuit to his speech about the hazardous conditions at the FTU. Thus, this exhibit is relevant to this case. FRE 403: - Defendants have not specified the 403 grounds on which they have objected nor have they explained how this is inflammatory. FRE 801, 802 (non-hearsay purpose): - This is not being offered for truth of the matter asserted. This is being offered to help demonstrate defendants' motive to retaliate. |
| P13 | *The News Journal* article of 4/21/04 - "Answers sought on firing range" (FTU2882-3; A2742-43) | Fed. R. Evid. 401, 402, 801, & 802 <u>See</u> Defendants' Objections to P12. | See response to P12 above. |
| P14 | *Delaware State News* article of 5/8/04 - "Range builder defends self" (FTU2890-94; A2750-54) | Fed. R. Evid. 401, 402, 801, & 802 This article is about the contractor that built the firing range. It is inflammatory and has little or no probative value to the issues in this case. | See response to P12 above. This exhibit addresses the problems at the FTU and demonstrates the public concern in the subject matter of plaintiff's speech. It also is relevant to defendants' motives to retaliate against plaintiff, as explained above. |
| P15 | *Delaware State News* article of 5/8/04 - "Range misses mark again: Second test finds contaminants" (FTU2887-89; A2747-49) | Fed. R. Evid. 401, 402, 801, & 802 <u>See</u> Defendants' Objections to P12. | See response to P12 above. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P16 | *The News Journal* article of 5/13/04 - "Troopers discuss firing range" (FTU2897; MacLeish ex. 17, A2702) | Fed. R. Evid. 401, 402, 801, & 802 The exhibit is not relevant to establish any material fact. That Defendants knew that Plaintiffs spoke to the Auditors has never been a disputed issue in the case. The news articles are unnecessarily inflammatory. | See response to P12 above.<br><br>This is relevant to numerous material facts. Such as defendants' motivations to retaliate against Sgt. Foraker. It also is relevant to the public concern value in plaintiff's speech – his speech was of such high public concern that it was prominently reported in the local newspaper.<br><br>Defendants also have denied knowledge of much of the specifics about plaintiff's speech to the Auditors. Yet they admit they read the newspapers which reported on much of the specifics of their speech. There is a disconnect to defendants' testimony which this exhibit helps illustrate. |
| P17 | *Delaware State News* article of 5/14/04 - "Shots traded over range" (FTU2901-5; MacLeish ex. 17, A2697-701) | Fed. R. Evid. 401, 402, 801, & 802 <u>See</u> Defendants' Objections to P16. | See response to P12 above. |
| P18 | Various emails addressed to DSP Troop Commanders and Section Chiefs and listing Sgt. Foraker, including the emails inviting Sgt. Foraker to the July 20, 2004 Commanders Meeting (CF20-63; A1495-1537) (CF27,29; A1502,1504) | Fed. R. Evid. 401, 402, & 403 | FRE 401-402 (relevance):<br>- These are the numerous e-mails inviting Sgt. Foraker to attend Commanders & Section Chiefs meetings. These e-mails tend to prove that Sgt. Foraker was in fact a Section Chief. They tend to prove that defendants diminished Sgt. Foraker's job duties, violated the settlement agreement, and violated Judge Farnan's reinstatement Order when they threw him out of and barred him from ever attending Section Chiefs' meetings. This exhibit is relevant to the issues of causation, punitive damages and contempt of Court by defendants.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P19 | Medical records of Sgt. Foraker from family physician, Dr. Mackey (FTU4239-63) | Fed. R. Evid. 401, 402, 403, 801 & 802 Medical records should not be admitted absent a doctor to interpret them and to be cross-examined. Without causation testimony, Foraker's medical problems and records are irrelevant. | FRE 401-402 (relevance).<br>- this exhibit is relevant to plaintiff's injuries. They demonstrate his state of health before he spoke out (which helps the jury understand his health baseline) and his declining health after defendants' retaliation began. Thus, these are plainly relevant.<br><br>FRE 403.<br>- these medical records speak for themselves and do not need a doctor to interpret them. Defendants have offered no law in this regard.<br><br>FRE 803(4) (hearsay exception – statements made for the purposes of medical diagnosis or treatment)<br>- these records fall squarely within the scope of this exception to the hearsay rule. |
| P20 | Letter from Frederick Kozma, Ph.D. declaring Sgt. Foraker unfit for duty, dated 10/7/05 (B003) | Fed. R. Evid. 801 & 802 | After previously conceding that this short exhibit should be admitted, defendant filed a belated objection to it. Plaintiffs were unaware that this was in dispute.<br>    Frederick Kozma, Ph.D. is plaintiff's treating psychologist. He is a busy medical professional with a full schedule of treating patients. Plaintiff hoped that this short exhibit could be introduced to save time and efficiency rather than have to call Kozma away from his patients to spend the day testifying in Court.<br>    In the event that defendants do not withdraw their late filed objection – plaintiff will add Kozma as a witness and call him during plaintiff's case in chief to testify to the substance of this short letter. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P21 | Letter from Thomas S. Neuberger, Esq. addressed to Capt. John Yeomans regarding the temporary total disability application for Sgt. Foraker, dated 10/10/05 (B001-2) | Fed. R. Evid. 401, 402, & 403 An attorney's letter is not evidence of any medical condition. | FRE 401-402 (relevance): - This letter is relevant to the issue of damages as it is Sgt. Foraker's application for temporary total disability. It demonstrates just how much Sgt. Foraker has been destroyed as a result of defendants' retaliation against him. He is unfit for duty, temporarily totally disabled and a psychological shell of his former self. As a result, this letter was submitted requesting that he be placed on total disability because of the injuries caused by defendants' long course of retaliation against him. - This letter also is relevant to the issue of Sgt. Foraker's good faith efforts to mitigate his emotional, psychological and other injuries by seeking medical treatment. FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |
| P22 | Forensic & Law Enforcement Services, Dr. Caren DeBernardo, Psychological Consultation - Fitness for Duty of Christopher Foraker, dated 11/3/05 (D20517-45) (page__ is redacted in one paragraph as LEOBOR protected material) | Fed. R. Evid. 801 & 802 Defendants object to the use of this exhibit for purposes other than to show why the DSP Human Resources office treated Plaintiff as it did. | Notably, defendants concede relevance. FRE 801(d)(2) (admission by a party opponent) - this exhibit is a report prepared by defendants' own doctor and agent, finding that Sgt. Foraker has been psychologically destroyed by the retaliation against him in the workplace and is presently psychologically unfit for duty as a result. FRE 803(6) (business record) - this is also defendants' own business record. Defendants sent Sgt. Foraker for a psychological fitness for duty exam. This is the report of their own doctor finding him unfit for duty. Defendants cannot now try to keep their own doctor's findings out simply because they find the results unhelpful to their claims in this litigation. Nor can they limit its uses. |
| P23 | Letter from Lt. Col. MacLeish declaring Sgt. Foraker unfit for duty based on his fitness for duty evaluation with Dr. Caren DeBernardo, dated 11/21/05 (B025) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P24 | Resume of Carol A. Tavani, M.D., psychiatrist | Fed. R. Evid. 801 & 802 | The resume is being offered by the author, a person with personal knowledge, who can be cross-examined. It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P25 | Resume of Ernest B. Fini, firearms industry vocational expert | Fed. R. Evid. 801 & 802 | The resume is being offered by the author, a person with personal knowledge, who can be cross-examined. It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P26 | Resume of Jose R. Castro, vocational expert | Fed. R. Evid. 801 & 802 | The resume is being offered by the author, a person with personal knowledge, who can be cross-examined. It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P27 | Resume of Dr. Borzilleri, economic consultant | Fed. R. Evid. 801 & 802 | The resume is being offered by the author, a person with personal knowledge, who can be cross-examined. It will expedite the already lengthy trial to simply admit the resume instead of wasting time reciting it. |
| P28 | Occupational Health Audiometric Examination Report of Christopher Foraker, dated 12/5/03 (D's Combined Appendix, A773-78) | No objection. | So it is admitted. |
| P29 | Omega Medical Center and Medtox Laboratories Inc. Report of Christopher Foraker dated 3/1/04 (D's Combined Appendix, A779-85) | No objection. | So it is admitted. |
| P30 | State of Delaware First Report of Occupational Injury or Disease, signed on 3/29/04 (D's Combined Appendix, A786-88) | No objection. | So it is admitted. |
| P31 | Letter from Robin August, CNP addressed to Sgt. Foraker regarding his physical examination results, dated 3/12/04 (D's Combined Appendix, A789) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P32 | TK Group Inc. Audiometric test data for Christopher Foraker (D's Combined Appendix, A790-802) | No objection. | So it is admitted. |
| P33 | Letter from Lt. Col. MacLeish sending Sgt. Foraker for a second audiological fitness exam at Omega Medical Center, dated 5/13/04 (FTU4268; D's Combined Appendix, A803) | No objection. | So it is admitted. |
| P34 | Letter from Lt. Col. MacLeish verifying Sgt. Foraker's rescheduled appointment for diagnostic testing at Omega Medical Center, dated 5/18/04 (D's Combined Appendix, A804) | No objection. | So it is admitted. |
| P35 | Results of audiological fitness exam, dated 6/7/04 (FTU4270-74; D's Combined Appendix, A805-08) | No objection. | So it is admitted. |
| P36 | TK Group Inc. DSP Work Relatedness Determination - Extended Questionnaire Review of Christopher Foraker, review date 6/18/04 (D's Combined Appendix, A809-15) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P37 | Letter from Lt. Col. MacLeish sending Sgt. Foraker for an audiological fitness exam with Dr. Aaron Green at Health Works, dated 6/22/04 (FTU4276; D's Combined Appendix, A816) | Defendants object to Plaintiff's mischaracterization of the nature of the exam requested and performed by Dr. Green. | Defendants have failed to cite to a Federal Rule of Evidence. Accordingly their objection is improper. Therefore the document should be admitted. |
| P38 | Signed evaluation by Dr. Green of Health Works - Dover regarding Sgt. Foraker's fitness for duty assessment, dated 6/22/04 (D's Combined Appendix, A817-22) | No objection. | So it is admitted. |
| P39 | Request by Lt. Col. MacLeish to Dr. Emmett regarding Sgt. Foraker's fitness for duty as Ordinance Instructor, dated 7/21/04 (D's Combined Appendix, A823-26) | No objection. | So it is admitted. |
| P40 | Letter from Lt. Col. MacLeish sending Sgt. Foraker for a second opinion regarding his fitness for duty with Dr. Emmett, dated 9/15/04 (FTU4276; D's Combined Appendix, A827) | No objection. | So it is admitted. |
| P41 | Evaluation by Dr. Emmett of Occupational Medicine regarding Sgt. Foraker's fitness for duty assessment, dated 11/5/04 (D's Combined Appendix, A828-34) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P42 | Supervisor's Report of Investigation and Injury Report, signed by Sgt. Foraker on 7/7/04 (FTU 4277-80) | Fed. R. Evid. 401 & 402 | FRE 401-402 (relevance): - This exhibit has independent legal significance and evidentiary value.  This is part of Sgt. Foraker's protected speech and petitioning of the government regarding the adverse health effects caused by the dangerous conditions at the FTU. |
| P43 | Defendants' financial records relevant to punitive damages which are to be produced | No objection. | So it is admitted. |
| P44 | Harvard Environmental, Inc. State Police Indoor Firing Range, Smyrna, DE - Inspections, Testing, and Sample Results, dated 4/13/04 (FTU2647-2724; A2180-2257) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P45 | DSP Staff Support undated memo from Capt. Paul Cunningham to Maj. Robert Gouge regarding Range Project, Progress Report (FTU2749-52) | Fed. R. Evid. 401, 402, 403, 801 & 802 A document is not relevant merely because Plaintiffs gave it to the State Auditor. It must have been known to Defendants in order to be relevant to the alleged retaliatory motive. The exhibit is inflammatory in that it invites the jury to find against government officials in general; none of the defendants in this case had anything to do with the events in this memo. Finally, the hearsay exception identified assumes a foundation that cannot be established unless the memo's author is called to testify. | FRE 401,402 (relevance): - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. - This document tends to show that corruption, fraud and impropriety was part of the architectural and engineering selection process of the FTU. This document demonstrates that the A/E firm that was selected to build the FTU had finished last in the rankings. - Accordingly, this document tends to prove that it was not plaintiff who destroyed the FTU. Instead, the facility has been plagued with problems since its design phase. - Plaintiff has not asserted that this document is relevant to defendants' retaliatory motive. Accordingly, the defense objection on this ground is meritless.<br><br>FRE 403: - Defendants have publicly attacked and blamed plaintiff for destroying the FTU. It is not unfair or inflammatory to introduce documents that tend to prove that plaintiff was not responsible for the problems at the FTU. This is one such document. Plaintiff did not design the building. Plaintiff did not choose the A/E firm that build the building. Plaintiff had nothing to do with it.<br><br>FRE 801,802 - FRE 803(6) (hearsay exception – business record): This is an internal DSP Staff memo made in the course of regularly conducted activities of the DSP. |
| P46 | Architect Selection Short List, dated 9/18/92 (FTU2753-55) | Fed. R. Evid. 401, 402 & 403 See Defendants' Objections to P45. | See response to P45 above. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P47 | Rangtech International Corp. Recommendation for construction of the Delaware State Police Firing range (FTU2756-58; MacLeish ex. 6, A218-20) | Fed. R. Evid. 401, 402, 403, 801 & 802 A document is not relevant merely because it was given to the State Auditor. To be probative of any issue in the case, it must be a document that Defendants knew about and motivated them to retaliate. This case is not about public corruption; that would be a much longer trial with different defendants. The introduction of material from which Plaintiffs will argue public corruption will not help the jury decide the retaliation question. It will serve only to inflame the jury to find against all public officials, which Defendants are, even though neither Defendant had anything to do with the construction of the range. The exhibit is hearsay, not the product of a "regularly conducted business activity," as required by Rule 803(6). Finally, the effect of the exhibit on Plaintiffs is largely irrelevant to this case because their motivation is not at issue. | FRE 401,402 (relevance): - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. - This document tends to show that corruption, fraud and impropriety was part of the design process of the FTU. This is the document that tells the DSP that the HVAC system as designed "will inevitably fail." - tends to show that it was not plaintiffs who destroyed the FTU. Instead, the design of the HVAC system has been inadequate from the very beginning. - also relevant to the public concern nature of plaintiff's speech. This is part of the content of their speech – and this content revealed wrongdoing and mismanagement by those responsible for the design of the FTU.<br><br>FRE 403: - This case is partially about public corruption as that is the unavoidable inference of what plaintiff's speech revealed – that wrongdoing of some kind went on when the FTU was designed and that a broken facility was the result. This is the content of the First Amendment protected speech. - As the summary judgment record reveals, defendants were angry that plaintiffs had spoken out about the problems at the FTU. Regardless of whether defendants built the FTU, plaintiffs' speech brought negative media attention down on the DSP and the Governor. This then supplies defendants with a motive to retaliate. This is by no means unfair.<br><br>FRE 801,802 (hearsay exception – business record): This is defendants' own business record showing that the DSP and State of Delaware knew that the HVAC system as designed would "inevitably fail" as designed. - FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the FTU's air ventilation system. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P48 | Batta Environmental Associates, Inc. Lead Results - IAQ - DSP Smyrna Firing Range, dated 12/1/98 (FTU2759; MacLeish ex. 8, A222) | Fed. R. Evid. 401, 402, 403, 801 & 802 Defendants have never contended that Plaintiffs destroyed the firing range. See Defendants' Objections to P47. | FRE 401,402 (relevance): - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. - This document tends to show that the FTU has had serious contamination problems from shortly after it opened. Tends to show that it was not plaintiffs who destroyed the FTU. - it is the defense position in this case that plaintiffs destroyed the FTU. It is defendant Chaffinch's public trumpeting of this fact to the news media and all others willing to listen that resulted in this case being filed in the first place. The defense claim that they have never blamed plaintiffs for destroying the range is without merit. FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. FRE 801,802 - FRE 803(6) (hearsay exception – business record): This is defendants' own business record showing the FTU has had serious contamination problems from shortly after it officially opened. - FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the HVAC system at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P49 | Clark-Nexsen letter dated 4/26/1999 denying involvement in the design and discussing the changes in design process which caused problems (FTU2760-61; A2143-44) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P47. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. <br> - This document tends to show that the FTU has had serious contamination problems from shortly after it opened. Tends to show that it was not plaintiffs who destroyed the FTU. Tends to show that the DSP and the State of Delaware have known about the problems plaguing the FTU since 1999 and yet continue to falsely blame plaintiffs for causing the facility's destruction. <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. <br><br> FRE 801,802,803(6) (hearsay exception – business record): <br> - This is defendants' own business record showing the DSP and State of Delaware have known about the problems plaguing the FTU and how to fix them since 1999. <br> - FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the FTU's air ventilation problems. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |
| P50 | Memorandum from Capt. Homiak addressed to Lt. Col. MacLeish regarding Firearms Range, dated 3/4/04 (FTU2762-64; MacLeish ex. 3, A208-210) | No objection. | So it is admitted. |
| P51 | Neilson Associates Incorporated Indoor Air Quality analysis of the FTU, dated 3/21/04 (FTU2765-73) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P52 | *The News Journal* article of 4/29/99 - "Shooting range under fire for lead" (A2639-41) | Fed. R. Evid. 401, 402, 403, 801, & 802 Whether it was "widely known throughout the state" that the firing range had problems is irrelevant. In any event, a news article in 1999 does not prove the proposition. It certainly does not tend to prove Plaintiff's responsibility for what occurred in 2004. This is attorney sensationalism, which Rule 403, among other rules, is meant to prevent. | FRE 401, 402 (relevance): - This document tends to prove that defendants, the DSP and the State of Delaware and the general public have known that the FTU has had serious problems for a long time as it has long been widely reported in the media. It was widely known throughout the state that the FTU had lead and health problems for many years. Accordingly, this tends to prove that defendants had longstanding knowledge of the problems at the FTU, and thus that plaintiff was not the cause of those problems.<br><br>FRE 403: - The defense allegations do not amount to sensationalism. Defendants do not otherwise offer a 403 objection.<br><br>FRE 801,802 (non-hearsay purpose): - This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to show knowledge of the problems at the FTU by defendants, the DSP, the State of Delaware and the general public. |
| P53 | *The News Journal* article of 4/15/04 - "Firing-range tests find high levels" (FTU2872; A2376) | Fed. R. Evid. 401, 402, 403, 801, & 802 The facts of media attention and Defendants' preference that there not be so much attention are not disputed. Excessive use of sensational media coverage to prove an undisputed point is objectionable under Rule 403. Furthermore, there is nothing in this article about the Plaintiff. It is about Gloria Homer. | FRE 401, 402 (relevance): - This is relevant to defendants' motivation to retaliate against plaintiff. The problems at the FTU were receiving widespread media attention and defendants testified at their depositions that they did not like the plethora of adverse media attention they were receiving. This exhibit helps demonstrate defendants' motive for wanting to silence the plaintiff whistleblower. - this also is relevant to the public concern nature of plaintiffs' speech about problems at the FTU – the media reported on it constantly.<br><br>FRE 403: - defendants object to all of plaintiff's use of media in this case. Plaintiffs are still entitled to use and present evidence as it is significantly probative and telling of defendants' retaliatory motives to silence the whistleblowers who had caused the media to report in such great detail on the problems at the FTU.<br><br>FRE 801, 802 (non-hearsay purpose): - This is not being offered for truth of the matter asserted. This is being offered to help demonstrate defendants' motive to retaliate. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P54 | Recommendations and Design Considerations for Indoor Rifle Ranges (FTU3721-23; MacLeish ex. 4, A211-13) | Fed. R. Evid. 401, 402, 403, 801 & 802 The document is not relevant merely because it was provided to the State Auditor. Whether the DSP range meets or does not meet these "considerations" is irrelevant to the actions of Defendants, which are at issue here. | FRE 401, 402 (relevance):<br>- This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition.<br>- These documents tend to prove that plaintiffs were acting in good faith when speaking out because these are the State of Delaware's own firing range standards, which the FTU fails to meet. Defendants have attacked plaintiffs' motives for speaking out as being impure – that somehow they just wanted to make defendants look bad. This document tends to show that plaintiffs were acting in good faith.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802 (non-hearsay purpose):<br>- This is not being offered for the truth of the matter asserted. Instead, this is being offered for the effect on the listener. This exhibit was part of the investigation plaintiffs conducted into the problems at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that the State had built a defective facility that was doomed to fail – the State had not even met their own safety standards. |
| P55 | Memorandum from Sgt. Fitzpatrick addressed to Lt. Bryson regarding Range ventilation problem, dated 11/8/98 (FTU2956; MacLeish ex. 7, A221) | No objection. | So it is admitted. |
| P56 | Memorandum from Sgt. Fitzpatrick addressed to Capt. DiNetta regarding Range Ventilation, dated 12/3/98 (FTU2983-84; MacLeish ex. 9, A233-34) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P57 | Memorandum from Sgt. Fitzpatrick addressed to Capt. DiNetta regarding Range Project, dated 4/29/99 (FTU3040; MacLeish ex. 10, A235) | No objection. | So it is admitted. |
| P58 | Memorandum from Sgt. Parton addressed to Lt. Ralph Davis regarding DSP Range (undated - sometime after February 2004 based on the content of the memorandum) (FTU2774; Chaffinch ex. 2, A480) | Fed. R. Evid. 401, 402, 403, 801 & 802 This is unauthenticated, undated, multiple-level hearsay on a subject not at issue in the case. It is not an admission because the author was not in a position in which he was authorized to make statements about the range when he wrote the memo. (He was NCOIC of a different unit.) As noted elsewhere, the exhibit's effect on Plaintiffs is not relevant because their motivations are not at issue. | FRE 401,402 (relevance):<br>- This document tends to rebut the defense claim that plaintiffs destroyed the FTU and were responsible for its breakdown. This is a document from the former NCOIC of the FTU stating that the DSP's public proclamations that the FTU has never had problems are false and that the facility experienced significant problems when he was in charge of it.<br><br>FRE 403:<br>- Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802:<br>- FRE 803(6) (hearsay exception – business record): This is an internal DSP memorandum kept in the course of regularly conducted DSP activity. This is defendants' own business record.<br><br>- FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agent concerning matters within the scope of their job duties. Parton was the NCOIC of the FTU for several years. This is his memo, stating that the facility had problems under his tenure at the FTU.<br><br>- FRE 801,802 (non-hearsay purpose): This is not being offered for the truth of the matter asserted. Instead, this is being offered for the effect on the listener. This exhibit was part of the ongoing investigation plaintiffs conducted into the problems at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that the State had built a defective facility that that was far past due to be fixed and repaired. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P59 | Emails from Sgt. Patron addressed to William Waggaman regarding Lead contamination / personnel lead levels, dated 6/29/00 (FTU2775; Chaffinch ex. 2, A481) | Fed. R. Evid. 401, 402, 403, 801 & 802 The subject of this exhibit is the 2000 blood level of one employee. It is not relevant to any issue in this case. See Defendants' Objections to P58. | FRE 106 (Rule of Completeness) - this is the e-mail that was attached to PX130.<br><br>FRE 401,402 (relevance): - This document tends to rebut the defense claim that plaintiffs destroyed the FTU and were responsible for its breakdown. This document demonstrates that the facility has always experienced serious lead contamination problems – even under different commanding officers. This exhibit describes several such problems – such as blood lead levels and the source of contamination.<br><br>FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.<br><br>FRE 801,802 - FRE 803(6) (hearsay exception – business record): This is an internal DSP email made in the course of regularly DSP activity. - FRE 801(d)(2)(D) & (C) & (B) (admissions) – these are statements by defendants' authorized agent concerning matters within the scope of their job duties. - FRE 801,802 (non-hearsay purpose): This is not being offered for the truth of the matter asserted. Instead, this is being offered for the effect on the listener. This exhibit was part of the ongoing investigation plaintiffs conducted into the problems at the FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that the State had built a defective facility that that was far past due to be fixed and repaired. |
| P60 | Undated memorandum from Sgt. Ashley addressed to Major (Hughes) regarding needed repairs to Bullet Recovery System (FTU 1791; A1488) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P61 | Emails between Sgt. Foraker, Lt. Col. MacLeish, and Capt. Greg Warren regarding Emergency Range Issues, originating on 12/19/03 (FTU3881-2; MacLeish ex. 11, A226-27) | No objection. | So it is admitted. |
| P62 | Emails between Sgt. Foraker, Lt. Ralph Davis, and Capt. Greg Warren regarding Standard Operating Procedures & Issues, originating on 1/8/04 (FTU2348-49; MacLeish ex. 12, A228-29) | No objection. | So it is admitted. |
| P63 | Email from Sgt. Foraker to Capt. Greg Warren and Lt. Ralph Davis regarding Range Health Issues and Departmental Liability, dated 1/9/04 (FTU2351-52; MacLeish ex. 13, A230-31) | No objection. | So it is admitted. |
| P64 | Emails between Capt. Greg Warren and Sgt. Foraker regarding Bullet Trap Update / Air Handler, originating on 1/23/04 (FTU3886; MacLeish ex. 14, A232) | No objection. | So it is admitted. |
| P65 | Email from Sgt. Forker to Maj. Eckrich regarding Scheduled Meetings and the FTU staff's tour of the FBI Firearms Training Facility in Quantico, VA, dated 2/19/04 (FTU3894; MacLeish ex. 15, A233) | No objection. | So it is admitted. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P66 | Firearms Training Unit Indoor Range Maintenance and Service Report prepared by the FTU staff, dated 3/31/04 (FTU2593-95; MacLeish ex. 16, A234-36 | No objection. | So it is admitted. |
| P67 | Clark-Nexsen Field Investigation Report of DSP Training Facility, dated 4/19/99 (FTU1200-34; A2145-79) | Fed. R. Evid. 401, 402, 403, 801 & 802 <u>See</u> Defendants' Objections to P46-P47. | FRE 401,402 (relevance): - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiffs gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. - This document tends to show that the FTU has had serious contamination problems from shortly after it opened. Tends to show that it was not plaintiffs who destroyed the FTU. Tends to show that the DSP and the State of Delaware have known about the problems plaguing the FTU since 1999 and yet continue to falsely blame plaintiffs for causing the facility's destruction.  FRE 403: - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond.  FRE 801,802 - FRE 803(6) (hearsay exception – business record): This is defendants' own business record showing the DSP and State of Delaware have known about the problems plaguing the FTU and how to fix them since 1999. - FRE 801,802 (non-hearsay purpose): This exhibit is not being offered for the truth of the matter asserted. Instead it is being offered to demonstrate the effect on the listener – plaintiffs. These documents were part of the investigation plaintiffs conducted into the adverse health effects of the heavy metals they were being exposed to at the hazardous FTU. They help explain plaintiffs' reasoning and motives for speaking out – they believed that they and others were being poisoned. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P68 | Videotape of Bill Provencher conducting air velocity and smoke testing at the FTU (D.I. 81) | Fed. R. Evid. 401, 402 & 403<br>The exhibit is not relevant and contains comments by Provencher that are hearsay and cannot be cross-examined because he is not a witness. | FRE 401-402 (relevance).<br>A picture is worth a thousand words.  One of the things plaintiffs spoke out about was that the HVAC system was blowing air and toxins 180 degrees in the wrong direction – towards the shooters instead of away from them.  The smoke testing shown in this videotape visually demonstrates this and will be helpful to the jury's understanding of the issues.<br><br>FRE 403<br>- defendants have failed to articulate a 403 objection.<br><br>FRE 801-802 (non-hearsay purpose – effect on the listener)<br>-Again, this is being offered to demonstrate effect on the listener.  Provencher was one of the nationally renowned experts plaintiffs brought in as they investigated and tried to determine what was wrong with the facility.  His comments on the tape regarding the smoke blowing in the wrong direction and so forth are being offered to explain why plaintiffs were so worried and spoke out.  A nationally renowned expert who builds ranges for the U.S. Navy told them their facility wasn't working.  That is why they were worried.<br>- To the extent there are any extraneous comments on this, they can be controlled through effective use of the mute button. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P69 | Material Safety Data Sheet: Small Arms Ammunition - Shotshell, dated 1/2/04 (FTU2548-55; A2258-65) | Fed. R. Evid. 401, 402, 403, 801 & 802 Plaintiff's response is apparently directed towards the Price v. Chaffinch, No 04-956, case. The fact that Plaintiff might have spoken to the State Auditor is protected; not every document he may have given the Auditor is relevant to that fact or is admissible. This exhibit invites sub-trials, since, contrary to Plaintiff's allegations, the State did not refuse to provide these documents. Furthermore, it is debatable whether the composition of the bullets is toxic. Ultimately, whether the bullets are toxic or whether the State provided MSDS sheets is immaterial to any issues in this case or Price; it should be excluded. | FRE 401,402 (relevance): <br> - This exhibit has independent legal significance and evidentiary value. These are some of the documents that plaintiff Sgt. Foraker gave to the auditors. Thus, this is part of plaintiffs' protected speech and petition. It has been clear since early in discovery that Sgt. Foraker's protected speech and petition included his earlier lawsuit as well as all of his speech about the dangerous conditions and other problems at the FTU. <br> - These are some of the health and safety documents which indicate the physical composition of the bullets that are fired at the FTU. These are the documents that the State refused to provide to plaintiffs when plaintiffs were trying to figure out if they were being poisoned by inhaling the bullet residue that the HVAC system was not removing from the air. The deposition testimony of Capt. Davis, as well as plaintiffs reveals that the Department of Facilities Management of the State of Delaware refused to provide these data sheets to plaintiffs for many months. <br> - This exhibit tends to prove that plaintiffs' concerns were genuine and in good faith as these indicate the toxic composition of the bullets. They help rebut the defense claim that plaintiffs were only trying to cause trouble. <br><br> FRE 403: <br> - as discussed in the relevance section above, the defense objections in this regard are without merit as the State did in fact refuse to provide these to plaintiffs and their supervisors. <br> - Defendants cannot in good faith assert that exposure to heavy metals such as lead, copper, zinc, arsenic, nitroglycerin and other such substances can have any positive effect on the human immune system. <br><br> FRE 801-802 (non-hearsay purpose – effect on the listener) <br> - Plaintiffs suspected that the bullets they were firing were toxic. Upon review of these MSDS sheets, plaintiffs believed that their fears were genuine and spoke out even more forcefully about the hazards at the FTU. These MSDS sheets provide a portion of plaintiffs' motivations for speaking out and help demonstrate why they did so. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P70 | 2 emails dated 11/25/05 from Sgt. Foraker to Major Hughes regarding Range Committee (CF64-65) | Fed. R. Evid. 401, 402, & 403 Defendants are not contending that Foraker was incompetent or destructive, as noted elsewhere in this and other documents. Accordingly, these documents are not probative of any material fact at issue in this case. | FRE 401-402 (relevance): <br> - These exhibits tend to prove that Sgt. Foraker was not responsible for the problems at the FTU. They are Sgt. Foraker's e-mail replies to Major Hughes' request that Sgt. Foraker serve on the committee responsible for fixing the problems at the FTU. If Sgt. Foraker was as incompetent and destructive as defendants allege, he would not have been invited to serve on the committee charged with fixing the facility. Instead, he would have been brought up on charges. <br> - Again, it is defendants' public newspaper and other attacks on Sgt. Foraker's competency (among other things) that caused this lawsuit. <br><br> FRE 403: <br> - Defendants have not specified the 403 grounds on which they have objected. When defendants do specify the grounds, plaintiffs will be able to respond. |
| P71 | Various photographs of the Range to be designated from a CD to be provided to defense counsel | Fed. R. Evid. 403 Defendants object that many of the pictures Plaintiffs have produced are not accurate representations of the scenes or events at the time relevant to this lawsuit. | FRE 403: <br> - defendants misunderstand the purpose that some of these pictures will be used for. The FTU is a multimillion dollar facility filled with complex and highly technical and mechanical equipment. The size of the facility, complexity of the equipment involved, etc…. all help demonstrate that plaintiffs – who are mere firearms instructors – could not possible have been responsible for maintaining this equipment or responsible for the destruction of the massive facility. <br> - additionally, it took defendants more than a page of their summary judgment briefs to describe the bullet-trap. As the saying goes – 'a picture is worth a thousand words.' Plaintiffs hope that several pictures of the facility will help the jury better understand the issues about which they will hear approximately two weeks of testimony. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P72 | Sgt. Foraker's, Eddie Cathell's, and other workers' series of quarterly lead level blood tests results (Cathell - P's Exhibit 21 from <u>Foraker v. Chaffinch, et al.</u>, C.A.No. 02-302-JJF (D.Del.)) | Fed. R. Evid. 401, 402, & 403 These documents are not probative of any issue in this case. They are also misleading because they pre-date the 2001 change to frangible ammunition. Accordingly, they invite litigation of the causes and effects of the ammunition change that are tangential. | FRE 401-402 (relevance):<br>- This exhibit tends to prove that there have been longstanding problems with blood lead levels at the FTU and thus that Sgt. Foraker was not the cause of those problems.<br><br>FRE 403:<br>- The FTU has always been a dangerous place to work, no matter what ammunition was used there. This does not invite a mini-trial. Instead, it is one of the key issues in this case. |
| P73 | Complaint and Answer ¶ 3 | Fed. R. Evid. 403 Any reference to Plaintiff as a section chief would be either confusing or incorrect. Defendants have not admitted that Plaintiff is or was a Section Chief, as that term is used to identify troopers of particular status who are responsible for a specific DSP unit formally known as a "Section." Rather, Defendants have acknowledged only that Foraker was in charge of a group of troopers, which one might colloquially refer to as a section. Plaintiff recognizes this confusion of terms as evidenced by his including the question of his official status as a contested question of fact. | Defendants explicitly admitted in their Answer that Sgt. Foraker was a Section Chief. Numerous witnesses – including members of their own Executive Staffs – also have testified to this fact. This belated claim that Sgt. Foraker is not a section chief is merely a litigation strategy intended to avoid liability. But defendants cannot run from the deposition testimony. In the same way, they cannot and should not be allowed to run away from their own words which they admitted to in their Answer without any qualification. Plaintiff initially shaped his discovery around what facts were being contested by defendants in this case. That Plaintiff was a Section Chief was not such a contested fact because defendants freely admitted it without qualification or reservation. Allowing defendants to belatedly withdraw such an admission prejudices plaintiff.<br><br>- Given defendants' ever-shifting positions in this case, out of an abundance of caution, plaintiff included this issue in the contested issues of fact. That does not diminish the fact that defendants previously admitted to this. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P74 | Complaint and Answer ¶ 11 | Fed. R. Evid. 403 Defendants object to Plaintiff's attempt to use inflammatory and unnecessary descriptions of the earlier lawsuit, which Rule 403 is meant to prevent. | Defendants freely admitted to this in their Answer, no doubt because this paragraph fairly and accurately presents the jury's findings against Chaffinch in plaintiff's first case. The use of defendants' own admissions can hardly be characterized as inflammatory or prejudicial. |
| P75 | Complaint and Answer ¶ 12 | Fed. R. Evid. 401, 402, & 403 Plaintiff's claims of retaliation in this case concern his exercise of First Amendment rights. Any reference to the existence or terms of a Stipulated Order is not relevant to those questions. | FRE 401-402 (relevance) - this is an undisputed fact. Sgt. Foraker's first case (which is a portion of his protected activity) concluded with a settlement agreement and stipulated order. This agreement and order are part of Sgt. Foraker's protected activity. - these issues are absolutely relevant as they tend to prove causation as well as malice of defendant Chaffinch.  FRE 403 - defendants have failed to articulate a 403 objection. Accordingly, it is waived. |
| P76 | Complaint and Answer ¶ 13 | Fed. R. Evid. 401, 402 & 403 Plaintiff's claims of retaliation in this case concern his exercise of First Amendment rights. The reference to the existence of another agreement between the parties is not relevant to the constitutional questions raised by Plaintiff. | FRE 401-402 (relevance) - that defendants agreed not to retaliate against Sgt. Foraker and then breached that agreement following his reinstatement is in fact the key issue in this case.  FRE 403 - defendants have failed to articulate a 403 objection. Accordingly, it is waived. |
| P77 | Complaint and Answer ¶ 14 | Fed. R. Evid. 403 This exhibit is duplicative of P80. | This is not duplicative of P80. The different terms of the defense admissions speak for themselves. |
| P78 | Complaint and Answer ¶ 15 | See Defendants' Objections to P75. | See response to P75 above.  That defendants violated the plain terms of the settlement agreement is very relevant to this case. Violations of rules, laws and contracts is evidence of illicit intent and causation. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P79 | Complaint and Answer ¶ 16 | <u>See</u> Defendants' Objections to P75. | See response to P75 and P78 above. |
| P80 | Complaint and Answer ¶ 17 | No objection. | So it is admitted. |
| P81 | Complaint and Answer ¶ 32 | No objection. | So it is admitted. |
| P82 | Complaint and Answer ¶ 41 | Fed. R. Evid. 403 The reference in the pleadings to media tours is misleading in its failure to identify the dates of each tour at which the individual Defendants were present. | FRE 403 - Again, defendants previously admitted to this. - But defendants are free to explain during their time on the witness stand which tours they were present for and for which tours they stayed at headquarters. |
| P83 | Complaint and Answer ¶ 58 | Fed. R. Evid. 403 Any reference to Plaintiff as a section chief would be either confusing or incorrect. Defendants have not admitted that Plaintiff is or was a Section Chief, as that term is used to identify troopers of particular status who are responsible for a specific DSP unit formally known as a "Section." Rather, Defendants have acknowledged only that Foraker was in charge of a group of troopers, which one might colloquially refer to as a section. Plaintiff recognizes this confusion of terms as evidenced by his including the question of his official status as a contested question of fact | Defendants explicitly admitted in their Answer that Sgt. Foraker was a Section Chief. Numerous witnesses – including members of their own Executive Staffs – also have testified to this fact. This belated claim that Sgt. Foraker is not a section chief is merely a litigation strategy intended to avoid liability. But defendants cannot run from the deposition testimony. In the same way, they cannot and should not be allowed to run away from their own words which they admitted to in their Answer without any qualification. Plaintiff initially shaped his discovery around what facts were being contested by defendants in this case. That Plaintiff was a Section Chief was not such a contested fact because defendants freely admitted it without qualification or reservation. Allowing defendants to belatedly withdraw such an admission prejudices plaintiff. - Given defendants' ever-shifting positions in this case, out of an abundance of caution, plaintiff included this issue in the contested issues of fact. That does not diminish the fact that defendants previously admitted to this. |

| Plaintiff's Exhibit No. | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| P84 | Complaint and Answer ¶ 68 | Fed. R. Evid. 401, 402 & 403 The reference in the pleadings to the experience of one former trooper is irrelevant to the material issues in this case. Plaintiff's own "expert" concludes that Plaintiff would not be a candidate for a vice-president position in the firearms industry. | FRE 401-402 (relevance); 403 - that the position plaintiff held at the FTU has been a jump off point for Troopers into lucrative positions in the firearms industry is very relevant to the issues of damages and injuries that plaintiff has suffered. The defense admission of this tends to demonstrate that Troopers who held plaintiff's position tend to get lucrative jobs in the private sector. |
| P85 | Backup data for special damages (to be supplied) | | |

Draft.13

**Schedule (c)(2)**
**Plaintiff's**
**Demonstrative Evidence and Experiments**

| Plaintiff's Exhibit Number | Description | Defendant's Basis for Objection | Plaintiff's Response to Objection |
|---|---|---|---|
| A | Courtboard enlargements of any numbered exhibits. | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| B | Courtboard chart - Admissions by Superior Officers that Sgt. Foraker is a Good Trooper | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| C | Courtboard chart - Suggestive Temporal Sequence of Events. | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

| | | |
|---|---|---|
| D | Courtboard list - Defamatory Statements in the Delaware State News article of 4/7/04 | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| E | Courtboard list - List of Adverse Actions Against Sgt. Foraker | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| F | Courtboard chart - Chaffinch and MacLeish's Admissions of False Blame | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| G | Courtboard chart - Defendants' Open Vendetta Against Sgt. Foraker | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| H | Courtboard chart - The 8 categories of Causation. | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

| | | | |
|---|---|---|---|
| I | Courtboard list - Sgt. Foraker's symptoms according to Dr. Tavani's Psychological Report and Testimony | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| J | Courtboard list - Sgt. Foraker's symptoms according to Dr. DeBernardo's Psychological Report | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |
| K | Courtboard chart - A Sample of FTU Problems | Defendants reserve their objections until they have had an opportunity to review the substance of the proposed exhibit. | |

Foraker2\Pretrial/Schedule(c)(2)Plaintiff.draft 3

**Schedule (e)**

**Plaintiff's Expert Witness Qualifications**

1.        Thomas C. Borzilleri, Ph.D. of Bethesda, MD will testify on economic losses.  His

résumé is also being admitted into evidence.  Based on his knowledge, skill, experience, training,

education, a review of the applicable literature, a review of relevant portions of the documents

generated in connection with this case, and his interviews with plaintiff, he will testify as set forth in the

attached report dated October 28, 2005.

This report may be supplemented if any additional pertinent information becomes available

before trial.

Background:

His resume is being offered into evidence.  He is an economist and holds a Doctor's, Master's

and  Bachelor's Degrees in Economics from the University of Maryland.  As an economist he is

experienced in the present value of lost earnings, the present value of lost pensions, wage growth rates,

interest rates, discount rates, changes in the economy, productivity, and other economic matters.

His work history includes being the Chief economist with the American Association of Retired

Persons (the AARP), in Washington D.C. until 1978 and the receipt of his Ph.D. Degree.  Then he was

self-employed for the next six years, primarily working in the areas of Social Security, Medicare, and

Medicaid for organizations interested in those subjects.  The President's Commission on Pension Policy

retained him for several studies, as did the United States Senate, the AARP and the National

Association of Retired Federal Employees.  From 1985 to 1990 he also was employed by J.W. Wilson

& Associates where he would analyze financial statements involving public utility rate increases.  He has

been self employed since 1990.

He has testified in court proceedings over 700 times in both federal and state courts. He has testified in federal court here in Delaware, and in Washington, D.C.; Houston, Texas,; Alexandria, VA; and Baltimore, MD. No federal or state court has ever rejected him as an expert witness on any subject for which he has been offered.

[attach here his report]

2.     Mr. Ernest O. "Bud" Fini, Jr.  of Boothwyn, PA will testify on the previous likelihood that plaintiff would be hired in the firearms industry upon his retirement from the DSP, how he would have been expected to progress within the firearms industry, and the typical compensation he would have been expected to receive.

Based on his knowledge, skill, experience, training, and education, a review of relevant portions of the documents generated in connection with this case, and his interviews with plaintiff, he will testify as set forth in the attached report dated October 28, 2005.

This report may be supplemented if any additional pertinent information becomes available before trial.

Background:

Mr. Bud Fini has spent over 30 years in the firearms business in various capacities, which is set forth in a resume which is being offered into evidence.  Particular emphasis has been in the marketing programs of major firearms corporations, such as Remington Arms Co., Smith & Wesson Corporation, SigArms, O.F. Mossberg & Sons, Savage Arms, Inc., and Heckler & Koch.  Each of these companies has specific divisions dealing with the development, manufacture, marketing and sale of law enforcement firearms and related products.  In practically every position in which he has served, he has been directly involved with the hiring of key personnel for various positions within the company.

[attach here the report]

3.      Mr. Jose R. Castro of Edgemont, PA will testify on vocational issues, and in particular, the impact on the future earnings capacity of plaintiff by the defendants' actions.  His résumé is also being admitted into evidence.  Based on his knowledge, skill, experience, training, education, a review of the applicable literature, a review of relevant portions of the documents generated in connection with this case, and his interviews with Mr. Fini, he will testify as set forth in the attached report dated October 28, 2005.

This report may be supplemented if any additional pertinent information becomes available before trial.

<u>Background</u>:

Jose Castro has been a Vocational Consultant and Disability Analyst for over 35 years.  He has a Masters Degree in Vocational Rehabilitation Counseling and obtained the designation as a Certified Rehabilitation Counsel in 1973.  He originally started his career as a Vocational Rehabilitation Counselor with the State of Florida and served 14 years assisting disabled clients to return to the work force.  He provided Vocational Counseling, testing, assistance with training and actual job placement.

In 1983, Mr. Castro began working in the private sector, primarily with Worker's Compensation Carriers, to establish earning capacities for injured workers.  He moved to the Delaware Valley area in 1985, where his work gravitated toward Forensic Rehabilitation.  It was in this capacity that he began working towards and establishing credentials so as to be accepted by the Judicial community as a Vocational Expert.  He currently holds four professional certifications and four licenses that have allowed him to be qualified as a Vocational Expert Witness in Federal, Superior and Family courts in Pennsylvania, Delaware and New Jersey as well as in Worker's Compensation venues in these same geographic boundaries.  The crux of his current job duties and primary expertise is to

provide Vocational Assessments to establish a person's current wage earning capacity and to compare it to their pre-injury/pre-event earning capacity.

[attach here the report]

4.      Carol A. Tavani, M.D. of Christiana Psychiatric Services, in Christiana, DE will testify on medical and psychiatric issues.  Her  résumé is also being offered into evidence.  Based on her knowledge, skill, experience, training, education, a review of the applicable literature, a review of relevant portions of the documents generated in connection with this case, and her interviews with plaintiff, he will testify as set forth in the attached report dated September 13, 2005.

This report may be supplemented if any additional pertinent information becomes available before trial, such as the medical reports of the psychiatrist and psychologist who saw plaintiff for the defense.

Background:

Dr. Tavani is a Board certified neuropsychiatrist.  She also is experienced in internal medicine and emergency medicine.  Her medical degree is from Thomas Jefferson University in Phila. PA.  She is past president of the Medical/Dental staff of Christiana Care Health Systems, essentially the chief of staff at the Christiana Hospital.  She is a past president of the Medical Society of Delaware and past president of the State Psychiatric Society.  She is the chairperson of the Physicians' Health Committee which helps sick and impaired physicians, and she also is the psychiatric consultant for the Professional Guidance Committee of the Delaware Bar Association, which helps sick and impaired lawyers.  She is the Delaware Delegate to the American Medical Association, where she also has served as the vice-president of the Organization of State Medical Association Presidents, a group of only 12 of over 500 delegates.   She is a distinguished Life Fellow of the American Psychiatric Association.

The bulk of what she does is a clinical, patient-related medical practice.  Here since the mid-1980s she has served as the principal psychiatrist who provides consultation for the medical-surgical beds at Christiana Hospital.  There she conducts about 1,500 consultations per year at that hospital

dealing mainly with critical care pharmacology and drug interactions.  For example, if a patient with

cancer is depressed and is on 20 different medications, she will consult to determine the medicine

compatible with a patient's conditions to treat that depression.

Since 1989 she also has operated a private practice where she also sees some of the same

patients who she treated when they were admitted to the hospital.

She has testified in state and federal courts on medical and psychiatric issues. No federal or

state court has ever rejected her as an expert witness on any subject for which she has been offered.

[attach here the report]

Foraker2\Pre-Trial\ Schedule (e) P's ExpertWitnessQualifications draft 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **SERGEANT CHRISTOPHER D. FORAKER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLONEL L. AARON CHAFFINCH,** | : | **C.A.No.04-1207-GMS** |
| **individually and in his official capacity as** | : | |
| **Superintendent of the Delaware State Police;** | : | |
| **LIEUTENANT COLONEL THOMAS F.** | : | |
| **MACLEISH, individually and in his official** | : | |
| **capacity as Deputy Superintendent of the** | : | |
| **Delaware State Police; DAVID B. MITCHELL,** | : | |
| **in his official capacity as the Secretary of the** | : | |
| **Department of Safety and Homeland Security of** | : | |
| **the State of Delaware; and DIVISION OF STATE** | : | |
| **POLICE, DEPARTMENT OF SAFETY AND** | : | |
| **HOMELAND SECURITY, STATE OF** | : | |
| **DELAWARE,** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFF'S PRELIMINARY JURY INSTRUCTIONS

## INTRODUCTION

Members of the jury: Now that you have been sworn, I am now going to give you some

preliminary instructions to guide you in your participation in the trial.

## THE PARTIES AND THEIR CONTENTIONS (Plaintiff's Version)

Before I begin with those instructions, however, allow me to give you an overview of who the

parties are and what each contends.

The parties in this case are the plaintiff, Sgt. Christopher D. Foraker, and the defendants,

Colonel Thomas F. MacLeish and retired Colonel Aaron L. Chaffinch, both of the Delaware State

Police.  The Division of State Police within the Department of Homeland Security of the State of Delaware is not a party to this lawsuit.

In this case Sgt. Foraker contends that after he obtained a jury verdict and judgment in this court and was returned by court order to his old job, the two individual defendants violated his constitutional rights when in retaliation they set out to drive him from his employment by taking various adverse actions against him.  The defendants deny all claims raised against them.

## THE PARTIES AND THEIR CONTENTIONS (Defendants' Version)

The parties in this case are the plaintiff, Sgt. Christopher D. Foraker, and the defendants, L. Aaron Chaffinch, the retired Superintendent of the Delaware State Police, Thomas F. MacLeish, currently the Superintendent, and David B. Mitchell, Secretary of Safety and Homeland Security for the State of Delaware.

In this case, the plaintiff contends that, in retaliation for filing a lawsuit against Defendant Chaffinch in 2002, the defendants took adverse action against him, including defaming him and invading his privacy.

The defendants deny plaintiff's claims.  Rather, they contend that the actions they took against plaintiff were too insignificant to violate the Constitution.  Defendants also contend that the actions they took were reasonable and necessary to protect the plaintiff, the State police, and the public.  Lastly, the defendants contend that any comments they made about the plaintiff were true statements that cannot be considered to have harmed the plaintiff.

## DUTIES OF THE JURY

So, let me begin with those general rules that will govern the discharge of your duties as jurors

in this case.

It will be your duty to find from the evidence what the facts are. You and you alone will be the judges of the facts. You will then have to apply to those facts to the law as I will give it to you both during these preliminary instructions and at the close of the evidence. You must follow that law whether you agree with it or not. In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the parties mean. Of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything that I may say or do during the course of the trial influence you. Nothing that I may say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

## EVIDENCE

The evidence from which you will find the facts will consist of the testimony of witnesses; (the testimony of witnesses consist of the answers of the witnesses to questions posed by the attorneys or the court – you may not ask questions). Evidence will also consist of documents and other things received into the record as exhibits, and any facts that the lawyers agree to or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now.

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.      Testimony that the court has excluded or told you to disregard is not evidence and must not be considered.

4.      Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded.  You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of the fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  As a general rule, the law makes no distinction between these two types of evidence, but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.

## CREDIBILITY OF WITNESSES - WEIGHING CONFLICTING TESTIMONY

You are the sole judges of each witness' credibility.  You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness'

biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and the circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

## SUMMARY OF APPLICABLE LAW

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements which plaintiff must prove to make his case.

### First Amendment Retaliation

To prevail on his claim of retaliation, Sgt. Foarker must prove by a preponderance of the evidence that either individual defendant intentionally violated his protected First Amendment rights and this violation was a substantial or motivating cause of adverse action taken against him.

He must prove that he was the victim of adverse action that would deter a person of ordinary firmness from engaging in protected activity under the First Amendment. Put another way, the retaliatory actions must be sufficient to cause reasonably hardy persons to refrain from exercising their rights under the First Amendment.

If, on the other hand, he cannot prove this then, then you must return a verdict for the defendants.

**Defamation (Plaintiff's Version):**

Defamation is a communication that tends to injure a person's reputation in the ordinary sense of that word; that is, some statement or action that diminishes the esteem, respect, goodwill, or confidence in which the person is held and tends to cause bad feelings or opinions about the person. A communication is defamatory if it tends to lower the person in the estimation of the community or if it deters third parties from associating or dealing with the person defamed. For a defamation to occur the defamatory information must be communicated to someone other than the person to whom it refers. In the law, this is known as publication.

To prevail on his defamation claim, Sgt. Foraker must prove by a preponderance of the evidence that a defendant defamed him and that the defamation was published. If he does this you must return a verdict for him. If he does not prove these elements then your verdict must be for the defendants.

**Defamation (Defendants' Version):**

Defamation is a communication that tends to injure a person's reputation in the ordinary sense of that word; that is, some statement or action that diminishes the esteem, respect, goodwill, or confidence in which the person is held and tends to cause bad feelings or opinions about the person. A communication is defamatory if it tends to lower the person in the estimation of the community or if it deters third parties from associating or dealing with the person defamed. For a defamation to occur the defamatory information must be communicated to someone other than the person to whom it refers. In the law, this is known as publication.

In this case, Plaintiff Foraker must prove that Defendants' statements were false. Plaintiff must

-6-

also prove that Defendants made the allegedly defamatory statements with knowledge that the statements were false or with reckless disregard for whether they were false. In other words, Plaintiff must prove by clear and convincing evidence - a burden greater than the "preponderance of the evidence" - that Defendants "in fact entertained serious doubts about the truth" of their statements.

**False Light Invasion of Privacy**

Plaintiff also has filed another claim against the defendants under state law for violation of his right to privacy by casting him in a false light.

One who publicizes a matter concerning another person and places that person before the public in a false light is responsible to that person for any harm suffered as a result of this publicity if similar publicity about a reasonable person would be highly offensive to a reasonable person and if the person giving the publicity knew the matter was false or recklessly disregarded whether it was false.

To prevail on his claim of false light invasion of privacy, Sgt. Foraker must prove by a preponderance of the evidence that (a) a defendant placed him before the public in a false light in a way which would be highly offensive to a reasonable person, and (b) the defendant knew the mater was false or recklessly disregarded whether it was false. If he proves these elements you must return a verdict for him. If he does not prove these elements then your verdict must be for the defendants.

<u>**BURDEN OF PROOF**</u>

As I told you during the voir dire, this is a civil case. Here Sgt. Foraker has the burden of proving his case by what is called a preponderance of the evidence. That means he has to produce evidence which, considered in the light of all the facts, leads you to believe that what he claims is more

likely true than not.  To put it differently, if you were to put the plaintiff's and the defendant's evidence on opposite sides of the scale, the evidence supporting the plaintiff, Sgt. Foraker, would have to make the scale tip somewhat on his side.  If he fails to meet this burden, the verdict must be for the defendants.  Sgt. Foraker must also prove his damages by a preponderance of the evidence.

Those of you who have sat on  criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case, therefore, you should put it out of your mind.

## CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you nor you with them.  In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided.  If anyone should try to talk to you about it, bring it to the court's attention promptly.

Second, do not read or listen to anything touching on this case in any way.

Third, do not try to do any research or make any investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

During the trial, I will permit you to take notes.  A word of caution is in order.  There is always a tendency to attach undue importance to matters which one has written down.  Some testimony which

is considered unimportant at the time presented, and thus not written down, take on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceeding or a list of the highlights of the trial.  Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

So, if you do take notes, leave them in your seat at the end of the day, and my Deputy will collect them and return them to your seat the next day.  And, remember that they are for your own personal use.

I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

## COURSE OF THE TRIAL

This trial, like most jury trials, comes in seven stages or phases.  We have now completed the first two phases  –  your selection as jurors and these preliminary instructions  The remaining stages are:

(3)     Opening statements which are intended to explain to you what each side intends to prove and are offered to help you follow the evidence.  The lawyers are not required to make opening statements at this time or they may defer this opening until it is their turn to present evidence.

(4)     The presentation of the evidence which will include live witnesses and may also include previously recorded testimony, as well as documents and things;

(5)     My final instructions on the law to you;

(6)     The closing arguments of the lawyers which will be offered to help you make your

determination; and finally,

(7)     Your deliberations where you will evaluate and discuss the evidence among yourselves

and determine the outcome of the case.

Please keep in mind that evidence is often introduced somewhat piecemeal.  So, as the

evidence comes in, you as jurors need to keep an open mind.

We will begin shortly, but first I want to outline the anticipated schedule of the trial.

**TRIAL SCHEDULE**

Though you have heard me say this during the voir dire, I want to again outline the schedule I

expect to maintain during the course of this case.

This case is expected to take 5 days to try.  We will normally begin the day at 9:00 A.M.

promptly.  We will go until 1:00 P.M. and, after a one hour break for lunch, from 2:00 P.M. to 4:30

P.M.  There will be a fifteen minute break at 11:00 A.M., and another fifteen minute break at 3:15

P.M.  The only significant exception to this schedule may occur when the case is submitted to you for

your deliberations.  On that day, the proceedings might last beyond 4:30 P.M.  We will post a copy of

this schedule for your convenience in the jury deliberation room.

Foraker.2/prayers/preliminary jury instructions draft 4

-10-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SERGEANT CHRISTOPHER D. FORAKER,  :
                                  :
       Plaintiff,  :
                                    :
   v.  :
                                    :
COLONEL L. AARON CHAFFINCH,  :     C.A. No. 04-1207-GMS
individually and in his official capacity as  :
Superintendent of the Delaware State Police;  :
LIEUTENANT COLONEL THOMAS F.  :
MACLEISH, individually and in his official  :
capacity as Deputy Superintendent of the  :
Delaware State Police; DAVID B. MITCHELL,  :
in his official capacity as the Secretary of the  :
Department of Safety and Homeland Security of  :
the State of Delaware ; and DIVISION OF  :
STATE POLICE, DEPARTMENT OF SAFETY  :
AND HOMELAND SECURITY, STATE OF  :
DELAWARE,  :
                                    :
       Defendants.  :

## THE PARTIES' JOINT PROPOSED JURY INSTRUCTIONS

1.     Where the parties have agreed upon an instruction, the title of the joint proposed instruction is preceded without either a "P" or "D."

2.     Where the parties have not been able to agree upon an instruction, each party has attached their proposed instructions hereto.  The defendants' instruction is labeled as a "D."  The plaintiff' proposed instruction is labeled as a "P."

**THE NEUBERGER FIRM, P.A.**
Thomas S. Neuberger, Esquire (#243)
Stephen J. Neuberger, Esquire (#4440)
Cheryl A. Sasadeusz, Esquire
Two East Seventh Street, Suite 302
Wilmington, Delaware  19801
(302) 655-0582

**MARTIN D. HAVERLY, ATTORNEY AT LAW**

**MARTIN D. HAVERLY, ESQ. (#3295)**
Two East Seventh Street, Suite 201
Wilmington, DE 19801
(302) 654-2255

Attorneys for Plaintiff

**MONTGOMERY McCRACKEN WALKER &
RHOADS, LLP**

**EDWARD T. ELLIS, ESQ. (*admitted pro hac vice*)**
**ROBERT FITZGERALD, ESQ. (*admitted pro hac vice*)**
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500

**NOEL C. BURNHAM, ESQ. (#3483)**
**RICHARD M. DONADLSON, ESQ. (#4367)**
300 Delaware Avenue, Suite 750
Wilmington, DE 19801
(302) 504-7840

Attorneys for Defendants

1. INTRODUCTION ................................................................................................................... 1

2. PROVINCE OF THE COURT AND JURY ........................................................................... 2

3P. THE PARTIES AND THEIR CONTENTIONS ................................................................... 3

3D. THE PARTIES AND THEIR CONTENTIONS ................................................................... 4

4P. EVIDENCE ......................................................................................................................... 5

4D. EVIDENCE .......................................................................................................................... 7

4D(A). STATEMENTS OF COUNSEL ...................................................................................... 9

5. DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................................................. 10

6. OBJECTIONS - RULINGS ON EVIDENCE ...................................................................... 11

7. CREDIBILITY OF WITNESSES ........................................................................................ 12

8. NUMBER OF WITNESSES AND EVIDENCE .................................................................. 14

9. EXPERT WITNESSES ......................................................................................................... 15

10. DEPOSITION OR PRIOR TESTIMONY .......................................................................... 16

11. EVIDENCE - CHARTS AND SUMMARIES .................................................................... 17

12. VERDICT BASED ON EVIDENCE ................................................................................... 18

13. BURDEN OF PROOF .......................................................................................................... 19

14P. RETALIATION FOR FIRST AMENDMENT ACTIVITY ............................................. 20

14D. ESSENTIAL ELEMENTS OF PLAINTIFF' CLAIMS ................................................... 21

15P. DEFAMATION - STATE LAW ....................................................................................... 23

15D. DEFAMATION .................................................................................................................. 24

15D(A). TRUTH OR SUBSTANTIAL TRUTH AS A DEFENSE .......................................... 25

16. INVASION OF PRIVACY -  STATE LAW ....................................................................... 26

16D. INVASION OF PRIVACY ................................................................................................ 27

17. INJURIES - CAUSATION .................................................................................................. 28

18. COMPENSATORY DAMAGES ........................................................................................ 29

19. PUNITIVE DAMAGES ...................................................................................................... 31

20. EFFECT OF INSTRUCTIONS AS TO DAMAGES ......................................................... 33

21. DELIBERATION AND VERDICT ..................................................................................... 34

22. DUTY TO DELIBERATE ................................................................................................... 35

23. UNANIMOUS VERDICT ................................................................................................... 36

24. COURT HAS NO OPINION ............................................................................................... 37

## 1.     INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say. [1]

---

[1] These undisputed prayers were given by Judge Sleet in the trial of <u>Springer v Henry</u>, 435 F3d 268 (3d Cir. 2006).

## 2.     PROVINCE OF THE COURT AND JURY

Members of the Jury, in a case such as this, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, by a preponderance of the evidence, the defendants are liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 3P.     THE PARTIES AND THEIR CONTENTIONS

The parties in this case are the plaintiff, Sgt. Christopher D. Foraker, and the defendants, Colonel Thomas F. MacLeish and retired Colonel Aaron L. Chaffinch, both of the Delaware State Police.  The Division of State Police within the Department of Homeland Security of the State of Delaware is not a party to this lawsuit.

In this case Sgt. Foraker contends that after he obtained a jury verdict and judgment in this court and was returned by court order to his old job, the two individual defendants violated his constitutional rights when in retaliation they set out to drive him from his employment by taking various adverse actions against him.  The defendants deny all claims raised against them.

3

## 3D.    THE PARTIES AND THEIR CONTENTIONS

The parties in this case are the plaintiff, Sgt. Christopher D. Foraker, and the defendants, L. Aaron Chaffinch, the retired Superintendent of the Delaware State Police, Thomas F. MacLeish, currently the Superintendent, and David B. Mitchell, Secretary of Safety and Homeland Security for the State of Delaware.

In this case, the plaintiff contends that, in retaliation for filing a lawsuit against Defendant Chaffinch in 2002, the defendants took adverse action against him, including defaming him and invading his privacy.

The defendants deny plaintiff's claims. Rather, they contend that the actions they took against plaintiff were too insignificant to violate the Constitution. Defendants also contend that the actions they took were reasonable and necessary to protect the plaintiff, the State police, and the public. Lastly, the defendants contend that any comments they made about the plaintiff were true statements that cannot be considered to have harmed the plaintiff.

## 4P.     EVIDENCE

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose - such as for the purpose of assessing a witness' credibility - you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

To constitute evidence, exhibits must be received in evidence.

Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen. [2]

---

[2] These undisputed prayers were given by Judge Sleet in the trial of <u>Springer v Henry</u>, 435 F3d 268 (3d Cir. 2006).

## 4D.    EVIDENCE

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony was received for a limited purpose - such as for the purpose of assessing a witness' credibility - you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

To constitute evidence, exhibits must be received in evidence.

Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

7

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

*During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.*

Sample Miscellaneous Jury Instructions (GMS) (Rev: 1/18/06), available at http://www.ded.uscourts.gov/GMSmain.htm.

## 4D(A). STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent with the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the true or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

Sample Miscellaneous Jury Instructions (GMS) (Rev: 1/18/06), available at http://www.ded. uscourts.gov/GMSmain.htm.

## 5.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness who observed firsthand what occurred and which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, it would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. It is the inference of one fact from another fact that has been proved. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You are instructed that circumstantial evidence, as I have just defined it, is no different in its effect from direct evidence.  Both forms of evidence are equally valid and may form the basis for your determination.

It is your job to decide how much weight to give the direct and circumstantial evidence. You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. The law makes no distinction between the weight that you should give to either one.  Nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 6.     OBJECTIONS - RULINGS ON EVIDENCE

From time to time during the trial I have been called upon to make rulings of law on objections or motions made by the lawyers.  It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  You should not show prejudice against an attorney or his client because the attorney has made objections.  You should not infer or conclude from any ruling or other comment I have made that I have any opinions on the merits of the case favoring one side or the other.  And if I sustained an objection to a question that went unanswered by the witness, you should not draw any inferences or conclusions from the question itself.

## 7.    CREDIBILITY OF WITNESSES

As jurors and the triers of fact, it is your sole and exclusive responsibility to pass upon the credibility of the witnesses and the weight of the evidence.  By credibility, I mean the believability of every witness.  In performing this function, you should consider any bias or prejudice shown by the witness, their candor, that is, their straightforwardness, their degree of intelligence, their demeanor, what they may have to gain from this litigation, whether they were certain or uncertain about their testimony, whether the witness has on a prior occasion said something different from what the witness says now, the reason that witness gives, if the witness gives a reason, for the difference, any conscious, false statement made by the witness, the overall circumstances surrounding the testimony given by each witness in the context of this case as well as all other facts and circumstances that are in evidence which tend to affect the credibility of each witness.

Simply, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at another time the witness said or did something, or failed to say or do something that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find that a person has knowingly and willfully given false testimony concerning a material fact in this case, about which the witness could not have been mistaken, then you may be justified in rejecting all the testimony of that person in any respect or give it such credibility

12

as you may think it deserves. Testimony that is obviously incredible may be disregarded completely.

This does not mean that if you find that a person has willfully given false testimony as to a material fact, you must reject all of that person's testimony, but rather that you may infer from that fact that the balance of the person's testimony, which is not corroborated by other evidence, may likewise be false, and therefore, is entitled to little or no weight.

If you find the testimony in conflict, then it is your duty to reconcile it, if you reasonably can. If you cannot do this, then it becomes your duty to give regard to that portion of the testimony that, in your opinion, is most worth credit. In so doing, you should consider the appearance of the witnesses as they testified before you, their fairness in giving their testimony, and you should consider any bias or interest that they may have in the outcome of this proceeding, and their opportunities of knowing or learning the facts about which they have testified.

### 8.     NUMBER OF WITNESSES AND EVIDENCE

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters at issue in this trial.  Nor does the law require any party to produce as exhibits all paper, documents, or objects mentioned in the evidence of the case.

## 9.     EXPERT WITNESSES

There has been an expert witnesses brought to testify before you.  Expert testimony is the testimony of persons who are skilled in some art, science, profession or business, which skill or knowledge is not common and which has come to such expert by reason of special study or experience in such art, science, profession or business.  The value of such testimony depends on the learning and skill of the expert and varies with the circumstances of each case.  The jury should take into consideration the expert's means of knowledge and the reasons he or she has assigned for the opinions that he has given and give credence to his testimony as the jury may find the expert's qualifications sufficient and his reasons satisfactory.  If you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.  The testimony of an expert is to be considered like any other testimony and is to be tried by the same tests and should receive just as much weight and credit as the jury may deem it to be entitled in connection with all the evidence of the case.

## 10.     DEPOSITION OR PRIOR TESTIMONY

During the trial of this case, certain testimony was presented to you by way of deposition or prior testimony consisting of sworn recorded statements or answers to questions asked of a witness in advance of trial by one or more of the lawyers for the parties to the case.  The testimony of a witness may be presented in writing or on video when that witness cannot be present to testify in court or who is a party or was an employee or agent of a party when he or she testified under oath.

Such testimony is entitled to the same consideration and is to be judged as to credibility and weight and otherwise as if the witness had been present and had testified from the witness stand.

## 11.    EVIDENCE - CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you in order to help explain the facts disclosed by the records in the case.  These charts or summaries are used for convenience.  They are not, in and of themselves, evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## 12.    VERDICT BASED ON EVIDENCE

I instruct you that your verdict must be based entirely and exclusively on the evidence in this case, and that you cannot be governed by passion, prejudice, or any motive whatever except a fair and impartial consideration of the evidence.  Further, you must not allow sympathy which you might have or entertain for any of the parties to influence you in arriving at your decision. The Court does not charge you not to sympathize with the plaintiff or the defendant, because it is only natural and human to sympathize with persons involved in litigation.  But the Court does charge you not to allow that sympathy to enter into the consideration of the case or to influence your verdict.

## 13.     BURDEN OF PROOF

This is a civil case.  Plaintiff has the burden of proving every essential element of his claims and damages by what is called a preponderance of the evidence.  To establish something by a preponderance of the evidence means to prove that something is more likely true than not. To find that a party has proven something by a preponderance of the evidence, you must conclude that that evidence, when considered and compared with the evidence opposed to it has more convincing force and produces in your minds a belief that what is sought to be proved is more likely true than not true.  It is not necessary for any party to prove any assertion beyond a reasonable doubt.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt.  That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not plaintiff has met his burden of proof on various issues.

The preponderance of the evidence does not depend on the number of witnesses, but upon the weight of the testimony.  If the evidence as to a particular element or issue is evenly balanced, the party has not proved the element by a preponderance of the evidence and you must find against that party.  In determining whether any facts in issue has been proven by plaintiff, you may consider the testimony of all witnesses, regardless of who may have called them and all the exhibits received in evidence regardless of who may have produced them.

Since the plaintiff, in order to recover, must prove his case by a preponderance of the evidence, I instruct you that if you find the evidence in this case to be equally balanced so that the resolution of the liability issue is as reasonable or as likely to be right under the defendant's version as under the plaintiff's version, then you must conclude that the plaintiff has failed to sustain his burden of proof and your decision must be resolved in favor of the defendant.

## 14P.   RETALIATION FOR FIRST AMENDMENT ACTIVITY

Plaintiff has filed claims against the defendants under federal law, which provides a remedy for any person who has been deprived of his constitutional rights.

To prevail on a claim of retaliation, a plaintiff must prove by a preponderance of the evidence that either individual defendant intentionally violated his protected First Amendment rights and that this violation was a substantial or motivating factor in adverse action taken against him.

He also must prove that he was the victim of adverse action that would deter a person of ordinary firmness from engaging in protected activity under the First Amendment.  Put another way, the retaliatory actions must be sufficient to cause reasonably hardy persons to refrain from exercising their rights under the First Amendment.

If plaintiff has proven both these elements then you must return a verdict for him.  If he has not proven each of these elements then you must find for the defendants.[3]

---

[3]     Jury prayer given by Judge Joseph J. Farnan on June 24, 2003 in the case of <u>Foraker v. Chaffinch</u>, C.A. No. 02-302-JJF.

## 14D.   ESSENTIAL ELEMENTS OF PLAINTIFF' CLAIMS

Plaintiff have filed claims against the defendants under federal law, which provides a remedy for any person who has been deprived of his constitutional rights.

To prevail on a claim of retaliation, a plaintiff must prove by a preponderance of the evidence:

First:  That the plaintiff engaged in protected activity under the First Amendment – either free speech or petition;

Second:  That defendant Chaffinch or defendant MacLeish took actions against each plaintiff that was adverse to that plaintiff;

Third:   That the plaintiff's speech activity was a substantial or motivating factor in the defendant's decision to take adverse action;

Fourth:  That the defendant's actions were "under color" of the authority of state law or custom; and

Fifth:  That defendant's actions were the proximate or legal cause of damages sustained by the plaintiff.

I have already determined that each plaintiff engaged in First Amendment protected activity, and the parties have stipulated or agreed that defendants Chaffinch and MacLeish acted "under color" of state law or custom, and you should accept these facts as proven.

An action is "adverse" if it would deter a person of ordinary firmness from engaging in protected activity under the First Amendment.  Put another way, the retaliatory actions must be sufficient to cause reasonably hardy persons to refrain from exercising their rights under the First Amendment.

If an individual plaintiff has proven each of these elements, then you must return a verdict for him.  If he has not proven each of these elements, then you must find for the defendants.

Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice And Instructions § 168.20 (Civil) (5th ed. 2001); see also Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); Baldassare v. New Jersey, 250 F.3d 188 (3d Cir. 2001); Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558, 568 (E.D. Pa. 2004)

## 15P.   DEFAMATION - STATE LAW

Plaintiff also filed claims against the defendants under state law.  Article I, Section 9 of the Delaware Constitution provides a remedy for damage to one's reputation.

Defamation is a communication that tends to injure a person's reputation in the ordinary sense of that word; that is, some statement or action that diminishes the esteem, respect, goodwill, or confidence in which the person is held and tends to cause bad feelings or opinions about the person.  Defamation necessarily involves the idea of disgrace.  In this sense, a communication is defamatory if it tends to lower the person in the estimation of the community or if it deters third parties from associating or dealing with the person defamed.  For a defamation to occur the defamatory information must be communicated to someone other than the person to whom it refers.  In the law, this is known as publication.[4]

If a statement defamed plaintiff in his trade, business or profession he does not even need to show that the defamation caused actual monetary loss in order to recover damages.[5]

To prevail on his defamation claim, Sgt. Foraker must prove by a preponderance of the evidence that a defendant defamed him and that the defamation was published.   If he does this you must return a verdict for him.  If he does not prove these elements then your verdict must be for the defendants.

---

[4]      Delaware Superior Court model civil jury instruction 11.1.

[5]      Id. 11.3.

## 15D.   DEFAMATION [6]

Plaintiff has the burden of proving by a preponderance of the evidence facts necessary to establish each of the following elements of his claim:

(1) that either or both defendants made a defamatory statement about him;

(2) that either of both defendants published the defamatory matter;

(3) that either or both defendants published the matter with actual malice; and

(4) that the publication of the defamatory matter caused injury to the plaintiff's name.

A publication is made with "actual malice" if it is made with knowledge that it is false or with reckless disregard for whether it is false.  "Reckless disregard" is a term of art, defined by the Supreme Court to mean publishing with "a high degree of awareness" of probable falsity.  In other words, to prove actual malice, a plaintiff must prove, by clear and convincing evidence, that "the defendant in fact entertained serious doubts as to the truth of his publication."  "Clear and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.


St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Doe v. Cahill, 884 A.2d 451, 463 (Del. 2005); Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, Federal Jury Practice And Instructions § 104.02 (Civil) (5th ed. 2001); Pattern Jury Instructions For Civil Practice In The Superior Court of the State of Delaware §§ 11.7 & 11.16 (2000 ed.) (rev. 8/2003) (citing Gertz v. Welch, Inc., 418 U.S. 323 (1974); New York Times Co. v. Sullivan, 84 S. Ct. 710 (1964); Kanaga v. Gannett Co., Inc., 687 A.2d 173, 183 (Del. 1996); Jackson v. Filliben, 281 A.2d 604, 605 (Del. 1971)).

---

[6] Defendants object to only certain portions of Plaintiffs' proposed instruction. First, Defendants object to the second sentence of the first paragraph as being unnecessary and irrelevant to this case.  Second, Defendants object to the third paragraph as it misstates Delaware's model instruction.

**15D(a).        TRUTH OR SUBSTANTIAL TRUTH AS A DEFENSE**

It is an absolute defense to a claim of defamation that the alleged defamatory statements were substantially true at the time the statements were made. Thus, even if you find that either or both of the defendants made defamatory statements about the plaintiff that proximately caused him injury, you cannot award damages if you find that the statements were substantially true.

The alleged defamatory statements don't have to be absolutely true for the defendant to successfully assert this defense. Substantially true statements are not defamatory.  To determine if a statement is substantially true, you must determine if the alleged defamation was no more damaging to the plaintiff's reputation than an absolutely true statement would have been.  In other words, if the "gist" or "sting" of the allegedly defamatory statement produces the same effect in the mind of the recipient as the precise truth would have produced, then the statement is "substantially true" and you cannot award damages to the plaintiff for the statement.

To prevail on this defense, the defendant bears the burden of proving by a preponderance of the evidence that the alleged defamatory statements were true or substantially true.

Pattern Jury Instructions For Civil Practice In The Superior Court of the State of Delaware § 11.12 (2000 ed.) (rev. 8/2003) (citing Gannett Co., Inc. v. Kanaga, 750 A.2d 1174, 1191–97 (Del. 2000)(Chandler, Chancellor, dissenting); Ramunno v. Cawley, 705 A.2d 1029, 1035-36 (Del. 1998); Riley v. Moyed, 529 A.2d 248, 253 (Del. 1987); Gannett Co. v. Re, 496 A.2d 553, 557 (Del. 1985); Ramada Inns, Inc. v. Dow Jones & Co., 543 A.2d 313, 317-18 (Del. Super. Ct. 1987)).

## 16.    INVASION OF PRIVACY - STATE LAW

Plaintiff also has filed another claim against the defendants under state law for violation of his right to privacy by casting him in a false light.

One who publicizes a matter concerning another person and places that person before the public in a false light is responsible to that person for any harm suffered as a result of this publicity if similar publicity about a reasonable person would be highly offensive to that reasonable person and if the person giving the publicity knew the matter was false or recklessly disregarded whether it was false.

The question is whether a reasonable person in similar circumstances would find the conduct very objectionable or would be expected to take serious offense to it.  Publication or publicity means that the matter is communicated to the public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge.[7]

To prevail on his claim of false light invasion of privacy, Sgt. Foraker must prove by a preponderance of the evidence that (a) a defendant placed him before the public in a false light in a way which would be highly offensive to a reasonable person, and (b) the defendant knew the mater was false or recklessly disregarded whether it was false.  If he proves these elements you must return a verdict for him.  If he does not prove these elements then your verdict must be for the defendants.

---

[7] Delaware Superior Court model civil jury instruction 11.18.

## 16D.   INVASION OF PRIVACY

To sustain his claim for false light invasion of privacy, plaintiff must prove by a

preponderance of the evidence that a defendant publicized matters that are part of the plaintiff's

private life and not matter that are of legitimate public concern.

Reardon v. News-Journal Co., 164 A.2d 263, 266-67 (Del. 1960); see also Neish v. Beaver
Newspapers, Inc., 581 A.2d 619, 624-25 (Pa. Super. Ct. 1990); Godbehere v. Phoenix
Newspapers, Inc., 783 P.2d 781, 790 (Ariz. 1989) (citing cases from numerous jurisdictions).,

### 17.    INJURIES - CAUSATION

If you determine that any defendant violated the rights of any plaintiff, you may compensate the plaintiff, but only for those damages which the plaintiff has proved were a proximate result of the defendant's action.

Proximate cause is a cause that directly produces the harm, and but for which the harm would not have occurred.  In other words, there must be a direct causal link with no intervening causes.

You may not compensate a plaintiff for damages for which the defendant's conduct is *not* a cause.  Therefore, you may not compensate him for the damages for any injuries he received from any other source.

## 18.    COMPENSATORY DAMAGES

I now discuss the award of damages in this case.  I should say preliminarily that my instructions of damages are not to be intended as any indication by the Court as to whether damages should or should not be awarded in this case.  You must first determine the liability on the part of the defendant.  If you determine that the defendant violated any rights of a plaintiff and that any such violation was also the proximate cause of damages to him, you must then consider the instructions that I am about to give you.

The object and purpose of an award of damages in a civil action is just, fair, and reasonable compensation for any harm and injury done in the past to any plaintiff and for any damages he may suffer in the future as a result of the alleged wrongs.  Certain guiding principles of law with regard to these damages should be employed by you in arriving at the amount of any award you might find to be warranted.

One principle of law is that the damages to be recoverable must be proven with reasonable probability and not left to speculation.  Damages are termed speculative when there is a mere possibility rather than a reasonable probability that an injury or loss will occur or will exist in the future.

You must not allow any sympathy you might have or entertain for any of the parties in this case to influence you.  I do not charge you not to feel sympathy for the parties in this case, since it is only natural and human to sympathize with a person who has been injured.  I do charge you not to allow that sympathy to enter into your consideration of the case and to influence your verdict.

If you determine based on the evidence and on the instructions which I have given you, that a defendant is liable to any plaintiff, then you should award him such sums of money which will reasonably and fully compensate him for each of the following elements of damages:

1.    Such sum of money as will reasonably compensate him for any injury to his reputation which he has suffered because of the conduct of the defendant.

2.     Such sum of money as will reasonably compensate him for the emotional distress or mental suffering he has suffered in the past *or* will endure in the future.

3.     Such sum of money as will reasonably compensate him for any humiliation which he has suffered because of the conduct of the defendant.

4.     Such sum of money as will reasonably compensate him for lost earnings or other benefits he has suffered in the past.

5.     Such sum of money as will reasonably compensate him for lost earnings or other benefits he will suffer in the future, reduced to present worth.

6.     Such sum of money as will reasonably compensate him for the reasonable and necessary medical, psychological and/or psychiatric bills and other related expenses that he has incurred in the past or will incur in the future.

## 19.    PUNITIVE DAMAGES

In certain situations, the law also permits, but does not require, a jury to award an injured person punitive damages in addition to compensatory damages.  Punitive damages can be awarded in a civil rights case where the jury finds a constitutional violation, even when the jury has not awarded any compensatory damages.  There is a two-fold purpose to punitive damages: it is intended to punish particularly reprehensible conduct by a wrongdoer, and it also serves as a warning to others not to engage in similar conduct.

You may award punitive damages if you find that any plaintiff has proven that a defendant acted recklessly, intentionally or maliciously.  An act is "recklessly" done if it is characterized by an indifference to or a subjective consciousness that a person is acting in violation of law.  Something is done "intentionally" when it is done with the aim or committing an act which violates the law.  An act is done "maliciously" if it is prompted or accompanied by evil motive, ill will, spite, or intent to injure.

There is no mathematical formula to apply in determining punitive damages.  The amount of such damages, if any, is left to the sound judgment of the jury.  In determining the amount of punitive damages, you should consider such things as the circumstances surrounding the particular defendant's actions, including the motives for those actions, the reprehensibility of the conduct, and the extent of the harm to the plaintiff, the need for a warning to others about such conduct, and any other factors you as the conscience of the community deem appropriate.

If you determine that the defendant's conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages.  In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a defendant for shocking conduct, and to deter the defendant and others from engaging in similar conduct in the future.  The law does not require you to award punitive damages.  However, if you decide to award punitive damages, you must use sound reason in setting the amount.  The amount of an award of punitive damages must not reflect bias, prejudice

or sympathy toward any party.  Among other things, you may consider the financial resources of the defendant in fixing the amount of punitive damages.  Any punitive damages award should not be disproportionate to the award or compensatory damages, but rather should bear some reasonable relationship to it.

## 20.     EFFECT OF INSTRUCTIONS AS TO DAMAGES

The fact that I have instructed you about damages should not be considered as my suggesting which party is entitled to your verdict in this case.  Instructions about the measure of damages are given for your guidance only if you find that any award  of damages is  appropriate.

The Court instructs you further that you should consider each claim separately in awarding damages, without regard to any other claim.  It is within the Court's province to ensure that damages are recovered only once for each particular harm.

### 21.     DELIBERATION AND VERDICT

Let me conclude these proceedings by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your vote.  For example, do not write down or tell anyone that you are split 6-2, or 4-4, or whatever your vote happens to be.  That should stay a secret until you are finished.

## 22.    DUTY TO DELIBERATE

When you retire to the jury room you will be free to talk about the case.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each others views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any of you took notes, notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

If you did take notes, you should rely upon your own memory of what was said and not be overly influenced by the notes of other jurors.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say, so you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself if the plaintiff has carried her burden of proof on all the elements of her case, as I have just described them.

### 23.    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will hand your verdict to the clerk.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## 24.    COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Draft.05

## Schedule (l)

**A Statement That Each Party Has Completed Discovery, Including Expert Depositions**.

**Plaintiff's Statement**

Plaintiff has completed deposition discovery.  No expert deposition was necessary since the defense never produced a psychiatric or other expert report other than an economist.

At the time of this writing, the defense has yet to produce the financial documents relating to punitive damages which were promised at the depositions of the individual defendants, so they will have to be produced and added to the exhibit list.

Medical records produced by the psychiatrist who declared the plaintiff unfit for duty are being evaluated for completeness.

**Defendants' Statement**

Defendants have completed discovery.

Expert witnesses have been properly disclosed, and expert discovery is closed.

Defendants are preparing and will produce relevant financial documents related to Plaintiff's claim for punitive damages.

Draft. 06